IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

NOV 3 0 2000

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| JUSTIN OAKERSON | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | |
| CITY OF BROWNSVILLE, | § | B - 99 - 197 |
| ARTURO RODRIGUEZ and | § | |
| CARLOS RUBINSTEIN | § | |

---

## DEFENDANTS' MOTION FOR LEAVE TO FILE
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

TO THE HONORABLE U. S. DISTRICT COURT:

COME NOW **ARTURO RODRIGUEZ and CARLOS RUBINSTEIN**, Defendants herein, and respectfully requests leave of Court to file their Motion for Summary Judgment in the above styled and numbered cause.

### I.

On May 3, 2000, an Agreed Order on Initial Defense Motions was entered herein, wherein it was agreed that the individual Defendants may file any appropriate dispositive motions relating to qualified immunity by August 30, 2000. *See* Exhibit "A."

### II.

On May 18, 2000, a Scheduling Order was entered herein, whereby the dispositive motions deadline was extended until November 30, 2000. *See* Exhibit "B." Thereafter, counsel for Plaintiff and Defendants conferred on September 1, 2000, at which time counsel for Plaintiff

indicated he would not be opposed to the individual Defendants' filing a Motion for Leave to file their Motion for Summary Judgment out of time, so long as that motion was not filed within the following two weeks.  Plaintiff's counsel has since indicated that he is opposed to the filing of the individual Defendants' Motion for Summary Judgment this time.  *See* Exhibit "C."

On November 21, 2000, it was confirmed by this Court that all dispositive motions were to be filed by November 30, 2000.  *See* Exhibit "D."

### IV.

Out of an abundance of caution, Defendants are herein filing this their Motion for Leave to File Defendants' Motion for Summary Judgment as to the individual Defendants relating to their entitlement to qualified immunity.

### V.

Defendants would therefore request that the Court grant the individual Defendants Rubinstein's and Rodriguez' Motion for Leave to File Defendants' Motion for Summary Judgment and that this Court allow the Clerk to file Defendants' Motion for Summary Judgment.

### VI.

This motion is not being presented for harassment or delay, but solely so that the interests of justice may be served.

WHEREFORE, PREMISES CONSIDERED, Defendants **ARTURO RODRIGUEZ and CARLOS RUBINSTEIN**, respectfully request that the Court enter an Order Granting Leave to file Defendants' Motion for Summary Judgment.

Signed on this the 29th day of November, 2000.

Respectfully submitted,

**LAW OFFICE
J. ARNOLD AGUILAR**
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, Texas  78520
Telephone     :  (956) 504-1100
Facsimile     :  (956) 504-1408


By: _____
      J. Arnold Aguilar
      Federal Adm. No. 6822
      State Bar No. 00936270

Attorney for Defendants,,
CITY OF BROWNSVILLE, TEXAS,
ARTURO RODRIGUEZ and
CARLOS RUBINSTEIN


## CERTIFICATE OF CONFERENCE

I, J. Arnold Aguilar, hereby certify that I have conferred with Plaintiff's attorney and he has indicated that he is opposed to the filing of Defendants' Motion for Leave to File and Defendants' Motion for Summary Judgment at this time.


_____
J. Arnold Aguilar

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **DEFENDANTS' MOTION FOR LEAVE TO FILE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** has on this the 30th day of November, 2000, been forwarded via certified mail, return receipt requested to:

Mr. B. Craig Deats
DEATS & LEVY, P.C.
2204 Lake Austin Blvd.
Austin, TX 78703


Mr. Miguel A. Saldaña
LAW OFFICE OF MIGUEL A. SALDAÑA
302 Kings Highway, Suite 109
Brownsville, TX 78521


J. Arnold Aguilar

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUSTIN OAKERSON | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | |
| CITY OF BROWNSVILLE, | § | B - 99 - 197 |
| ARTURO RODRIGUEZ and | § | |
| CARLOS RUBINSTEIN | § | |

## ORDER SETTING HEARING

On this day came on for consideration **Defendants' Motion for Leave to File Defendants' Motion for Summary Judgment**. Upon consideration of said motion the Court is of the opinion that such motion should be set for hearing;

IT IS THEREFORE, ORDERED ADJUDGED and DECREED that said motion is hereby set for hearing on this _____ day of _____, 2000, at _____ o'clock ____ .m.

SIGNED for entry on this the _____ day of _____, 2000.

_____
U.S. DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUSTIN OAKERSON | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | |
| CITY OF BROWNSVILLE, | § | B - 99 - 197 |
| ARTURO RODRIGUEZ and | § | |
| CARLOS RUBINSTEIN | § | |

## ORDER GRANTING DEFENDANTS' MOTION FOR LEAVE
## TO FILE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Be it remembered that came on to be considered the **Defendants' Motion for Leave to File Defendants' Motion for Summary Judgment** and the Court being of the opinion that said Motion should be and hereby is GRANTED;

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendants' Motion for Leave to File Defendant's Motion for Summary Judgment is hereby GRANTED and the Clerk is hereby directed to file Defendants' Motion for Summary Judgment.

Signed this the ____ day of _____, 2000.

_____
U.S. DISTRICT JUDGE

# EXHIBIT "A"

CitiPDF - www.fasisx.com

Case 1:99-cv-00197 Document 22 Filed in TXSD on 11/30/2000 Page 8 of 46

*15*

United States District Court
Southern District of Texas
ENTERED

**MAY 0 3 2000**

Michael N. Milby, Clerk of Court
By Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUSTIN OAKERSON | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | |
| CITY OF BROWNSVILLE, | § | B - 99 - 197 |
| ARTURO RODRIGUEZ and | § | |
| CARLOS RUBINSTEIN | § | |

---

## AGREED ORDER ON INITIAL DEFENSE MOTIONS

---

On the 27th day of April, 2000, the Court conducted a hearing to consider the Defendants' Motions to Dismiss for failure to state a claim upon which relief may be granted, and the individual Defendants' Motions to Stay Discovery pending resolution of their claims to qualified immunity. Counsel for Plaintiff and Defendants appeared and announced ready. Upon further hearing, the parties announced the following agreements:

(1) Plaintiff agrees that he is seeking damages only for violation of his right to freedom of association, although he is not pursuing any claim for violation of his right to free speech, under the First Amendment to the U.S. Constitution, and he therefore moves to DISMISS any claims he would have in this litigation for violation of his right to free speech.

(2) Based on the withdrawal of Plaintiff's claim of violation of his right to free speech, Defendants request that their Motion to Dismiss this cause of action be DENIED as moot.

Received:   5/ 3/ 0;   1:28PM;   713-250-5434 USDC   => AGUILAR LAW OFFICE;   #3

IT IS THEREFORE, ORDERED, ADJUDGED and DECREED that Plaintiff's Motion to Dismiss his claim of violation of his First Amendment right to free speech is hereby GRANTED, and such claim is hereby DISMISSED.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that Defendants' Motion to Dismiss Plaintiff's claim of violation of his First Amendment right to free speech is hereby DENIED as moot.

With regard to a discovery plan, the parties have further agreed that discovery will proceed initially with regard to the individuals' claims of entitlement to qualified immunity, although the witnesses' testimony will be limited only by the Federal Rules of Civil Procedure, rather than strictly to the issue of their entitlement to qualified immunity. The parties have further agreed to complete such initial discovery by July 30, 2000, and that the individual Defendants may then file any appropriate dispositive motions relating to qualified immunity by August 30, 2000. The parties have further agreed that all remaining discovery may be completed by October 31, 2000, and that any additional dispositive motions may be filed by November 30, 2000.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that discovery proceed initially on the individual defendants' claims of entitlement to qualified immunity, although witnesses' testimony need not be limited strictly to the issue of their entitlement to qualified immunity. Such initial discovery shall be completed by July 30, 2000. The individual

V:\FP\ORDERS\99-173.ORD

Case 1:99-cv-00197 Document 22 Filed in TXSD on 11/30/2000 Page 10 of 46

Defendants may then file any appropriate dispositive motions relating to qualified immunity by August 30, 2000.

IT IS FURTHER THEREFORE ORDERED, ADJUDGED and DECREED that Defendants ARTURO RODRIGUEZ' and CARLOS RUBINSTEIN'S Motions to Stay Discovery are DENIED as moot.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that all remaining discovery in this action be completed by October 31, 2000, and any additional dispositive motions be filed by November 30, 2000.

Any matters not specifically addressed in this Order shall be governed by the Federal Rules of Civil Procedure, the Local Rules of the Southern District of Texas, the Civil Procedures of this Court, and any standing or further orders, operating rules, and procedures applicable to the disposition of pending lawsuits in this Court.

SIGNED on this the 27th day of April, 2000.

HILDA TAGLE,
U.S. DISTRICT JUDGE

V:\FP\ORDERS\99-173.ORD

CitePDF - www.fesio.com

5/ 3/ 0;   1:30PM;   713-250-5434 USDC   => AGUILAR LAW OFFICE;   #5

By: _____
B. Craig Deats
Federal Adm. No. 6369
Attorney for Plaintiff


By: _____
J. Arnold Aguilar
Federal Adm. No. 6822
Attorney for Defendants


PAGE 4 OF 4


V:\H\ORDERS\99-173.ORD

CtmPDF - www.fastio.com

# EXHIBIT "B"

CVISPDF - www.faxisa.com

Case 1:99-cv-00197   Document 22   Filed in TXSD on 11/30/2000   Page 13 of 46

United States District Court
ENTERED
**MAY 1 8 2000**
By Deputy Clerk

# UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

Justin Oakerson
*versus*
City of Brownsville, et al.

§
§
§
§
§

CIVIL ACTION B- 99-197

## Scheduling Order

1. Trial: Estimated time to try: __5__ days.                 ☐ Bench   ☒ Jury

2. New parties must be joined by:                  June 16, 2000

   *Furnish a copy of this scheduling order to new parties.*

3. The plaintiff's experts will be named with a report furnished by:   Aug. 11, 2000

4. The defendant's experts must be named with a report furnished
   within 30 days of the deposition of the plaintiff's expert.

5. Discovery must be completed by:                 October 31, 2000

   *Counsel may agree to continue discovery beyond the deadline, but there will be no intervention by the court.*
   *No continuance will be granted because of information acquired in post-deadline discovery.*

**************************** The court will provide these dates. ****************************

6. Dispositive Motions will be filed by:             November 30, 2000

7. Joint pretrial order is due:                   Feb. 22, 2001

   *The plaintiff is responsible for filing the pretrial order on time.*

8. Docket Call and final pretrial conference is set for 1:30 p.m. on:   March 1, 2001

9. Jury Selection is set for 9:00 a.m. on:            March 5, 2001

The case will remain on standby until tried.

   Signed _____May 17_____, 2000, at Brownsville, Texas.

                                    Hilda G. Tagle
                                    United States District Judge

*Counsel, please sign on the back.*

# EXHIBIT "C"

# AFFIDAVIT OF J. ARNOLD AGUILAR

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF CAMERON | § |

BEFORE ME, the undersigned official, on this day appeared **J. ARNOLD AGUILAR**, who is personally known to me, and first being duly sworn according to law upon his oath deposes and says:

My name is J. Arnold Aguilar. I am over 18 years of age, I have never been convicted of a crime and I am fully competent to make this affidavit. I have personal knowledge of the facts stated in Defendants' Motion for Leave to File Defendants' Motion for Summary Judgment, and they are all true and correct.

I conferred with Plaintiff's counsel, Craig Deats, on September 1, 2000, at which time he indicated to me that he would not be opposed to the individual Defendants, Arturo Rodriguez and Carlos Rubinstein, filing a Motion for Leave to file their Motion for Summary Judgment out of time, so long as that motion was not filed within the following two weeks.

Mr. Deats. however, has since indicated that he is opposed to the filing of the individual Defendants' Motion for Summary Judgment this time.

Further affiant sayeth not.

J. Arnold Aguilar

SUBSCRIBED AND SWORN TO BEFORE ME on the 29th day of November, 2000, to certify which witness my hand and official seal.

Notary Public, State of Texas

My Commission Expires:

03/27/03

# EXHIBIT "D"

CVisPDF – www.fesisa.com

Case 1:99-cv-00197 Document 22 Filed in TXSD on 11/30/2000 Page 17 of 46

69

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED Entered

NOV 28 2000

Michael R. Milby, Clerk of Court

By: _____

| | |
|---|---|
| Ferrell, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § CIVIL ACTION NO. B-99-062 |
| | § |
| City of Brownsville, Texas, et al, | § |
| | § |
| Defendants. | § |

### ORDER

BE IT REMEMBERED, that on November 21, 2000, the Court made the following rulings:

(1) The Parties must complete any additional discovery to prepare for the Court's hearing on the admissibility of evidence under Federal Rule of Evidence 404(b) by December 21, 2000.

(2) The following must be submitted for the Court's consideration by January 22, 2001:

(a) the Plaintiffs and the Defendants must respectively each submit an exhibit and witness list for the Rule 404(b) hearing;

(b) the Parties must submit a joint memorandum that lists and provides a brief description of all the Rule 404(b) evidence that each Party seeks to admit in each case, indicating whether each Party is opposed or supports the admission of the evidence.

(c) the Parties must submit an agreed memorandum containing a proposal on how the Parties believe the Court can best organize the Rule 404(b) hearing; and,

1

Case 1:99-cv-00197  Document 22  Filed in TXSD on 11/30/2000  Page 18 of 46

(d)     the Plaintiffs and the Defendants must respectively submit a memorandum of law arguing for or against the admissibility of all Rule 404(b) evidence. These memoranda should be comprehensive and supersede any prior memoranda or briefs submitted to the Court on the admissibility of Rule 404(b) evidence.

(3)     The dispositive motion deadline has passed in *Ferrell v. City of Brownsville, et al.*, and the Court will not consider any additional dispositive motions in that case. However, the Parties are ordered to brief the relevance of Neubauer v. City of McAllen, 766 F.2d 1567 (5th Cir. 1985), overruled on other grounds by Walther v. Lone Star Gas Co., 952 F.2d 119, 126 (5th Cir. 1992), to the City of Brownsville's pending motion for summary judgment.

(4)     The dispositive motion deadline in *Oakerson v. City of Brownsville, et al.*, is November 30, 2000. That deadline will be strictly enforced.

The Court expects to be informed of any issues that may affect the deadlines in this order in an expeditious fashion.

DONE, at Brownsville, Texas, this ___ day of November 2000.

Hilda G. Tagle
United States District Judge

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUSTIN OAKERSON | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | |
| CITY OF BROWNSVILLE, | § | B - 99 - 197 |
| ARTURO RODRIGUEZ and | § | |
| CARLOS RUBINSTEIN | § | |

---

## AFFIDAVIT OF LIDIA GONZALES

---

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF CAMERON | § |

BEFORE ME, the undersigned official, on this day appeared **LIDIA GONZALES**, who is personally known to me, and first being duly sworn according to law upon her oath deposes and says:

(1)    My name is Lidia Gonzales; I am over 18 years of age and I am fully competent to make this affidavit.    As the Custodian of Records for the City of Brownsville Human Resources Department, I have personal knowledge of the records furnished herein and they are true, correct and accurate copies of original records in the personnel file of Justin Oakerson.

(2)    Each of these records were made at or near the time indicated by or from information transmitted by a person with knowledge, they were each kept in the course of the regularly conducted business of the City of Brownsville, and it was the regular practice of the City of Brownsville to make these records.

EXHIBIT

1

PAGE 1 OF 2

(3)    Attached hereto are the true and correct copies referenced herein of the following documents from Justin Oakerson's personnel file:

(Exhibit 1-A)    July 12, 1995 New Employee initial hire form;

(Exhibit 1-B)    January 18, 1999 promotion form;

(Exhibit 1-C)    EMS Training Officer Job Description;

(Exhibit 1-D)    March 23, 1999 Employee Performance Review;

(Exhibit 1-E)    June 18, 1999 Performance Review;

(Exhibit 1-F)    June 21, 1999 notice of termination.

Further affiant sayeth not.

LYDIA GONZALEZ

SUBSCRIBED AND SWORN TO BEFORE ME on the 28th day of November, 2000, to certify which witness my hand and official seal.

MARY DE LEON
Notary Public, State of Texas
My Commission Expires
03-25-2002

Notary Public, State of Texas

My Commission Expires:

03-25-2002

PAGE 2 OF 2

Case 1:99-cv-00197   Document 22   Filed in TXSD on 11/30/2000   Page 21 of 46

## CITY OF BROWNSVILLE, TEXAS

# FILE

HUMAN RESOURCE ACTION NOTICE

| Employee's Name | Employee No. | Social Security Number | Effective Date |
|---|---|---|---|
| OAKERSON, JUSTIN | 4145 | 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 | 7/12/95 |

| TYPE OF ACTION | EXPLANATION OF TERMINATION CODES |
|---|---|

**TYPE OF ACTION**

- [X] New Employee
- [ ] Re-hire
- [ ] Change of Funding Source
- [ ] Name Change
- [ ] Salary/Wage Change
- [ ] Promotion
- [ ] Transfer
- [ ] Suspension
- [ ] Demotion
- [ ] Incentive Pay
- [ ] Out-of-Classification Pay
- [ ] Standby Pay
- [ ] Termination
- [ ] Other (Explain)

*KP 7-17-95*
*&*
*Temp Part-Time*
*As per Requisition*

**EXPLANATION OF TERMINATION CODES**

1. Resignation (Explain)
2. Failure to Qualify
3. Disciplinary Action
4. Abandonment of Duties
5. Reduction in Force
6. Work Performance
7. Reorganization
8. Temporary Hire
9. Disability
10. Retirement
11. Death
12. Other (Explain)

**EMPLOYMENT CATEGORY (Circle one)**

01 - Management/Supervision
02 - Clerical
03 - Labor Force
04 - Part-time
05 - Temporary

*Pos. 407*
*W.C. 7720*
*T.E.C 9224*

### DETAILS OF ACTION (Fill in only items affected)

| | CHANGE FROM (or new hires) | CHANGE TO (or terminations) |
|---|---|---|
| NAME | OAKERSON, JUSTIN | Oakerson, Justin |
| HOME/ADDRESS/PHONE NUMBER (710) 412-1132 | 1005 ½ W. Harrison Harlingen, Texas 78550 | 1005 ½ W. Harrison Harlingen, Texas 78550 |
| JOB TITLE | EMT Intermidiate 405 | EMT-I 405 |

| SALARY/WAGE INFORMATION | Annual 14,228 | Bi-Weekly | Annual 14,228 | Bi-Weekly |
|---|---|---|---|---|
| | Hourly 6.8404 | Grade/Step 15  1 | Hourly 6.8404 | Grade/Step 15  1 |
| | Regular | Probationary | Regular | Probationary |

| EMPLOYMENT STATUS (Check one √) | Full Time | Temporary | Part-Time XX | Full Time | Temporary | Part-Time XX |
|---|---|---|---|---|---|---|

| DEPARTMENT/DIVISION | 536/01/EMS | 536-01-EMS |
|---|---|---|

Explanation/Remarks: This is to Fil a Paramedic Position, getting hired as an Intermediate to replace Mario Gonzalz.

| | | | |
|---|---|---|---|
| Date received at Human Resource Department | 6/28/95 | *Justin Oakerson* | 7-12-95 |
| Date sent to C.M. | 7/15/95 | | |
| Date received from C.M. | 7/15/65 | | |
| Date sent to finance | 7/18/95 | | 6-19-95 |
| | | Employee Signature | Date |

| Sick Leave Accrued Days | | |
|---|---|---|
| **EXHIBIT** **1-A** | Department Head Signature | 6-30-95 |
| Annual Leave Accrued Days | Authorized Signature | Date |

DISTRIBUTION WILL BE MADE BY PERSONNEL DEPARTMENT

# CITY OF BROWNSVILLE, TEXAS

## PERSONNEL ACTION NOTICE

| Employee's Name | Employee No. | Social Security Number | Effective Date |
|---|---|---|---|
| JUSTIN OAKERSON | 4145 | 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 | 01/25/99 |

| TYPE OF ACTION | EXPLANATION OF TERMINATION CODES |
|---|---|

**TYPE OF ACTION**

| | |
|---|---|
| | New Employee |
| | Re-hire |
| | Change of Funding Source |
| | Name Change |
| | Salary/Wage Change |
| XXX | Promotion |
| | Transfer |
| | Suspension |
| | Demotion |
| | Incentive Pay |
| | Out-of-Classification Pay |
| | Standby Pay |
| | Termination |
| | Other (Explain) |

**EXPLANATION OF TERMINATION CODES**

1. Resignation (Explain)
2. Failure to Qualify
3. Disciplinary Action
4. Abandonment of Duties
5. Reduction in Force
6. Work Performance
7. Reorganization
8. Temporary Hire
9. Disability
10. Retirement
11. Death
12. Other (Explain)

**EMPLOYMENT CATEGORY (Circle one)**

01 - Management/Supervision
02 - Clerical
03 - Labor Force
04 - Part-time
05 - Temporary

TMRS - 4
80 HRS

## DETAILS OF ACTION (Fill in only items affected)

| | CHANGE FROM (or new hires) | CHANGE TO (or terminations) |
|---|---|---|
| NAME | Justin Oakerson | Justin Oakerson |
| HOME/ADDRESS/PHONE NUMBER | 37 Meadow Glenn<br>Brownsville, Tx 78520<br>956- 5042665 | 37 Meadow Glenn<br>Brownsville, Tx 78520<br>956- 504-2665 |
| JOB TITLE | EMT-Paramedic | EMS Training Officer |

| SALARY/WAGE INFORMATION | Annual | Bi-Weekly | Annual | Bi-Weekly |
|---|---|---|---|---|
| | 17,048.00 | 655.69 | 27,729.00 | 1066.50 |
| | Hourly | Grade/Step | Hourly | Grade/Step |
| | 8.1961 | 16  2 | 13.3313 | 23  2 |

| EMPLOYMENT STATUS (Check one √) | Regular | Probationary | Regular | Probationary |
|---|---|---|---|---|
| | XXX | | | XXXXXXX |
| | Full Time | Temporary | Part-Time | Full Time | Temporary | Part-Time |

| | Full Time | Temporary | Part-Time | Full Time | Temporary | Part-Time |
|---|---|---|---|---|---|---|
| | XXXXX | | XXXXX | XXXXX | | |

| DEPARTMENT/DIVISION | 536 fund 01 EMS | Fund 01 EMS 536 |
|---|---|---|

**Explanation/Remarks:**

REPLACING BRENDA LEINWEBER

**EXHIBIT**
1-B

| Credit Union: | Safety & Risk: |
|---|---|

Date received at Human Resource Department 1/12/99
Date sent to C.M. 1/13/99
Date received from C.M. 1-14-99
Date sent to finance 1-14-99 3:40 pm 1-27-99

| Sick Leave Accrued Days | | Total _____ |
|---|---|---|
| Annual Leave Accrued Days | | Total _____ |

| Employee Signature | Date 1-12-99 |
|---|---|
| Department Head Signature | Date 1/13/99 |
| Authorized Signature | Date |

DISTRIBUTION WILL BE MADE BY PERSONNEL DEPARTMENT



**POSITION TITLE:    EMS Training Officer**
**SALARY:                   $26,921**
**DEPARTMENT:         EMS**
**REPORTS TO:          EMS Director**

## JOB SUMMARY:

Under limited supervision, conducts training, continuing education and evaluation for field employees and dispatch personnel; implements approved adult education and training practices to maximize patient care and minimize exposure.

## ESSENTIAL JOB FUNCTIONS:

Assist in the identification of problems as either training or counseling issues; directs or assists in the direction of remediation and evaluation of outcomes.

Assists in the review of applicants for employment.

Delivers training and continuing education.

Maintains contact with TDH regarding EMS law, rules, policies, and procedures that impact training, certification and continuing education.

Takes part in the review of patient activity reports and other documents.

Responds to emergency scenes as necessary to evaluate employee response to training.

Assists in the review of incident reports.

Responds to emergency and non-emergency, short and long distance calls assigned.

Reviews and makes recommendations for productive changes in protocols, policies, procedures and associated activities of the EMS Director.

Attends meetings, course seminars and conferences as necessary to stay abreast of and contribute to the practices of EMS education/ training.

Provides remedial training and continuing education on a regular basis.

**EXHIBIT**

**1 - C**

Supervises the periodic review and evaluation of field employee performance.

Complies with all policies and procedures of the EMS department and the City of Brownsville, written and implied.

This position description is not intended to be all-inclusive; the employee will perform other related duties assigned by management, as required.

## MATERIALS AND EQUIPMENT USED:

Emergency Vehicle Oxygen Delivery System Word Processor
Protective Gear           Cardiac Monitor     Computer and Related Equipment
Rescue Equipment Emergency medical equipment

## PHYSICAL DEMANDS:

Requires full range of body motion, including but not limited to: running, walking rapidly, climbing into and out of vehicles, carrying heavy equipment, sitting, stooping, kneeling, squatting, twisting, stretching, pushing, pulling, fine motor movements and hand-eye coordination. Requires occasional lifting and handling of patients and lifting of loads up to 100 lbs. or more. Requires corrected vision and hearing to normal range. Requires occasional exposure to hazardous environments and situations.

## MINIMUM QUALIFICATIONS REQUIRED:

Five (5) years experience in the field of EMS. In addition to the Texas Department of Health certificate, applicants must have scored a minimum of 80% overall score and 70% on each sub-scale.
All applicants are subject to yearly performance evaluation exam by the EMS medical director and must be approved for fieldwork by the EMS director. The applicant will be responsible for meeting the minimum state requirement for continued education credits as set by law or state protocols.
Completion of an approved EMT-P training program: AAS or BS degree or equivalent experience preferred.
### Licenses and Certifications:
Current TDH certification as an EMT-P; current healthcare provider CPR certificates and current certification in ACLSI, BTLS/PHTLS-I and PPPC-I; current TDH certification as a Coordinator or Instructor and Examiner.

Valid Texas Driver's License.

## KNOWLEDGE/ SKILLS/ ABILITIES:

Computer applications related to the work.

Overall knowledge of EMS systems, adult education and training practices.

Evaluation of all areas of field employee performance; implementation of adult education and training practices; strong interpersonal and supervisory skills; advanced computer skills; public speaking skills.



# CITY OF BROWNSVILLE
## EMPLOYEE PERFORMANCE REVIEW

Employee Name:              Social Security Number:        Date:
Justin Oakerson            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                    March 23, 1999
Rated by:                   Approved by:                   Total Points:
Jeff Johnston, Asst. Director                             7 of 21

Circle the appropriate rating for each factor.

| FACTORS | UNSATISFACTORY | NEEDS IMPROVEMENT | FULLY SATISFACTORY | OUTSTANDING |
|---|---|---|---|---|
| ATTENDANCE | (0) | 1 | 2 | 3 |
| PUNCTUALITY | 0 | (1) | 2 | 3 |
| QUALITY OF WORK | (0) | 1 | 2 | 3 |
| JOB KNOWLEDGE | 0 | (1) | 2 | 3 |
| QUANTITY OF WORK | 0 | (1) | 2 | 3 |
| COOPERATION | 0 | 1 | (2) | 3 |
| CUSTOMER SERVICE | 0 | 1 | (2) | 3 |

Total the number of points.  Place the total on the space provided on the top section of this form.
Should an employee fall below eight points, a follow up review will be scheduled within 90 days.

| Follow-up Date: 4/23/99 |
|---|

Supervisor's Comments

Employee has several areas which need specific attention immediately (see attached form).

_____                          3/23/99
Supervisor's Signature                                   Date

Employee's Comments

_____                          3-23-99
Employee's Signature                                     Date

Director's Comments

_____                          3-22-99
Director's Signature                                     Date

EXHIBIT
1 - D

# CITY OF BROWNSVILLE
# EMPLOYEE PERFORMANCE REVIEW

Employee:     Justin Oakerson - #536-4145
Date:         March 23, 1999

## Attendance: Score 0

Employee has performed unsatisfactorily in the area of attendance. While employee tends to be at work every day as expected, employee was a No-Call/No-Show on Saturday, February 27, 1999, when employee did not appear for work, and did not call in.

## Punctuality: Score 1

Employee needs improvement in the area of punctuality. While employee is typically in the office on time, employee has, on occasion, arrived after 08:00. Employee has also on occasion been out of service for extended periods of time while his vehicle has been repaired, and has not made arrangements to be picked up and returned to the office.

## Quality of Work: Score 0

Employee has performed unsatisfactorily in the area of work quality. Employee seems to spend extended periods of time on work. Employee seems to have some problems working with standard PC software packages. Some items, which have been assigned to employee, have not been accomplished in a reasonable time period (patrol car brake lights not being fixed, etc.). Employee has received a written warning for substandard work during the first two months of employment. Employee also occasionally deviates from his primary duty to perform other functions, such as responding to emergency calls. On one occasion, employee deviated from training an employee in map skills to respond with the trainee to the scene of a deceased person.

## Job Knowledge: Score 1

Employee needs improvement in the area of job knowledge. While employee appears to be fully competent in areas of patient assessment and treatment, employee has not demonstrated the ability to function effectively as training officer. Employee must be reminded to turn in work, to arrange classes, and to follow-up on issues. Employee does not seem to utilize all tools available in accomplishing training goals. Employee is not familiar with Standard Operating Procedures of the department, to the extent that he was unable to answer a subordinate employee's question concerning Standard Operating Procedures during a disciplinary meeting. Employee occasionally deviates from his primary duty to perform other functions, such as responding to emergency calls.

## Quantity of Work: Score 1

Employee needs improvement in the area of quantity of work. While employee has submitted completed assignments and projects, and has performed training classes, the quantity of work at present is lacking. Daily run reports, which are expected to be reviewed and submitted by 09:00 each morning are typically not submitted until several hours after the deadline. Overall, the ability to handle multiple significant projects at the same time appears to be lacking.

## Cooperation: Score 2

Employee has performed fully satisfactorily in the area of cooperation. Employee is always willing to work with co-workers to complete tasks, and has demonstrated the ability to adapt to other's needs in accomplishing goals. Employee cooperates well with administrative staff.

## Customer Service: Score 2

Employee has performed fully satisfactorily in the area of customer service. Employee is always willing to assist patients in the field, as well as patients and visitors walking in to EMS stations. Unfortunately, this desire to assist patients in the field sometimes takes the employee away from his primary function; training. Employee is also visibly interested in improving service to Brownsville EMS employees and to patients in the field.

**Total Employee Score:  7 of 21 possible points (Needs Improvement)**

# *Emergency Medical Services*



# MEMORANDUM

**To:**       **Art Rodriguez, EMS Director**

From:       Jeff Johnston, Assistant EMS Director

cc:

Date:       Friday, June 18, 1999

**Subject:**       **Performance Review -- Justin Oakerson, EMS Training Officer**

Art, as you are well aware, Justin Oakerson has been employed by this department since January 15, 1999 as the EMS Training Officer. On March 23, 1999, I evaluated Mr. Oakerson's performance, and provided you with a copy of the evaluation in which Mr. Oakerson rated 7 out of a possible 21 points, a score that requires a follow-up review within 90 days.

During the meeting that day with Mr. Oakerson, I advised him that based on the performance that he was showing at the time of the evaluation, he would not pass his probationary period. I explained each performance area to Mr. Oakerson, along with his rating and the basis for that rating. I praised him for the areas in which he was performing "Fully Satisfactorily," and encouraged him to work on improving all areas in which he was rated either "Needs Improvement" or "Unsatisfactory." I told Mr. Oakerson to look at the areas in which he needed to improve, and to develop plans as to how he would improve. I encouraged him to share those plans with me whenever he needed my advice or opinion on an issue.

Based on recent performance and my observations, it is my opinion that Mr. Oakerson has not demonstrated the ability to perform adequately in the position of Brownsville EMS Training Officer. I submit that the employee has not passed his probationary period. Following, you will find the basis for this opinion.

## Attendance

In my opinion, the employee has performed satisfactorily in the area of attendance, while the employee was a no-call, no-show on one date prior to my first evaluation

EMS Station 1
1325 E. Ringgold St.
Brownsville, TX 78520
(956) 546-8584
(956) 546-8447 Fax
www.ci.brownsville.tx.us/ems

**EXHIBIT**

*1 - E*

on the 23rd of March, the employee has, to the best of my knowledge, been at work each day subsequent to his first evaluation, thereby showing improvement in this area.

## Punctuality

In my opinion, Mr. Oakerson needs improvement in the area of punctuality. While Mr. Oakerson is typically in the office on time, there have been instances where the employee has been late to meetings or work assignments which have resulted in delays in other areas of the service.

For example, a scheduled meeting between Mr. Oakerson, Mr. Patrick Lerud, and myself, which was to take place at the Madison Street Office at 0900 hours on a day during the week of May 16, 1999 was delayed until 1100 hours following a telephone conversation between Mr. Oakerson and myself that morning. At 1145 hours that day, I called Mr. Oakerson to find his status, and learned that the employee had been unable to come to the office at the scheduled time. Mr. Oakerson, however, had failed to contact me about the schedule change. The meeting finally took place just after 1200 hours. As a result of the delay, I was forced to postpone another meeting with a local media representative.

On another day, Mr. Oakerson was giving a training session at the Port Station, where he was instructed by me to take one of the employees (Mr. Carlos Elizondo) in the training session and travel to Station 5 as soon as the session was over, so that they could staff an empty ambulance for a few hours. He was instructed to then bring the ambulance to Station 1 so that they could pick up Mr. Elizondo's personal vehicle. Some time later, Mr. Oakerson and Mr. Elizondo walked past my office in Station 1 – when asked if they were already in the ambulance, Mr. Oakerson stated that he had not yet gone to Station 5 to pick up his ambulance, but had first come to Station 1 so that they could pick up Mr. Elizondo's belongings and vehicle. Mr. Oakerson's actions were contrary to my instructions, and resulted in a delay of placing the ambulance in service of at least 30 minutes.

## Quality of Work

It is my opinion that the employee has performed unsatisfactorily in the area of work quality. As Training Officer for the department, Mr. Oakerson's primary duty is to make sure that the employees are properly trained to perform their tasks in the field.

One training session which I attended covered CPR and AED training. Four items struck me as awkward during the training – 1) the AED protocol is not currently in

EMS Station 1
1325 E. Ringgold St.
Brownsville, TX 78520
(956) 546-8584
(956) 546-8447 Fax
www.ci.brownsville.tx.us/ems

effect in BEMS, yet it was being taught to the crews in attendance – 2) the training was using an AED unit that was borrowed from another agency for the training, and was not a LifePak 12 model as are currently in use by our crews – in fact, the AED model demonstrated was found nowhere in the equipment inventory at BEMS – 3) the AED that was borrowed for the training was not working properly, (the batteries were dead) thus lessening the impact of the hands-on training – 4) when asked about the AED features of the LifePak 12, the Training Officer was unable to answer questions about the equipment, which is currently in use by our crews in the field.

Another of Mr. Oakerson's duties is the review of BEMS TDH run sheets for general completeness, and for any inappropriate or questionable treatment in the field by our medics. Mr. Oakerson has been instructed verbally by myself and by you on several occasions that it is his responsibility to see that the employees are properly filling out the TDH forms, and that as a supervisor, he should issue discipline to employees who continually submit substandard paperwork. In early May of 1999, I met briefly with Mr. Oakerson due to a verbal complaint that I had received from the EMS Office Supervisor, who stated that employees were continually not properly completing the TDH forms. I told Mr. Oakerson that employees not properly completing the forms should be given a friendly reminder to fill out the forms correctly, followed by an informal warning, followed by a formal verbal warning, followed by a written warning for continued submission of substandard paperwork. While I have yet to see any records of employees who have been disciplined by Mr. Oakerson (copies of discipline must be sent to either you or myself), I have continued to receive verbal, and now written complaints from the office supervisor stating that the same employees are, on a regular basis, turning in reports that contain either incomplete or inappropriate narratives, the very part of the form that the Training Officer should be taking the most time in evaluating.

When assigned the task of preparing paperwork to submit to the Purchasing Department for an annual contract for EMS uniforms, Mr. Oakerson was instructed to be very specific in detailing the uniforms. Mr. Oakerson came to me on April 7, 1999 with a brief, one or two sentence description of each uniform. I instructed Mr. Oakerson to be much more descriptive, and instructed him to check his spelling before resubmitting his work. Later that day, after correcting his spelling errors (with my assistance) Mr. Oakerson resubmitted his work, with a little more information, but was again instructed to be more descriptive of the uniforms. One area of the uniforms which I warned Mr. Oakerson to be very specific about was the pockets of the uniform shirts. I advised him, for example, that he would need to specify that the pockets were to have the button sewed on the flap of the pocket, and should have Velcro closures to them. Mr. Oakerson

EMS Station 1
1325 E. Ringgold St.
Brownsville, TX 78520
(956) 546-8584
(956) 546-8447 Fax
www.ci.brownsville.tx.us/ems

completed his work, and sent it to some uniform companies to get quotes for the purchase of EMS uniforms before submitting it to purchasing for the annual contract. A few days later, Mr. Oakerson was out of the office when a telephone call came in for him from one of the vendors who was completing his quote for the uniforms. I asked him about the uniforms, and during his description of the uniform shirts, I noticed that he had not mentioned the Velcro closures for the pockets. When I asked him about this, he mentioned that it had not been specified in the description that he had been sent, but that he would see what could be done to provide shirts that had Velcro closures. I took the information to Mr. Oakerson, and advised him, for the third time, that it was critical that he be very specific when giving vendors specifications on any uniforms or equipment.

## Job Knowledge

It is my opinion that the employee needs improvement in the area of job knowledge. Mr. Oakerson appears to have a solid understanding of emergency medical procedures, but seems to struggle at times to apply that knowledge to the task of overseeing the training of an entire department.

An example of the shortcoming lies in the aforementioned training session, where the time was not taken by Mr. Oakerson to prepare for the training session ahead of time by making sure that the equipment to be demonstrated was in working order, and by taking the time to become thoroughly familiar with the equipment that the crews utilize in the field, namely the LifePak 12's.

Another example of the shortcoming is evident in that when, on June 14, 1999, Mr. Oakerson was asked by me to produce a list of certifications held by each employee in the department. Mr. Oakerson's response was that he was not sure that he knew all of the certifications held by each employee. He went on to explain that he had asked employees to provide him with copies of their certifications, but had not received them. His comment seemed alarming, as he had been employed as Training Officer for almost exactly five months at that point, and was expressing a distressing lack of knowledge about the training levels and needs of departmental personnel. I instructed him to prepare me a list of everything that he knew as of that moment, and he returned shortly thereafter with a short list, showing certifications for only 14 of the 36 certified personnel in the department.

EMS Station 1
1325 E. Ringgold St.
Brownsville, TX 78520
(956) 546-8584
(956) 546-8447 Fax
www.ci.brownsville.tx.us/ems

## Quantity of Work

It is my opinion that the employee has performed unsatisfactorily in the area of work quantity. Some projects that have been assigned to Mr. Oakerson seem to take a significant length of time to complete, and are sometimes lacking in quality.

One aspect of Mr. Oakerson's position was the completion of a project grant application for the State of Texas, which would provide the Department with some additional educational funding. Mr. Oakerson was given the information for the grant within the first week of his being hired as Training Officer, with the understanding that is was due in early April of 1999. Mr. Oakerson finally submitted the packet for review on April 1, 1999, leaving us little time to evaluate and prepare any necessary backup documentation. The completed packet was returned to him on April 6,1999 at 1200 hours, with instructions to place it in the mail right away, as the deadline was fast approaching if not already past. Later that evening, at approximately 1650 hours, I noticed that Mr. Oakerson was just walking out of Station 1, and when asked if the grant had been mailed as needed, Mr. Oakerson stated that it had not, as he had just found the file that contained the appropriate mailing address. My understanding is that the packet was not mailed out until the middle of the following day.

Another example of work that has taken Mr. Oakerson an excessive length of time to complete is the simple moving of his computer from the back of EMS Station 1 to his office. At one point in mid-March of 1999, I noticed that Mr. Oakerson had placed his desktop computer on a table in the back of Station 1, where it was accessible to the crews. I advised him that the computer surely contained sensitive data, and that it needed to be placed back in his locked office. On April 1, 1999 at approximately 1430 hours, I again instructed Mr. Oakerson to place the computer in his office, this time telling him that it needed to be done by the end of the day. On April 6, 1999 at 1705 hours, I noted that Mr. Oakerson's computer was still on the table in the back of the station. I believe that the computer was finally moved into his office the following day.

## Cooperation

It is my opinion that the employee needs improvement in the area of cooperation. While the employee appears to work well with subordinates, it appears that cooperation with fellow supervisors or the Assistant Director is occasionally lacking.

During our evaluation meeting on March 23, 1999, I mentioned to Mr. Oakerson that one area which had led to his lower rating on the evaluation was the fact that he was unable to turn in reports to the Madison Street office in a timely manner. I

EMS Station 1
1325 E. Ringgold St.
Brownsville, TX 78520
(956) 548-8584
(956) 546-8447 Fax
www.ci.brownsville.tx.us/ems

advised him to work with the shift supervisors to seek a solution to the problem, and to let me know what they had worked out. Mr. Oakerson suggested that by coming in to work one hour earlier each day, he might be able to finish the reports on time. I instructed Mr. Oakerson to come up with a plan to present to me, and told him that if coming in early was one aspect of the plan, that we would see what could be done, but that I wanted a complete plan of action before I would take his suggestions to you for final approval. I learned a few weeks later that Mr. Oakerson was coming in to work one hour earlier each day. In speaking with you, I learned that Mr. Oakerson had come to you and asked for permission to come in earlier, which had been granted. I am concerned in that the Training Officer has yet to report to me with his plan of action, and actually circumvented the chain of command in asking you the scheduling question.

Mr. Oakerson was also the subject of a complaint from one of his fellow supervisors, Mr. Nat Trejo, who stated that on April 30, 1999 Mr. Oakerson was sarcastic on the radio when asked by Mr. Trejo about the status of an ambulance which was assisting at a Career Day. Mr. Trejo later met with me and stated that he was frustrated with Mr. Oakerson, because he seemed to step over the boundaries between Training Officer and Field Supervisor on occasion, and was making Mr. Trejo's job more difficult. Having heard the radio conversation in question, I agreed with Mr. Trejo, and later advised Mr. Oakerson that he should leave the finer details of field supervision to the Field Supervisors, and should stick to the duties of Training Officer.

## Customer Service

It is my opinion that the employee needs improvement in the area of customer service.

While Mr. Oakerson has performed several career day presentations without any negative comment that has been made known to me, I have been made aware of a few instances in which his performance in this area has been questionable.

On June 4, 1999, Mrs. Esther Garza, the EMS Office Manager mentioned to me while reviewing her activities during the past year, that while working at a health fair at Sunrise Mall on January 30, 1999 with Mr. Oakerson, she had noted that his performance had been somewhat less than expected. She stated that he had simply passed information to children without speaking to them, had not encouraged people to come to the booth, had complained about the work assignment and had asked if the previous Training Officer had been required to do the same thing (which was, in fact, the case as I understand it), and had actually left the booth and ambulance for an excessive length of time to go talk with friends instead of working. Mrs. Garza ended her comments to me by stating that if at all possible,

EMS Station 1
1325 E. Ringgold St.
Brownsville, TX 78520
(956) 546-8584
(956) 546-8447 Fax
www.ci.brownsville.tx.us/ems

she would like to work with someone else during career day or health fair presentations, because she wanted "to work with someone who is excited about their job."

In preparation for a health fair at the Public Library on April 7, 1999, you advised me that Justin would need to be present to assist with the event. When I mentioned the event, date, and times to Mr. Oakerson on April 5, he stated that he believed that he had another event scheduled for that date. I instructed him to find a replacement for him at his other event, and to make sure to be in attendance at the health fair that was being prepared at the Public Library. While you and I were both there for the opening of the health fair, Mr. Oakerson was not. A quick telephone call confirmed that he was at his other event, and was not planning to attend the health fair as instructed. I recall both of us canceling appointments in order to gather equipment, brochures, and materials for the booth, as well as to remain at the booth so that we could take care of the many visitors to the fair that day.

## SUMMARY

In summary, while the employee has accomplished some tasks during his period of employment as BEMS Training Officer, he has not, in my opinion, adequately performed the duties associated with the position. Although Mr. Oakerson did not make any comments to me on March 23, 1999 at the time of my evaluation of his performance, I understand that he later mentioned to you that he disagreed with some aspects of the evaluation. Were I to evaluate the employee today, based on the performance detailed above, the score would be a 6 out of a possible 21. I recall, however, that after meeting with you in early April of this year, you were planning to conduct the follow-up evaluation of Mr. Oakerson. Mr. Oakerson's probationary period ends on Thursday, July 15, 1999.

Please let me know if you have any questions, or wish to have any further clarification on any of these details.

EMS Station 1
1325 E. Ringgold St.
Brownsville, TX 78520
(956) 546-8584
(956) 546-8447 Fax
www.ci.brownsville.tx.us/ems

# Emergency Medical Services



**BROWNSVILLE**
*On the Border, By the Sea*

Monday, June 21, 1999

Mr. Justin Oakerson,
37 Meadow Glen
Brownsville, Texas 78521

Mr. Oakerson,

This is to advise you that you have failed your probationary period. Therefore your employment with the City of Brownsville is terminated effective June 22, 1999 at 16:00 hours.

Sincerely,

Arturo Rodriguez
EMS Director

File

CC:    Efren Fernandez, Human Resources Director
        Carlos Rubinstein, City Manager

EXHIBIT
_1 - F_

P.O. Box 911
1325 E. Ringgold St.
Brownsville, TX 78522-0 911
(956) 541-9491
(956) 544-3257 Fax
www.ci.brownsville.tx.us/ems

THE STATE OF TEXAS                    §
                                      §
COUNTY OF CAMERON                     §
                                      §
CITY OF BROWNSVILLE                   §

I, Sarah Reed, the duly appointed, qualified Acting City Secretary of the City of Brownsville, Texas, do hereby certify that the following Exhibit 2-A is a full, true and correct copy of the City Charter (Pages CH-1, CH-2, CH-2.1, CH-3 through CH-50, CH-50.1, CH-51 through CH-81 (and Charter Index, Pages I-1 though I-31) adopted at an election held on December 13, 1915, and amended June 28, 1963 and July 29, 1975 (see Ordinance Number 93-1270), an Ordinance declaring the results of a Charter Amendment Election held on November 2, 1993).

I further certify that the following Exhibit 2-B is a full, true and correct copy of Ordinance Number 93-1270 (pages 1 through 22), an Ordinance of the City Commission of the City of Brownsville, Texas, canvassing the returns of a special election held in and throughout the City of Brownsville on Tuesday the 2nd day of November 1993 on twelve propositions for the amendment of the Charter of such City; adopted by the City Commission on the 16th day of November, 1993, and as recorded in the City Commission Minutes of the City of Brownsville.

I further certify that the following Exhibit 2-C is a full, true and correct copy of the Resolution of the City Commission of the City of Brownsville, Texas, adopting all of the provisions and requirements contained in that certain document entitled "Personnel Policies Manual" for city employees, dated July 7, 1998 (pages i-viii & 1-47); adopted by the City Commission on the 7th day of July, 1998, and as recorded in the City Commission Minutes of the City of Brownsville.

I further certify that the following Exhibit 2-D is a full, true and correct copy of the Resolution of the City Commission of the City of Brownsville, Texas, accepting, approving, and adopting all of the provisions and requirements contained in that certain document entitled "Personnel Policies" for city employees, dated June 13, 1978 (pages i-iii & 1-44); adopted by the City Commission on the 13th day of June, 1978, and as recorded in the City Commission Minutes of the City of Brownsville.

In testimony whereof, witness my hand and seal of the said City of Brownsville, Texas, on this the 28th day of November, 2000.

Sarah Reed
Acting City Secretary
City of Brownsville, Texas

EXHIBIT

2

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUSTIN OAKERSON | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | |
| CITY OF BROWNSVILLE, | § | B - 99 - 197 |
| ARTURO RODRIGUEZ and | § | |
| CARLOS RUBINSTEIN | § | |

## AFFIDAVIT OF CARLOS RUBINSTEIN

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF CAMERON | § |

BEFORE ME, the undersigned official, on this day appeared **CARLOS RUBINSTEIN**, who is personally known to me, and first being duly sworn according to law upon his oath deposes and says:

(1)    My name is Carlos Rubinstein and I am over 18 years of age. I have never been convicted of a crime, and I am fully competent to make this affidavit. I have personal knowledge of the facts stated herein, and they are all true and correct.

(2)    I am the former City Manager for the City of Brownsville, and I held that position at the time of the termination of Justin Oakerson's employment as EMS Training Officer with the City of Brownsville. Through my position as City Manager, I became familiar with the City of Brownsville's Personnel Policies that took effect in 1978, as well as the City of Brownsville's Personnel Policies Manual that took effect in 1998. Through my training and experience I became aware that Section 311 of the 1978 Personnel Policies provided that an employee who fails his promotional probation "shall be reverted to the position and salary previously held at the time of the probation," while Section 212 of the City's 1998 Personnel Policies Manual did not have a similar provision, and there was

PAGE 1 OF 3

EXHIBIT
3

CutePDF - www.cutepdf.com

no other similar provision anywhere else in the 1998 Manual. Accordingly, if an employee fails a promotional orientation period after July 7, 1998, he would not be entitled to an "automatic reversion" to his former position and salary under the City's new policies. Such an employee would need to reapply for the position to which he wishes to return, and he would be eligible for rehire depending on availability of the position and his being the most qualified candidate for that position. Because Justin Oakerson was promoted effective January 18, 1999, the City of Brownsville's 1998 Personnel Policies Manual would control all employment decisions relating to him.

(3)     If an employee fails his probational orientation period after 1998, he would still be eligible for later advancement or reinstatement, should he seek a return to his former or another position with the City of Brownsville.

(4)     Effective January 8, 1999, Justin Oakerson was promoted from the position of EMT-Paramedic, a regular, part-time employee, to the position of EMS Training Officer, a probationary, full-time position. Mr. Oakerson's personnel file reflects that on March 23, 1999, Justin Oakerson had received a negative evaluation from Assistant Director Johnston. Although Mr. Rodriguez could have chosen to immediately terminate Mr. Oakerson's employment at that time, pursuant to Section 212 of the Personnel Policies Manual, he did not do so.

(5)     Thereafter, Mr. Oakerson received a second Performance Review on or about June 18, 1999. That Review indicated that although Mr. Johnston had spoken with Mr. Oakerson on and after March 23, 1999, about the areas in which he needed to improve, as well as about plans on how he could improve, Mr. Oakerson had still not yet demonstrated the ability to perform adequately in the position of Training Officer. Mr. Johnston concluded that Mr. Oakerson had not passed his probationary period. Mr. Rodriguez thereafter properly submitted a letter to Mr. Oakerson on June 21, 1999, reflecting that he had failed his probationary period and that his employment with the City of Brownsville was to be terminated effective June 22, 1999.

(6)     Had Mr. Oakerson previously been a full-time, permanent employee (which he was not) before he failed his promotional orientation period, Mr. Rodriguez may have had the option of returning him to that former position. The 1998 Personnel Policies did not authorize Mr. Rodriguez to return Mr. Oakerson to his former position of part-time EMT-Paramedic, however. At no time did I ever receive any written or oral request from Mr. Oakerson to return to his former position of part-time paramedic, and to the best of my knowledge, Mr. Oakerson also did not ever re-apply to return to his former position as EMT-Paramedic in any other fashion.

PAGE 2 OF 3

Case 1:99-cv-00197   Document 22   Filed in TXSD on 11/30/2000   Page 38 of 46

(7)   On or about June 24, 1999, I received a letter from Mr. Oakerson's attorney,
Miguel Saldaña, requesting an appeal of "disciplinary action" taken against Mr.
Oakerson through his termination, a true and correct copy of which is attached
as Exhibit 3-A.  I interpreted this request to be an appeal to be reinstated to his
position of Training Officer.  Because Mr. Oakerson was still in his probational
orientation period at the time of his termination, the City's Personnel Policies
Manual provided that he had no right of appeal, grievance or any other remedy
or recourse, and the City's Personnel Policies further provide that failure of the
promotional orientation period is not considered disciplinary action.  I therefore
did not have any authority to act on Mr. Saldaña's request.  It was based on this
understanding that I submitted a letter dated June 29, 1999, to Mr. Saldaña, a
true and correct copy of which is attached hereto as Exhibit 3-B.  As set out in
that letter, I attempted to assure Mr. Saldaña that the City would not condone any
infringement of employees' rights, and that all actions taken by me were based
strictly on my understanding of the City's Personnel Policies Manual and the
Performance Reviews of Mr. Oakerson, and not because of any alleged union
involvement or association.

Further affiant sayeth not.


CARLOS RUBINSTEIN


SUBSCRIBED AND SWORN TO BEFORE ME on the 29th day of November, 2000,
to certify which witness my hand and official seal.



PAULA KIMBALL
NOTARY PUBLIC
State of Texas
Comm. Exp 03-24-2001

Notary Public, State of Texas


My Commission Expires:

03-24-2001

CERTIFIED
Z 735 633 384
MAIL

LAW OFFICES OF
CARINHAS & SALDAÑA, L.L.P.
CORPORATE PLAZA, SUITE 109
302 KINGS HIGHWAY
BROWNSVILLE, TEXAS 78521

JACK G. CARINHAS, JR.
MIGUEL A. SALDAÑA

June 23, 1999

TEL: 956/542-9161
FAX: 956/542-3651

CERTIFIED MAIL Z735 633 384
RETURN RECEIPT REQUESTED

Carlos Rubenstein, City Manager
City of Brownsville
City Hall
12th Street & Market Square
Brownsville, Texas   78520



RECEIVED
JUN 25 1999

Re:   Appeal of Termination
      Justin Oakerson #4145

Dear Mr. Rubenstein:

Please be advised that this office has been retained by Mr. Oakerson in regards to his termination from employment from the City of Brownsville's Emergency Medical Services effective June 22, 1999. The disciplinary action taken was the termination of Mr. Oakerson's employment. The person imposing the discipline was Mr. Arturo Rodriguez, EMS Director. Pursuant to Sec. 704 of the City's Personnel Policies Manual, this appeal is directed to you inasmuch as Mr. Rodriguez is the Department Director.

Mr. Oakerson's position is that his dismissal is in direct violation of Sec. 212 of the Manual. Additionally, there was a complete failure to abide by Sec. 702 of the Manual in the decision to terminate Mr. Oakerson.

This office is of the opinion that Mr. Oakerson's discharge was a direct result of the exercise of his first amendment right of free speech when he discussed with EMS personnel the possibility of organizing and forming a union. Mr. Oakerson seeks reinstatement and back pay to the position of EMT Paramedic.

Please refer any further communication including your decision to this office.

Sincerely,

Miguel A. Saldaña

MAS/el
Encl.



RECEIVED
JUN 24 1999
City of Brownsville
City Managers Office

EXHIBIT
3-A



June 29, 1999


Miguel A. Saldana
Corporate Plaza, Suite 109
302 Kings Highway
Brownsville, Texas 78521

Dear Miguel A. Saldana,

In reply to your letter dated June 23, 1999 in reference to Mr. Oakersons appeal of termination, I have found this to be a non-appealable issue. Mr. Oakerson's separation from the City of Brownsville was based on performance and not on disciplinary issues. Mr. Oakerson did not pass his six-month orientation period as mandated by city policy. Failure of the orientation period is not considered disciplinary action under the City's Personnel Policy Manual and is not eligible for appeal.

Let me assure you that the City of Brownsville will not condone any infringement of employees' rights. Mr. Oakerson separation was in no way a result of any violation of his constitutional rights.

Sincerely,

Carlos Rubinstein
City Manager

EXHIBIT

3 - B

RECEIVED

JUL 07 1999

B.E.M.S. DEPT.

XC: Art Rodriguez, EMS Director
      Efren Fernandez, HR Director

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUSTIN OAKERSON | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | |
| CITY OF BROWNSVILLE, | § | B - 99 - 197 |
| ARTURO RODRIGUEZ and | § | |
| CARLOS RUBINSTEIN | § | |

## AFFIDAVIT OF ARTURO RODRIGUEZ

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF CAMERON | § |

BEFORE ME, the undersigned official, on this day appeared **ARTURO RODRIGUEZ**, who is personally known to me, and first being duly sworn according to law upon his oath deposes and says:

(1) My name is Arturo Rodriguez and I am over 18 years of age. I have never been convicted of a crime, and I am fully competent to make this affidavit. I have personal knowledge of the facts stated herein, and they are all true and correct.

(2) I am the former Emergency Medical Services Director for the City of Brownsville, and I held that position at the time of the termination of Justin Oakerson's employment as EMS Training Officer with the City of Brownsville. Through my position as EMS Director, I became familiar with the City of Brownsville's Personnel Policies that took effect in 1978, as well as the City of Brownsville's Personnel Policies Manual that took effect in 1998. Through my training and experience I became aware that Section 311 of the 1978 Personnel Policies provided that an employee who fails his promotional probation "shall be reverted to the position and salary previously held at the time of the probation," while Section 212 of the City's 1998 Personnel Policies Manual did not have a

PAGE 1 OF 3

EXHIBIT
4

similar provision, and there was no other similar provision anywhere else in the 1998 Manual. Accordingly, if an employee fails a promotional orientation period after July 7, 1998, he would not be entitled to an "automatic reversion" to his former position and salary under the City's new policies. Such an employee would need to reapply for the position to which he wishes to return, and he would be eligible for rehire depending on availability of the position and his being the most qualified candidate for that position. Because Justin Oakerson was promoted effective January 18, 1999, the City of Brownsville's 1998 Personnel Policies Manual would control all employment decisions relating to him.

(3)     If an employee fails his probational orientation period after 1998, he would still be eligible for later advancement or reinstatement, should he seek a return to his former or another position with the City of Brownsville.

(4)     On January 12, 1999, I recommended the promotion of Justin Oakerson from EMT-Paramedic, a regular, part-time employee, to the position of EMS Training Officer, a probationary, full-time position. That recommendation was subsequently accepted and Mr. Oakerson began as Training Officer effective January 18, 1999. At the time of his promotion, I explained to Mr. Oakerson the duties involved in being Training Officer. The direct supervision of Mr. Oakerson, however, was the responsibility of Assistant EMS Director Jeff Johnston.

(5)     On March 23, 1999, I was made aware that Justin Oakerson had received a negative evaluation from Assistant Director Johnston. Although I could have chosen to immediately terminate Mr. Oakerson's employment at that time, pursuant to Section 212 of the Personnel Policies Manual, I chose instead to allow Mr. Johnston to counsel with Mr. Oakerson, in hopes that his performance would improve.

(6)     Between March 23 and June 18, 1999, I discussed Mr. Oakerson's performance as Training Officer with Mr. Oakerson and Assistant Director Johnston. During that time, however, Mr. Oakerson's performance did not improve. On or about June 18, 1999, I received Mr. Johnston's Performance Review of Mr. Oakerson. That Review indicated that although Mr. Johnston had spoken with Mr. Oakerson on and after March 23, 1999, about the areas in which he needed to improve, as well as about plans on how he could improve, Mr. Oakerson had still not yet demonstrated the ability to perform adequately in the position of Training Officer. Mr. Johnston therefore concluded that Mr. Oakerson had not passed his probationary period. I therefore submitted a letter to Mr. Oakerson on June 21, 1999, reflecting that he had failed his probationary period and that his employment with the City of Brownsville was to be terminated effective June 22, 1999.

PAGE 2 OF 3

(7)    At no time did I ever receive any written or oral request from Mr. Oakerson to return to his former position of part-time paramedic. To the best of my knowledge, Mr. Oakerson also did not ever re-apply to return to his former position as EMT-Paramedic in any other fashion. I did specifically tell Mr. Oakerson that he could re-apply for a paramedic position, and had Mr. Oakerson applied to return to his former position of paramedic, I would have hired him as a full-time or part-time paramedic. To the best of my knowledge, Mr. Oakerson is a very qualified paramedic, although he did not appear to have the leadership, supervisory, initiative and other qualities necessary for the position of Training Officer.

(8)    The actions I took in terminating Mr. Oakerson were based solely and entirely on the recommendation and evaluation of Assistant EMS Director Jeff Johnston. As part of my duties, I would often rely heavily on Mr. Johnston's evaluations of EMS employees, because he is better able to see the employees' performance on a daily basis. Although I was previously aware that Mr. Oakerson may have had some union affiliation, any union affiliation or association played no part in any of my decisions relating to Mr. Oakerson's employment.

Further affiant sayeth not.

ARTURO RODRIGUEZ

SUBSCRIBED AND SWORN TO BEFORE ME on the _____ day of November, 2000, to certify which witness my hand and official seal.

Notary Public, State of Texas



My Commission Expires:

10/06/2000



PAGE 3 OF 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUSTIN OAKERSON | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | |
| CITY OF BROWNSVILLE, | § | B - 99 - 197 |
| ARTURO RODRIGUEZ and | § | |
| CARLOS RUBINSTEIN | § | |

## AFFIDAVIT OF JEFF JOHNSTON

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF CAMERON | § |

BEFORE ME, the undersigned official, on this day appeared **JEFF JOHNSTON**, who is personally known to me, and first being duly sworn according to law upon his oath deposes and says:

(1)     My name is Jeff Johnston and I am over 18 years of age. I have never been convicted of a crime, and I am fully competent to make this affidavit. I have personal knowledge of the facts stated herein, and they are all true and correct.

(2)     Shortly after Mr. Oakerson was promoted to the position of EMS Training Officer on January 18, 1999, I met with Mr. Oakerson and explained the duties and responsibilities of the position of Training Officer. Thereafter, I began to see problems in Mr. Oakerson's performance of his job duties. On March 23, 1999, I completed a Performance Review on Mr. Oakerson, in order to provide him with information on how he had been performing as Training Officer, and to provide him with guidelines and suggestions on how to improve his performance. A true and correct copy of my Performance Review of Mr. Oakerson is referenced as Exhibit 1-D. That review sets out a number of the concerns I had

PAGE 1 OF 2

EXHIBIT

5

with Mr. Oakerson.  During my meeting with Mr. Oakerson on March 23, 1999, we discussed his performance and what he needed to do to improve during the remainder of his promotional orientation period.  I also explained to him at that time that based on his performance thus far, he would not pass his probationary period.

(3)     Thereafter, I continued to evaluate Mr. Oakerson's performance as Training Officer, but I eventually concluded that he did not demonstrate the ability necessary to perform the position of EMS Training Officer.  My evaluation of Mr. Oakerson was completed on June 18, 1999, and a true and correct copy is referenced as Exhibit 1-E.  I understood that pursuant to the City's Personnel Policies Manual, if EMS Director Rodriguez accepted my Review that Mr. Oakerson did not pass his probationary period, Mr. Oakerson would not continue as Training Officer..

(4)     In making my evaluation of Mr. Oakerson's performance, I did not consider any union affiliation or association, and any relationship he may have had with a union organization played no part whatsoever in my evaluation.

Further affiant sayeth not.

_____
JEFF JOHNSTON

SUBSCRIBED AND SWORN TO BEFORE ME on the 29 day of November, 2000, to certify which witness my hand and official seal.

_____
Notary Public, State of Texas

ESTHER A. GARZA
Notary Public, State of Texas
My Commission Expires 07-14-2001

My Commission Expires:

7-14-2001

PAGE 2 OF 2

Provides input/ feedback in areas of training, patient care and documentation skills; maintains good relationship with employees, peers, patients, public, allied health care persons and management; supervises the evaluation of employees and employee candidates; conducts public speaking activities.

## BENEFITS:
**THE CITY OF BROWNSVILLE OFFERS AN EXCELLENT BENEFITS PACKAGE.**

## HOW TO APPLY:
Application forms are available at or resume may be submitted to:

**CITY OF BROWNSVILLE**
**P.O. BOX 911 CITY HALL MARKET SQUARE**
**BROWNSVILLE, TEXAS 78520**

**IF YOU NEED AN ACCOMMODATION, PLEASE CALL:**
**(956) 548-6037    (956) 548-6036    OR TDD 1-800-RELAY TX.**

**OPEN FOR APPLICATION FOR PUBLIC AND CITY EMPLOYEES**
**10-05-98 THRU 10-09-98**