*2 3*

United States District Court
Southern District of Texas
FILED

NOV 3 0 2000

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUSTIN OAKERSON | § | |
| | § | CIVIL ACTION NO. |
| VS. | § | |
| | § | B - 99 - 197 |
| CITY OF BROWNSVILLE, | § | |
| ARTURO RODRIGUEZ and | § | |
| CARLOS RUBINSTEIN | § | (JURY REQUESTED) |

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

TO THE HONORABLE U.S. DISTRICT COURT:

COME NOW **CITY OF BROWNSVILLE, TEXAS, ARTURO RODRIGUEZ and**

**CARLOS RUBINSTEIN**, Defendants herein and files this their Motion for Summary Judgment,

pursuant to Federal Rule of Civil Procedure 56, and for cause would respectfully show unto the

Court the following:

### I.

### SUMMARY OF MOTION

A.     **Concise Statement of Elements of claims and Defenses on Which Summary
       Judgement is Sought.**

To establish a cause of action against the City of Brownsville under 42 U.S.C. §1983,

Plaintiff Justin Oakerson must prove (1) a municipal policy (2) attributable to the City's final

policymaker, (3) that caused (4) Plaintiff Oakerson to be deprived of a federal constitutional

right. *See Lopez v. Houston Independent School District*, 817 F.2d 351, 354 (5th Cir. 1987).

Similarly, Defendants Rodriguez and Rubinstein "are shielded from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of

which reasonable person would have known." *Harlow v. Fitzgerald*, 487 U.S. 800, 818, 102

S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). There is no genuine issue of fact on any of the

essential elements of Oakerson's §1983 claims against the City, Rodriguez or Rubinstein.

**B.    Legal Grounds Supporting Summary Judgment Motion.**

(1)    Municipal liability under §1983 cannot be predicated on the doctrine of agency or *respondeat superior*. *Monell v. New York Department of Social Services*, 436 U.S. 658, 690-94 (1978);

(2)    Section 1983 permits recovery from a city only when a plaintiff can prove that "action pursuant to *official municipal policy* of some nature caused a constitutional tort." *Jett v. Dallas Independent School District*, 491 U.S. 701, 729 (1989) (emphasis added) (*quoting Monell*, 436 U.S. at 691.

(3)    "Only those municipal officers who have final policymaking authority may by their actions subject the government to §1983 liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion) (emphasis added).

(4)    Identifying the City's final policymaker in the relevant area of municipal government presents a question of law which this Court must decide before it submits any factual issues to the jury. *Jett*, 491 U.S. at 737. To answer this legal question, the Court must consult state or local law to determine the official or collective body that has the final responsibility to set policy in the relevant area of the City's business. *McMillian v. Monroe County*, 117 S.Ct. 1734, 1736-37 (1997).

(5)    Oakerson alleges that the City terminated his employment in retaliation for his association with the Brownsville Professional Firefighters Association (hereinafter the "Association"). Plaintiff's Original Complaint, Paragraph 27. He alleges this violated his First Amendment right to freedom of association. *Id*. The relevant policy area, therefore, is that of employee discipline and redress.

(6)    The Brownsville City Charter confers final policymaking authority to the City Commission in the area of discipline and redress of EMS employees. *See* Exhibit A, CHARTER OF THE CITY OF BROWNSVILLE (hereinafter cited as "CHARTER"), art. V, §20 ("All appointments and removals of officers and employees shall be subject to the personnel policy adopted by the commission, except as otherwise provided by this Charter, or as provided by law.")

(7)    "Special difficulties can arise when it is contended [as Oakerson appears to have contended in this case] that a municipal policymaker has delegated his policymaking authority to another official." *Praprotnik*, 485 U.S., at 126. An incomplete delegation of authority by the governing body -- *i.e.*, where the governing body retains the right to review and approve a subordinate's actions -- is not a delegation of final policymaking authority. *Worsham v. City of Pasadena*, 881 F.2d 1336, 1341 (5th cir. 1989).

(8)    That the final policymaker merely goes along with a subordinate's formulation of operational policies is not a delegation of final policymaking authority to the subordinate. *Flores v. Cameron County*, 92 F.2d 258, 269 (5th Cir. 1996).

(9)    For a delegation of *final* policymaking authority to occur, the governing body must acknowledge that the agent or board acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility, subject only to the power of the governing body to control finances or curtail the authority of the agent or board. *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc). The governing body's acknowledgement in this regard must be *de jure*; the Fifth Circuit has expressly rejected the theory that the final policymaker for §1983 purposes can be identified by determining who wields final authority in the City's *de facto* power structure. Flores, 92 F.3d at 269. *See also Jett v. Dallas Independent School Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (recognizing *Praprotnik's* rejection of the theory of "de facto" policymaking authority).

(10)    Whether a delegation of final policymaking authority has occurred is a question of state law and not one of fact. *Worsham*, 881 F.2d at 340 and n.8.

(11)    Under state law, the only way the governing body of the City of Brownsville may act -- and thus the only way the Commission can delegate its final policymaking authority -- is by an official vote of the Commission at a properly called meeting. *See* CHARTER, art. V, §14; Texas Open Meetings Act, TEX.GOV'T CODE ÁNN. §551.001 et seq. (Vernon 1994); *see also Webster v. Texas & Pacific Motor Transport Co.*, 140 Tex. 131, 16 S.W.2d 75, 76 (1942).

(12)    The Brownsville City Commission has not acknowledged that the EMS Director acts as the Commission's agent with regard to setting final policy for the City in the area of employee discipline and redress. *See Gros v. City of Grand Prairie, Tex.*, 181 F.3d 613, 616 n.2 (5th Cir. 1999) (holding that individual's testimony that he considered himself the final policymaker in the relevant area was not evidence of any delegation of *final* policymaking authority by the City Council). Thus, as a matter of law, the Commission has not delegated final policymaking authority to the EMS Director in any of the relevant areas of the City's business.

(13)   Under §1983, an "official policy" is:

    (a)   A policy statement, ordinance, regulation, or decision that is officially adopted by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority; or

    (b)   A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents official policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policymaking authority.

    *Richardson v. Oldham*, 12 F.3d 1373, 1382 (5th Cir. 1994); *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).

(14)   "Knowledge of a continuing practice of city employees may be attributed to the governing body in one of two ways. Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information. Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussions or of a high degree of publicity." *Bennett*, 728 F.2d at 768.

(15)   To establish a city policy on the basis of an informal but persistent and widespread custom of city employees, Oakerson must prove a widespread pattern of "similar incidents" in which employees were terminated for engaging in associational activities. *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir.), *cert. denied*, 506 U.S. 973 (1992), *quoting Languirand v. Hayden*, 717 F.2d 220, 227 (5th Cir. 1983), *cert. denied*, 467 U.S. 1215 (1984).

(16)   To hold a municipality liable under §1983 due to a policy of inadequate overview of its policies of discipline and redress, Oakerson must prove that: (a) the procedures of the City were inadequate, (b) the City's final policymaker was deliberately indifferent in maintaining its policy of discipline and redress, and (c) the inadequate policy directly caused Oakerson's constitutional deprivations. *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989); *Synder v. Trepagnier*, 142 F.3d 791 (5th Cir. 1998); *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996).

(17)   Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Board of the County Comm'rs v. Brown*, 117 S.Ct. 1382 (1997).

(18)    "Qualified immunity shields public officials, like the officers here, from damages actions unless their conduct was unreasonable in light of clearly established law." A Plaintiff is required to establish first that a constitutional violation occurred, and the Court must then consider whether that right was clearly established at the time of its alleged occurrence. *Milligan v. Slidell*, 226 F.3d 652, 654 (5th Cir. 2000).

(19)    In evaluating whether an individual is entitled to qualified immunity, a Court should review the Plaintiff's Complaint and the record, and after assuming all of the Plaintiff's factual assertions are true, determine whether the facts alleged suffice to establish liability. The court should evaluate only whether the individual Defendant's actions were objectively reasonable, in light of the clearly established law at the time and the information possessed by the Defendant. *Wagner v. Bay City, Texas*, 227 F.3d 316, 320-21 (5th Cir. 2000).

(20)    Where a Plaintiff is alleging that wrongful motive is an element of a constitutional violation that establishes liability under §1983, he must come forward with evidence from which a trier of fact could conclude that the individual Defendants acted because of the constitutionally infirm motive. It is only after the Plaintiff has met that burden that courts reach the question of whether the individual Defendant's actions were objectively unreasonable. *Dudley v. Angel*, 209 F.3d 460, 463-64 (5th Cir. 2000); *Crawford-EL v. Britton*, 523 U.S. 574, 588, 118 S.Ct. 1584, 1596-97, 140 L.Ed.2d 759 (1998).

(21)    "When a Plaintiff files a complaint against a public official alleging a claim that requires proof of wrongful motive, the trial court must exercise its discretion in a way that protects the substance of the qualified immunity defense. ... Thus, the Court may insist that the Plaintiff put forward specific, nonclusory factual allegations" that establish improper motive causing a cognizable injury in order to survive a pre-discovery motion for dismissal or summary judgment." *Crawford-EL v. Britton*, 523 U.S. 574, 597-98, 118 S.Ct. 1584, 1596-97, 140 L.Ed.2d 759 (1998).

(22)    Once "the defendant-official has made a properly supported motion [for summary judgment], the Plaintiff may not respond simply with general attacks upon the Defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the Plaintiff has carried his or her burden of proving the pertinent motive." *Crawford-EL v. Britton*, 523 U.S. 574, 600, 118 S.Ct. 1584, 1598, 140 L.Ed.2d 759 (1998).

(23)    "Qualified immunity thus protects an official whose conduct was objectively reasonable, even if the conduct infringed upon a constitutional right of the Plaintiff." *Wagner v. Bay City, Te*xas, 227 F.3d 316, 321 (5th Cir. 2000); *Gutierrez v. City of San Antonio*, 139 F.3d 441, 445 (5th Cir. 1998), *citing Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

(24)   "[E]vidence of improper motive is irrelevant on the issue of qualified immunity, [although] it may be an essential component of the Plaintiff's affirmative case." *Crawford-El v. Britton*, 523 U.S. 574, 589, 118 S.Ct. 1584, 1592, 140 L.Ed.2d 759 (1998).

## C.   Factual Grounds Supporting Summary Judgment Motion.

(1)   No evidence exists to show that the Brownsville City Commission promulgated any *formal* policy statement, ordinance, or regulation which deprived Oakerson of his constitutional rights.

(2)   No evidence exists to show that the City Commission was deliberately indifferent to any purported deficiency in the discipline or redress of any of its employees. That is, no evidence exists to show that the City Commission condoned a widespread custom or practice of terminating employees in retaliation for associating with any organization.

(3)   No evidence exists to show that any arguable deficiency in the City's policy regarding discipline and redress for its employees could have caused any of the injuries allegedly sustained by Oakerson in this case, since nothing in the City's policies authorizes termination for any associational activities.

(4)   No evidence exists to show that some deficiency in the City's policy of discipline and redress was responsible for the alleged violations in this case.

(5)   No evidence exists to show that the City Commission was deliberately indifferent to any alleged deficiency in its procedures of discipline and redress.   In this regard, there is no evidence that the Commission knew of any widespread pattern of similar alleged violations, from which it could be inferred that the Commission both knew of the existence of a deficiency in its policies and consciously chose to ignore it.

(6)   No evidence exists to show that the City Commission was deliberately indifferent to the implementation of the City's policies.   In this regard, there is no evidence that the Commission knew of, and condoned, a widespread pattern of unpunished constitutional violations that were materially similar to the violations alleged by Oakerson in this case.

(7)   Even if, *arguendo*, the Brownsville City Manager, Carlos Rubinstein, or the EMS Director, Arturo Rodriguez, were held to be final policymakers in the area of discipline and redress of city employees, or that the City ultimately de facto ratified one or more of their decisions, no evidence exists to show that City Manager Rubinstein or EMS Director Rodriguez were deliberately indifferent to the associational rights of the City's employees.   In this regard, there is no evidence that City Manager Rubinstein or EMS Director Rodriguez knew of, and

condoned, a widespread pattern of unpunished constitutional violations that were materially similar to the violations alleged by Oakerson in this case.

(8)   No evidence exists to show that individual Defendants Carlos Rubinstein or Arturo Rodriguez violated Mr. Oakerson's clearly established constitutional rights of which a reasonable person would have known. All of the actions of Defendants Rubinstein and Rodriguez were objectively reasonable, thereby entitling these Defendants to qualified immunity and dismissal herein.

(9)   Oakerson is unable to meet his Burden of showing a clearly established violation of law or an objectively unreasonable decision made by either Mr. Rubinstein or Mr. Rodriguez, and they are therefore entitled to qualified immunity and summary judgment herein.

(10)  No evidence exists to show that Rodriguez' or Rubinstein's conduct was not objectively reasonable. The actions of Rodriguez in terminating Mr. Oakerson's employment following his failure of his promotional orientation period was objectively reasonable.  Mr. Rubinstein's failure to take any action on Mr. Oakerson's request for an appeal of disciplinary action was also objectively reasonable, considering the limitations of the 1998 Personnel Policies Manual.

## II.

## FACTUAL BACKGROUND

This case arises out of the termination of Plaintiff's employment as a Training Officer with the Brownsville Emergency Medical Services ("EMS") effective June 22, 1999, after he failed his probationary period for that position.  Plaintiff contends that he was terminated from his probationary position because of his association with the Brownsville Professional Firefighters Association, a/k/a the International Association of Firefighters, Local 970 (the Association).

Plaintiff Justin Oakerson began his employment with the City of Brownsville Emergency Medical Services on July 12, 1995, as an EMT Intermediate, a temporary part-time employee. Exhibit 1-A.  He was ultimately promoted to the position of EMT-Paramedic, a regular, part-time position, before he was promoted to the position of EMS Training Officer, effective January

18, 1999. Exhibit 1-B. With that last promotion, he moved from being a regular, part-time employee, to a probationary, full-time employee. Id. On July 7, 1998, the City of Brownsville had adopted a new Personnel Policies Manual, which replaced the prior Personnel Policies Manual that had been adopted on June 13, 1978. See Exhibits 2-C & 2-D. The new Personnel Policies Manual provided for an Orientation Period of six (6) months for "[a]ll new or rehired full-time or part-time employees...." Exhibit 2-C at §206. The new policies also provided that an employee's "[f]ailure of the promotional orientation period shall not be considered disciplinary action or disqualify the employee from consideration for later advancement or reinstatement." *Id.* at §212.

Although the City's prior policies provided that "[a]n employee failing such promotional probation shall be reverted to the position and salary previously held at the time of the promotion," the new policies did not include any such language. Exhibit 2-D, §311; Exhibit 2-C, §212. Because of the withdrawal of the "automatic reversion" language from the new policies, EMS Director Rodriguez and City Manager Rubinstein determined that the new policies did not provide for an "automatic reversion" of an employee back to his previous position if he should fail his promotional probation. Exhibit 3, Affidavit of Carlos Rubinstein (hereinafter Rubinstein Affidavit); Exhibit 4, Affidavit of Arturo Rodriguez (hereinafter Rodriguez Affidavit). If an employee fails his Promotional Orientation Period, he would still be eligible for later advancement or reinstatement under the new policies, should the employee choose to seek a return to a former or other position with the City. Exhibit 2-C, §212; Rubinstein Affidavit; Rodriguez Affidavit. Because the failure of the promotional orientation period is not considered disciplinary action, however, an employee who fails his promotional orientation period "has no rights of appeal, grievance, or other remedy or recourse in regard to his or her termination

during the orientation period.  Exhibit 2-C, §§206; 212.  If an employee requests a return to a former position after failing his promotional orientation period, he may be rehired because failure of the promotional orientation period is not considered misconduct.  Id., §§212; 215.  Because the new policies do not provide for the "automatic reversion" to a previous position and salary after an employee fails his promotional orientation period, the employee would need to apply for the position to which he wishes to return, and he would be eligible for rehire depending on availability of the position and his being the most qualified candidate for that position.  Rubinstein Affidavit; Rodriguez Affidavit.

The position of EMS Training Officer has numerous job requirements, all of which are included in the job description for the position.  Exhibit 1-C.  These job duties were also explained to Mr. Oakerson when he started as Training Officer in January 1999.  Rodriguez Affidavit; Affidavit of Assistant EMS Director Jeff Johnston (hereinafter Johnston Affidavit).  Jeff Johnston was Plaintiff Oakerson's immediate supervisor, and the person who was charged with evaluating his performance.  Rodriguez Affidavit.  Within sixty (60) days after Mr. Oakerson began as Training Officer, however, Mr. Johnston began to see problems in Mr. Oakerson's performance.  Johnston Affidavit.  On March 23, 1999, Assistant Director Johnston provided Plaintiff Oakerson with an initial Performance Review, indicating unsatisfactory performance in two areas, needing improvement in three areas, and fully satisfactory performance in only two areas, resulting in a total of 7 out of 21 possible points.  Exhibit 1-D.  Assistant Director Johnston met with Mr. Oakerson, discussed his performance, and explained what he would need to do in order to improve his performance.  Johnston Affidavit.  He also explained to Mr. Oakerson at that time that based on the performance he had been showing thus far, he would not pass his probationary period.  *Id.*

Mr. Johnston continued to evaluate Mr. Oakerson over the following three (3) months, but he ultimately determined that Mr. Oakerson did not demonstrate the ability to perform adequately as the EMS Training Officer.  Id.   Mr. Johnston therefore submitted his Final Performance Review of Mr. Oakerson on June 18, 1999, concluding that Mr. Oakerson had not adequately performed in the position of Training Officer, and that he had not passed his probationary period.  Exhibit 1-E.  That Performance Review set out in detail the numerous failures of Mr. Oakerson as Training Officer, discussing in much detail Mr. Oakerson's performance in each category.  In no part of his evaluation of Mr. Oakerson did Assistant EMS Director Johnston consider any union or "Association" affiliation Mr. Oakerson may have had, and any such alleged relationship played no part whatsoever in Mr. Johnston's evaluation. Johnston Affidavit.

As a result of Mr. Johnston's conclusion that Plaintiff Oakerson did not pass his probationary period, Defendant Rodriguez submitted the notice to Plaintiff that he failed his probationary period, and he was to be terminated effective June 22, 1999.  Exhibit 1-F.  Mr. Rodriguez' action was based solely and entirely on the recommendation and evaluation of Assistant EMS Director Johnston.  Rodriguez Affidavit.  Mr. Rodriguez relies heavily on the evaluations of his Assistant Director because Mr. Johnston is better able to see the employees performance on a daily basis.  *Id.*  Although Mr. Rodriguez was aware that Mr. Oakerson had some union affiliation, that knowledge played no part in his decision to act on Mr. Johnston's evaluation and conclusion that Mr. Oakerson had failed his probationary period.  *Id.*

Following Mr. Oakerson's termination, his attorney Miguel Saldana, submitted a letter to Defendant City Manager Carlos Rubinstein seeking an appeal of Mr. Oakerson's disciplinary termination pursuant to §704 of the new City's Personnel Policies.  Exhibit 3-A.  Defendant

Rubinstein responded, however, that because Mr. Oakerson was terminated for failing his orientation period, this was not considered disciplinary action under the City's Personnel Policies Manual and it was not considered an appealable issue. Exhibit 3-B. City Manager Rubinstein's actions were based solely on his understanding of the City's Personnel Policies Manual, which provide that an employee who is terminated during his orientation period has no right of appeal from that decision, because it is not considered any disciplinary action. Rubinstein Affidavit; Exhibit 2-C, §§206; 212. Mr. Saldana's attempt to appeal the "disciplinary action taken" in terminating Mr. Oakerson's employment pursuant to §704 "Appeal of Disciplinary Action" is directly contrary to §212, which provides that the "[f]ailure of the promotional orientation period shall not be considered disciplinary action...." Exhibit 2-C, §§212; 704. Accordingly, Mr. Rubinstein did not have authority under the City's Personnel Policies Manual to take any action requested by Mr. Saldana. Rubinstein Affidavit.

Thereafter, at no time did Mr. Oakerson ever re-apply for his former position of EMT-Paramedic as a regular part-time employee. Rodriguez Affidavit; Rubinstein Affidavit. Had he done so, Mr. Rodriguez would have been willing to hire him either as a part-time or full-time paramedic. Rodriguez Affidavit. Although Mr. Oakerson was a very qualified and knowledge paramedic, he simply did not appear to have the leadership, supervisory, initiative and other qualities necessary to be an effective Training Officer. *Id.* Notwithstanding Plaintiff's failure to apply for a full or part-time paramedic position, the City agreed to interpret Mr. Oakerson's Original Complaint as a voluntary request for a demotion back to his former position of EMT-Paramedic. Exhibit 6. Mr. Oakerson preliminarily responded favorably to the City's offer, subject to concerns he had with a separate teaching position. Exhibit 7. The City thereafter clarified that Plaintiff's return to the City was to be interpreted as a re-application to return to

work, not a reinstatement to a former position, because the City's new policies did not provide for reinstatement or "automatic reversion" that was allowed in the prior policies. Exhibit 8. Mr. Oakerson thereafter accepted the City's offer to return to work as a paramedic with the City. Exhibit 9. That acceptance was later withdrawn when Mr. Oakerson accepted a separate offer of employment by the Brownsville Fire Department as an entry level firefighter. Exhibit 10.

## III.

## STANDARD OF REVIEW

### A.   Summary Judgment Standard.

Although in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993) the Supreme Court rejected a heightened pleading requirement in §1983 cases against cities, the Court nevertheless recognized the important public policy interest in protecting local governmental entities from the cost and distraction of groundless litigation, and, in such cases, endorsed the early utilization of "summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." 507 U.S. at 168.

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Indest v. Freeman Decorating, Inc.*, 164 F. 3d 258, 261 (5th Cir. 1999). The movant must "demonstrate the absence of a genuine issue of material fact." *Id.*, citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986). If the movant meets his burden, the non-movant must then go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Id.* A non-movant's burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F. 3d 313, 315 (5th Cir. 1995).

Even if the evidence is more than a scintilla, some evidence may exist to support a position which is yet so overwhelmed by contrary proof as to yield to a summary judgment. *See Rhodes v. Guiberson Oil Tools*, 75 F. 3d 989, 993 (5th Cir. 1996). "[W]hen the parties have been given adequate opportunity for discovery, a party bearing the burden of proof must offer evidence sufficient to raise a genuine issue of material fact on the elements of his case or suffer an adverse summary judgment." *Noyola v. Texas Department of Human Resources*, 846 F. 2d 1021, 1023 (5th Cir. 1988).

Moreover, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2508, 91 L.Ed. 2d 202 (1986)(emphasis in original). An issue is "material" if it involves a fact that might affect the outcome of the suit under governing law. *Merritt-Campbell, Inc. v. RxProducts*, Inc., 164 F.3d 957, 961 (5th Cir. 1999). Factual disputes that are irrelevant or unnecessary are not counted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247-48, 106 S.Ct. at 2508, 91 L.Ed. 2d at 211.

Furthermore, evidence inadmissible at trial cannot be used to avoid summary judgment. *Salas v. Carpenter*, 980 F. 2d 299, 305 (5th Cir. 1992); *Broadway v. City of Montgomery*, 530 F. 2d 657, 661 (5th Cir. 1976). Deposition testimony based on hearsay, or otherwise inadmissible at trial, is not competent summary judgment evidence and should not be considered by the court. *See Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F. 2d 539, 556 (5th Cir. 1980), *cert. denied* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed. 2d 236 (1981). *See also Broadway v. City of Montgomery*, 530 F. 2d at 661. Hearsay or otherwise inadmissible evidence contained in affidavits attached to Plaintiff's response are also entitled to no weight, and therefore, insufficient

to overcome a Motion for Summary Judgment. *See Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F. 2d at 556. A Plaintiff's subjective opinion that he was retaliated against is also insufficient to raise a fact issue and to survive a summary judgment. *See Nichols v. Lauro Vought System Corp.*, 81 F. 3d 38, 42 (5th Cir. 1996). Other acts of unrelated discrimination are similarly irrelevant and should not be considered by the court. *See Kelly v. Boeing Petroleum Services, Inc.*, 61 F. 3d 350, 358 (5th Cir. 1995).

Summary judgment is mandated when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *Rizzo v. Children's World Learning Center*, 84 F.3d 758, 762 (5th Cir. 1996). Although the Court must review the competent summary judgment evidence in the light most favorable to the non-movant, no "genuine" issue can be said to exist if the evidence, so viewed as a whole, lacks probative force to support a reasonable jury's verdict. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

## B.    Qualified Immunity Standard

A determination of whether a public official is entitled to qualified immunity from liability under §1983 potentially involves a two-step analysis. First, if the official's conduct did not violate a clearly established constitutional right, the official is entitled to qualified immunity. *Jones v. Collins*, 132 F. 3d 1048, 1052 (5th Cir. 1998). In order for immunity not to attach "the official's conduct must have violated a right recognized under current constitutional law, and that right must have been clearly established at the time of the official's conduct." *Id*. "Second, even if the official's conduct violated a clearly established constitutional right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Id*. "Qualified immunity thus protects an official whose conduct was objectively reasonable, even if

the conduct infringed upon a constitutional right of the Plaintiff." *Gutierrez v. City of San Antonio*, 139 F. 3d 441, 445 (5th Cir. 1998), *citing Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed. 2d 523 (1987). Once the Defendant asserts qualified immunity in a properly supported motion for summary judgment, the burden shifts to the Plaintiff to come forward with summary judgment evidence sufficient to sustain a determination that the Defendant's conduct violated clearly established federal law. *Blackwell v. Barton*, 34 F. 3d 298, 301 (5th Cir. 1994).

**C.      Plaintiff's Freedom of Association Claim**

"The First Amendment's Freedom of Association provides both public and private employees the right to organize, solicit members for, and belong to labor unions." *Vicksburg Fire Fighters Association, Local 1686 International Association of Fire Fighters, AFL-CIO, CLC v. City of Vicksburg, Miss.*, 761 F. 2d 1036, 1039 (5th Cir. 1985). These rights, however, are not absolute, especially with respect to public employees. *Id.* In order to establish his claim that his right to free association was violated, Plaintiff does not have to prove that his associational activities involved a matter of public concern. *Boddie v. City of Columbus, Miss.*, 989 F. 2d 745, 749-50 (5th Cir. 1993). Plaintiff must demonstrate, however, that his associational activities were a substantial or motivating factor in the Defendants' decision to terminate his employment. *Wilson v. Taylor*, 658 F. 2d 1021, 1027 (5th Cir. 1981).

The City of Brownsville is entitled to terminate Plaintiff's employment based on his failure to successfully complete an orientation period. *See Fowler v. Smith*, 68 F.3d 124, 128 (5th Cir. 1995). In fact, under Texas Law, an employer is free to terminate an at-will employee such as Plaintiff "for a good reason, a bad reason, or no reason at all." *Burch v. Coca Cola Co.*, 119 F. 3d 305, 306 n.13 (5th Cir. 1997), *quoting Figueroa v. West*, 902 S.W. 2d 701, 704 (Tex.

App. B El Paso 1995, no writ); *see Schroeder v. Texas Iron Works, Inc.*, 813 S.W. 2d 483, 489 (Tex. 1991).

## IV

## ARGUMENT AND AUTHORITIES

1.  **Municipal Liability Under §1983:  General Principles.**

Municipal liability under §1983 cannot be predicated on the doctrine of agency or respondeat superior. *Monell v. New York Department of Social Services*, 436 U.S. 658, 690-94 (1978); *Board of the County Comm'rs v. Brown*, 117 S.Ct. 1382, 1388 (1997).  To establish a §1983 cause of action against a city, the plaintiff must demonstrate that "action pursuant to *official municipal policy* of some nature caused a constitutional tort." *Jett v. Dallas Independent School District*, 491 U.S. 701, 729 (1989) (emphasis added), *quoting Monell*, 436 U.S. at 691. *See also McMillian v. Monroe County*, 117 S.Ct. 1734 (1997).  "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Brown*, 117 S.Ct. at 1388.  Thus, "[o]nly those municipal officers who have *final policymaking authority* may by their actions subject the government to §1983 liability." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion) (emphasis added).

In short, then, to establish a cause of action against the City under §1983, Oakerson must prove (1) an official policy (2) attributable to the City's final policymaker, (3) that caused (4) him to be deprived of a federal constitutional right.  *See Lopez v. Houston Independent School District*, 817 F.2d 351, 354 (5th Cir. 1987).  Under §1983, an "official policy" is:

    (1)    A policy statement, ordinance, regulation, or decision that is officially adopted by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority; or,

(2)    A persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents official policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality of to an official to whom that body had delegated policymaking authority.

*Richardson v. Oldham*, 12 F.3d 1373, 1382 (5th Cir. 1994); *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).

### 2.    Identifying the Final Policymaker is a Legal Issue for the Court.

Identifying the City's final policymaker in the relevant area of municipal government presents a question of state law which this Court must decide before it submits any factual issues to the jury. *Jett*, 491 U.S. at 737; *Worsham v. City of Pasadena*, 881 F.2d 1336, 1340 n.8 (5th Cir. 1989). In deciding this preliminary legal issue, the Court's inquiry must be guided by two questions: (1) what is the relevant area of the City's business, and (2) upon which official or collective body does state law confer the final responsibility to set policy in that relevant area? *See McMillian*, 117 S.Ct. at 1737. State law, which includes city charters and ordinances, will "always direct a court to some official or body that has the responsibility for making law or setting policies in any given area of a local government's business." *Praprotnik*, 485 U.S. at 125. Consequently, a court "would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *Id.* at 126.

In the present case, the Court's first step in identifying the relevant final policymaker is controlled by Oakerson's pleadings. Oakerson alleges that the City terminated his employment in retaliation for his association with the Brownsville Professional Fire Fighters Association.

Plaintiff's Original Complaint, Paragraph 1. The relevant policy area, therefore, is that of employee discipline and redress. To perform the second step of the analysis, the Court must look to state and local law to determine the identity of the City's final policymaker in the relevant areas of employee discipline and redress. This step involves an analysis of state and local law to determine who has the *final* power to set policy in each of these three relevant areas. As demonstrated below, state and local law confers final policymaking authority in each area on the Brownsville City Commission.

### 3. The City Commission is the City's Final Policymaker under Texas Law.

Home-rule cities like Brownsville derive their powers from the Texas Constitution. Their broad powers may be limited only by their own charters, by the Texas Commission, or by state statute. *See* TEX.Const. art. XI, §5; TEX.LOC.GOV'T CODE §51.072. As authorized by the Texas Constitution, the citizens of Brownsville adopted a city charter in 1915 which established the form of their municipal government. *See* Exhibit 2-A, CHARTER OF THE CITY OF BROWNSVILLE, TEXAS (hereinafter "CHARTER"). The Charter is the City's organic law, and its relation to the City is like the relation of the Texas Constitution to the State of Texas. *See City of Fort Worth v. Morrison*, 164 S.W.2d 771, 772 (Tex.Civ.App.- Fort Worth 1942, writ ref'd). According to the Charter, the City's governing body is its City Commission. *See* CHARTER art. V, §10. The Charter confers broad policymaking authority on the Commission. *Id*. Only the Commission may enact ordinances (*id.*, art. V, §14, as amended by Brownsville, Tex., Ordinance No. 93-1270 (Nov. 16, 1973), attached as Exhibit 2-B, and hereinafter cited as "Ord. No. 93-1270,"), and the Charter confers power on the Commission to enact ordinances on "all subjects" CHARTER, art. II, §2. Significantly the Charter mandates that the City Commission have the ultimate authority to determine the City's personnel matters. "All

appointments and removals of officers and employees shall be subject to the personnel policy adopted by the Commission, except as otherwise provided by this Charter, or as provided by law." CHARTER, art. V, §20.

The Commission specifically reserved its authority to establish all personnel policies for the City, including those relating to the appointment and removal of employees. The City's Personnel Policies relevant to Plaintiff Oakerson's termination in 1999 are attached hereto as Exhibit "2-C," and are hereinafter cited as "1998 Personnel Policies." Those Policies provide that when an employee is promoted from one position or classification to another position in a higher salary grade, he "shall be subject to a promotional orientation period of six (6) consecutive calendar months from date of promotion and service in the higher position. 1998 Personnel Policies, §209. "During the promotional orientation period employees will be closely supervised to insure that they are performing their assigned tasks satisfactory." Id. The orientation period "provides the employee's supervisor an opportunity to review the employee's skills, abilities, performance, inter-personal relationships and other job related factors. Id. At §206.

At any time after Mr. Oakerson's first sixty (60) calendar days from his promotion, his Director, Arturo Rodriguez, could have chosen to fail Mr. Oakerson's promotional orientation. *Id*. at §212. Although Mr. Oakerson's evaluation reflected he was not performing adequately after his first sixty days as Training Officer, sufficient to justify termination at that time, he chose not to do so. Rodriguez Affidavit. Failure of a promotional orientation period at that time or later would not be considered disciplinary action. 1998 Personnel Policies, §212. The City's Personnel Policies also do not create any contractual rights regarding termination or otherwise, and "[a]n employee may be dismissed from City employment at any time during the orientation

period." Id. at p.1, Paragraph 2; §206. Under no circumstances, however, do the City's

Personnel Policies authorize the termination of an employee for engaging in associational

activities. Id. at P.2, Paragraph 3.

Under the Charter, the City's appointed officers serve only to implement policies made

by, or approved by, the Commission. *See Jett v. Dallas Independent School Dist.*, 7 F.3d

1241, 1246-50 (5th Cir. 1993) (*Jett II*) (and cases cited) (recognizing the distinction between

final decision making power and the final power to make policy that constrains the decision

maker's discretion). Although the Brownsville City Charter authorizes the City Manager and

EMS Director to make many managerial decisions, including certain *final decisions*, it does not

relinquish *final policymaking* authority to the City Manager or the EMS Director.

> It shall be the duty of the city manager to act as chief conservator of the peace within the city; to supervise the administrative affairs of the city; to see that the ordinances of the city and laws of the state are enforced; to make such recommendations to the Commission concerning the affairs of the city as may seem to him desirable; to keep the Commission advised of the financial condition and needs of the city; to prepare and submit to the Commission the annual budget estimate; to prepare and submit to the Commission such reports as may be required by that body, and to perform such other duties as may be prescribed by this Charter.
>
>             *            *            *
>
> For each department there shall be an officer designated as the head, or director, thereof, who shall have the supervision and control thereof subject to approval by the city manager to whom such head, or director, shall be responsible and accountable. Each head, or director, shall subject to the approval of the city manager, have power to prescribe rules and regulations, not inconsistent with this Charter and the ordinances passed in pursuance thereof, for the conduct of the officers and employees of the department of which he is in charge, for the distribution and transaction of its business, and for the custody of the books, records, papers and property under its control.

CHARTER, art. V, §21.

In summary, the City Charter mandates that the Commission has the power to promulgate final municipal policy, by ordinance, in the key areas of employee discipline and redress. Neither the Charter, nor any other positive law, suggests that the City Manager, much less the EMS Director, has *final* authority to set policies governing the discipline or avenues of redress for City employees. Accordingly, as a matter of law, the City Commission is the final policymaker in the areas at issue in this case.

### 4.   The City Commission Has Not Delegated Final Policymaking Authority.

#### a.   *Delegation of Final Policymaking Authority: General Principles.*

Oakerson appears to contend that the Commission somehow "delegated" final policymaking authority to City Manager Rubinstein. As the Supreme Court has recognized, "[s]pecial difficulties can arise when it is contended that a municipal policymaker has delegated his policymaking authority to another official." *Praprotnik*, 485 U.S., at 126.

"The authority to make municipal policy is necessarily the authority to make final policy." *Id*. at 127. Power delegated to a subordinate to make discretionary decisions, therefore, does not constitute a delegation of the final, unreviewable power to set policy for the municipality. *Id.*, at 127. "[A]n incomplete delegation of authority -- *i.e.*, where the right to review is retained will not result in municipal liability." *Worsham*, 881 F.2d at 1341 (5th Cir. 1989) (*quoting Williams v. Butler*, 863 F.2d 1398, 1402 (8th Cir.) (en banc). *cert. denied*, 492 U.S. 906 (1989) (5th Circuit's brackets deleted).

Although the Fifth Circuit may have previously found that a city manager could be an official with policymaking power "sufficient to hold the City accountable under §1983" (*Neubauer v. City of McAllen*, 766 F.2d 1567, 1573 (5th Cir. 1985), overruled on other grounds, *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 126 (5th Cir. 1992), that Court has since limited

the extent to which the actions of an official may reflect a governmental entity's policymaking decisions. A complete, legal delegation of authority to make policy cannot be inferred from the fact that a subordinate is permitted *in practice* to make certain policy decisions. That the final policymaker merely "goes along with a subordinate's discretionary decisions is not a delegation of policymaking authority." *Flores v. Cameron County*, 92 F.2d 258, 269 (5th Cir. 1996). For a delegation of *final* policymaking authority to occur, the governing body must "acknowledge that the agent or board acts *in lieu of* the governing body to set goals and to structure and design the area of the delegated responsibility, subject only to the power of the governing body to control finances or curtail the authority of the agent or board." *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc) (emphasis added).

The governing body's acknowledgement of *final policymaking* authority must be *de jure*; the Fifth Circuit has expressly rejected the theory that the final policymaker for §1983 purposes can be identified by determining who wields final authority in the City's *de facto* power structure:

> The Supreme Court has precluded the possibility of finding a county employee to possess "de facto policymaking authority." *See* [*Praprotnik*, 485 U.S.] at 131 (stating that "except perhaps as a step towards overruling *Monell* and adopting the doctrine of *respondeat superior*, ad hoc searches for officials possessing such 'de facto' authority would serve primarily to foster needless unpredictability in the application of §1983").

*Flores*, 92 F.2d at 269. *See also Jett II*, 7 F.3d at 1247 (recognizing *Praprotnik's* rejection of the theory of *"de facto"* policymaking authority).

In *Flores*, the Fifth Circuit rejected a claim of *de facto* policymaking authority, similar to the claim Oakerson apparently seeks to assert in this case. *Flores* was a jail suicide case. The plaintiff in *Flores* sought to impose §1983 liability on Cameron County, arguing that Amador

Rodriguez, the County's chief probation officer and supervisor of the county detention center, was the County's final policymaker for setting training policies at the detention center. Looking to state statutory law, the Fifth Circuit determined that the county juvenile board was the final policymaker for maintaining and supervising the detention center, despite the fact that the board's chairman, in practice, relied on Rodriguez to set the training policy for the detention center. 92 F.2d at 264-69. Rodriguez's uncontroverted role as a *de facto* policymaker was legally insufficient to support the conclusion that the Board had officially delegated its final policymaking authority to Rodriguez. *Id.*, at 269-70. The Court concluded that, "[a]t most, this evidence supports the impermissible conclusion that Rodriguez was a 'de facto' policymaker for the County." *Id.*, at 270.

As in *Flores*, Oakerson can point this Court to no evidence that would establish that City Manager Rubinstein or EMS Director Rodriguez ever had any *de facto* policymaking authority, much less any authority *de jure*. Because an employee terminated during his promotional orientation period "has no rights of appeal, grievance or other remedy or recourse in regard to his or her termination during the orientation period," City Manager Rubinstein could not take any action relative to Oakerson's termination. 1998 Personnel Policies at §206. Defendant Rubinstein did not have any final *decision making* authority, much less any *policymaking* authority.

> **b.** *The City Commission has not Delegated, and Legally Cannot Delegate, its Final Authority to Regulate its Employees.*

The Brownsville City Commission has not delegated its final policymaking authority over its employees to any city official or other collective body of officials. Indeed, it could not legally do so. Under Texas law, the only way the governing body of the City of Brownsville may act is by an official vote of the Council at a properly called meeting. *See* Ord. No. 93-1270, art. V,

§14; Texas Opening Meetings Act, TEX. GOV'T CODE ANN. §551.001 *et seq.*; *see also Webster v. Texas & Pacific Motor Transport Co.*, 140 Tex. 131, 166 S.W.2d 75, 76 (1942). As discussed above, the Charter mandates that the Commission be vested with authority to set policy governing the conduct of the City's employees. The Charter's directive is that "all . . . removals of . . . employees shall be subject to the personnel policy adopted by the Commission . . . ." Ord. No. 93-1270, art. V, §20. Regulation of City employees and the conduct of its officers is a legislative matter, to be regulated by the Commission alone. *Id.*

No evidence exists that the Commission ever expressly or impliedly delegated its ultimate policymaking authority over its employees to its City Manager or the EMS Director. Even if the Commission attempted to divest itself of its ultimate authority over the conduct and duties of the City's employees, such an act by the Commission would run afoul of the Charter and thus be void.[1]   Though EMS Director Rodriguez might direct some rules and policies on EMS procedures,  and even make certain final employment decisions relating to certain employees while on their promotional orientation period, he could not be the *final policymaker* in the relevant area of discipline and redress of employees. *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994) ("the imposition of municipal liability requires a decision by a *final* policymaker, not a 'principal' one") (emphasis added). Since the City Commission has at all times retained the power to review the decisions of the EMS director, any delegation of power to the EMS Director is incomplete. Thus, the Commission remained the final policymaker in the

---

[1]   52 TEX. JUR. 3d Municipalities  §311, at 353-54 (1987) (the governing body may not delegate powers granted to it by the Charter to another city officer); *Holcombe v. Grota*, 129 Tex 100, 102 S.W.2d 1041 (1937); *see also Henderson v. Sotelo*, 761 F.2d 1093, 1099 (5th Cir. 1985) (personnel policy manual promulgated by a city manager cannot grant rights to employees inconsistent with city charter); *Overton v. City of Austin*, 748 F.2d 941, 954-57 (5th Cir.  1984) (city commission cannot validly reapportion itself by ordinance; a charter amendment is required).

relevant areas. *See Worsham*, 881 F.2d at 1341.[2]  Accordingly, this Court should hold as a matter of law that the City Commission is the final policymaker in the relevant area of employee discipline and redress.

**5.**    **The City of Brownsville Did Not Violate Oakerson's Associational Rights**.

To establish that the City is liable under §1983 for the termination of Oakerson's employment in retaliation for his associating with the Association, Oakerson must prove (1) municipal culpability, *i.e.*, that the final policymaker was deliberately indifferent to some specific inadequacy in the City's policy of discipline and redress, and (2) causation, *i.e.*, that this purported custom of deliberate indifference directly caused the alleged constitutional violation. *See Board of the County Commissioners of Bryan County v. Brown*, 117 s.Ct. 1382 (1997); *Snyder v. Trepagnier*, 142 F.3d 791 (5th Cir. 1998).  In *Brown*, the Supreme Court held that Bryan County was not liable for the sheriff's isolated decision to hire his nephew as a deputy, without adequately reviewing his background, because the plaintiff had not demonstrated that the sheriff's decision reflected a conscious disregard for a high risk that the nephew would use excessive force in violation of Brown's federally protected rights.  *Board of the County Comm'rs of Bryan County v. Brown*, 117 S.Ct. at 1392.  The Supreme Court held that in order to find liability, the plaintiff would have to prove that the defendant had sufficient knowledge to make it plainly obvious that the consequence of its actions would be the deprivation of a third-party's federally protected right  sufficient to show that the policymaker was deliberately indifferent to the Plaintiff's rights. *Id.*

---

[2]    As the Texas Supreme Court has explained, "The City Commission in the aldermanic form of municipal government and the City Commission in the Commission form of government has always been the primary repository of municipal legislative powers in

Oakerson cannot establish municipal liability under *Brown*'s deliberate indifference standard because he can point to no evidence to establish that the City's policy of discipline and redress for its employees "would lead a reasonable policymaker to conclude that the plainly obvious consequence" of that policy would be the violation of Oakerson's right to associate. *Id.* Nor can Oakerson point to any evidence that would establish that the City's policies of discipline and redress were so obviously inadequate that the policy itself was so likely to result in the violation of a constitutional right that it constituted a deliberate indifference to the needs of the City's employees. *See City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989); *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996).

In particular, Oakerson can point to no evidence of any pattern of similar incidents in which other employees working under a promotional orientation period were allegedly similarly terminated for engaging in union associational activities in order to somehow put the City on notice of a deficiency in its policies and the need for the City's policymaker, i.e. the City Commission, to take action. "[P]roof of a single violent incident ordinarily is insufficient to hold a municipality liable.... The plaintiff must demonstrate 'at least a pattern of similar incidents in which the citizens were injured.'" *Snyder*, 142 F.2d at 798, *quoting Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1998). In this case, there simply is no evidence of any pattern of similar incidents from which a jury may reasonably infer that the City's policy of discipline and redress was so inadequate, and so likely to result in a constitutional violation of the kind alleged in this case, that the City Commission can be said to have been deliberately indifferent.

In this case, no evidence exists to show that (1) the Brownsville EMS Department

---

this state." *Glass v. Smith*, 150 Tex. 632, 244 S.W.2d 645, 651 (1951).

committed a widespread pattern of unpunished constitutional violations that were similar to the associational violation alleged by Oakerson in this case, or that (2) the City Commission knew of and condoned such conduct. To the contrary, Plaintiff's Original Complaint does not even allege any widespread pattern of employee terminations for engaging in associational activities. Accordingly, regardless of the identity of the final policymaker, there is no basis for holding the City liable on the theory that the City condoned a widespread, pervasive custom of violating employees' rights of association. No evidence exists either to prove the existence of such a custom, or to prove that it was condoned, either by the City Commission, by City Manager Rubinstein, or by EMS Director Rodriguez. Thus, as a matter of law, no purported deficiency in the City's policy of discipline and redress could have caused Oakerson's alleged injury.

**6.** *City Manager Rubinsteing Did Not Violate Oakerson's Associational Rights.*

Plaintiff's Original Complaint alleges no actions taken by City Manager Rubinstein allegedly in violation of his rights of association, other than in not providing him with a hearing to contest his termination. Plaintiff s Original Complaint, Paragraphs 21 & 25. Mr. Rubinstein has explained, however, that because Mr. Oakerson was terminated for failing his promotional orientation period, the 1998 Personnel Policies did not provide him with any right of appeal, grievance or any other remedy or recourse to the City Manager. Rubinstein Affidavit; 1998 Personnel Policies Manual, §206. As a result, the City's policies did not authorize any action to be taken by Mr. Rubinstein.

Although Mr. Oakerson's attorney requested an appeal of the "disciplinary action" taken against him, apparently to seek a return to his position of Training Officer, Rubinstein explained that a failure of a promotional orientation period is not considered disciplinary action in which an appeal can be taken. Rubinstein Affidavit. The City's Personnel Policies provided that the

failure to a promotional orientation period is not considered disciplinary action, as result of which the employee is still eligible for reinstatement to any other positions to which the employee might apply. Rubinstein Affidavit; 1998 Personnel Policies Manuel §§212; 215. While Mr. Oakerson could have applied or asked to return to his former position, he never did so. Rubinstein Affidavit; Rodriguez Affidavit. Had he done so, he would have been rehired by the City as a paramedic. Rodriguez Affidavit. Although a paramedic position was eventually offered to Mr. Oakerson, and he initially accepted that offer, he later withdrew his acceptance in order to accept a better paying position with the City of Brownsville Fire Department. Exhibits 6 – 10.

Mr. Oakerson can point to no actions taken by City Manager Rubinstein that would establish a violation of a clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Nor can Plaintiff establish that his protected association was a motivating factor in any actions taken by Rubinstein, or that Rubinstein would not have reached his same decision in the absence of any protected conduct by Oakerson. *Crawford-El v. Britton*, 523 U.S. 574, 593, 118 S.Ct. 1584, 1594, 140 L.Ed.2d 759 (1998). The burden on Oakerson is not to establish simply that Rubinstein or any other Defendant may have had some animus directed at him; rather, he must establish some larger, more general animus. "When intent is an element of a constitutional violation,...the primary focus is not on any possible animus directed at the Plaintiff; rather, it is more specific, such as an intent to disadvantage all members of a class that includes the Plaintiff.... *Id.,* 523 U.S. at 592, 108 S.Ct. at 1594. Without any evidence that Rubinstein had any general animus, or that Rubinstein's actions violated Oakerson *clearly established* custitutional rights, or that Rubinstein's actions were objectively unreasonable, Rubinstein is entitled to qualified immunity and entry of summary judgment herein.

7.   **EMS Director Rodriguez Did Not Violate Oakerson's Associational Rights.**

As described above, the City of Brownsville can only be liable for the acts of its final policymakers in causing the deprivation of a federal constitutional right, and those policymakers must have final policymaking authority in that area of the City's business. *See City of St. Louis v. Prapotnik*, 485 U.S. 112, 123 (1998) (plurality opinion). Where the City has retained the right to review and approve a subordinate's actions, such as where the City requires all acts of the Director to be consistent with the City Charter and the Ordinances passed in pursuance thereof, there is no delegation of final policymaking authority to Rodriguez. CHARTER, art. V, §21. *See Worsham v. City of Pasadena*, 881 F.2d 1336, 1341 (5th Cir. 1989). Disregarding the issue of whether EMS Director Rodriguez was delegated final *policymaking* authority, as opposed to final *decision making* authority, Oakerson can present this Court with no evidence that Rodriguez' actions deprived him of a federal constitutional right of association. Rodriguez' sole act about which Plaintiff complains is the approval of Assistant EMS Director Jeff Johnston's recommendation to terminate Plaintiff Oakerson after he failed his promotional orientation period.

Plaintiff has not alleged, and he can provide no admissible evidence to establish, that Assistant Director Johnston acted out of an unconstitutional motive. To the contrary, Johnston met with Plaintiff on March 23, 1999 and provided him with an evaluation, including instructions on how to improve his performance prior to the conclusion of his orientation period. Johnston Affidavit. Although the 1998 Personnel Policies provided that EMS Director Rodriguez could have terminated Plaintiff at that time, he instead allowed Plaintiff three more months to improve, before accepting Johnston's recommendation to terminate Plaintiff. Rodriguez Affidavit; 1998 Personnel Policies §212. It was only after Plaintiff's second negative evaluation that Director

Rodriguez acted to terminate Plaintiff. Rodriguez Affidavit. Plaintiff fails to identify for this Court what other action Defendant Rodriguez could have taken following the second negative evaluation as Training Officer and Johnston's recommendation that he be terminated.

Although Plaintiff argues that he should have been automatically reverted to his former position, following his termination as Training Officer, because Oakerson had previously been only a part-time employee the 1998 Personnel Policies did not allow Mr. Rodriguez to return Mr. Oakerson to his former part-time position. Rubinstein Affidavit. Had Plaintiff requested or applied to return to his former position, however, Rodriguez would have hired Plaintiff as a part-time or full-time paramedic. Rodriguez Affidavit. Because Plaintiff never requested or applied to return to his former position of part-time paramedic, Rodriguez did not have the authority to offer any such position to Plaintiff under the 1998 Personnel Policies. Rubinstein Affidavit. Accordingly, at the time of Plaintiff's termination, EMS Director Rodriguez' only options were to accept or reject Assistant Director Johnston's evaluation and terminate Plaintiff, after Rodriguez twice received evaluations indicating Plaintiff was not performing the duties of Training Officer satisfactorily. Such actions were objectively reasonable, even if they may have "infringed upon" Oakerson's constitutional rights. *Wagner v. Bay City, Texas*, 227 F.3d 316, 321 (5th Cir. 2000); *Gutierrez v. City of San Antonio*, 139 F.3d 441, 445 (5th Cir. 1998). Even "when a public employee shows that protected speech was a `motivating factor' in an adverse employment decision, the employer still prevails by showing that it would have reached the same decision in the absence of the protected conduct." *Crawford-El v. Britton*, 523 U.S. 574, 593, 118 S.Ct. 1584, 1594, 140 L.Ed.2d 759 (1998), *citing Mt. Healthy City Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

Without any evidence that the City's final decision maker, EMS Director Rodriguez violated Oakerson's associational rights, much less that the City's final policymaker, the City Commission, violated any such rights, Oakerson cannot establish that the City of Brownsville violated his right to freedom of association, and the City is therefore entitled to summary judgment herein. Mr. Rodriguez' actions were objectively reasonable, and he is accordingly entitled to qualified immunity and entry of summary judgment herein as well.

WHEREFORE, PREMISES CONSIDERED, Defendants **CITY OF BROWNSVILLE, TEXAS, ARTURO RODRIGUEZ and CARLOS RUBINSTEIN** would respectfully request that this Court set this mater for hearing at the Court's earliest convenience, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and upon conclusion of such hearing that this Court grant Defendants' Motion for Summary Judgment, and that Defendant be awarded such other and further relief, both general and special, at law and in equity, to which they may show themselves to be justly entitled.

Signed on this the 29th day of November, 2000.

Respectfully submitted,

**LAW OFFICE**
**J. ARNOLD AGUILAR**
Artemis Square, Suite H-2
1200 Central Boulevard
Brownsville, Texas  78520
Telephone      :  (956) 504-1100
Facsimile      :  (956) 504-1408


By:  _____
J. Arnold Aguilar
State Bar No. 00936270
Federal Adm. No. 6822

Attorney for Defendants,
CITY OF BROWNSVILLE, TEXAS,
ARTURO RODRIGUEZ and
CARLOS RUBINSTEIN

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT** has on this the 30th day of November, 2000, been
forwarded via certified mail, return receipt requested to:

Mr. B. Craig Deats
DEATS & LEVY, P.C.
2204 Lake Austin Blvd.
Austin, TX 78703

Mr. Miguel A. Saldaña
LAW OFFICE OF MIGUEL SALDAÑA
302 Kings Highway, Suite 109
Brownsville, TX 78521


_____
J. Arnold Aguilar

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUSTIN OAKERSON | § | |
| | § | CIVIL ACTION NO. |
| VS. | § | |
| | § | B - 99 - 197 |
| CITY OF BROWNSVILLE, | § | |
| ARTURO RODRIGUEZ and | § | |
| CARLOS RUBINSTEIN | § | (JURY REQUESTED) |

---

## ORDER SETTING HEARING

---

On this _____ day of _____, 2000, came on to be considered

**Defendants' Motion for Summary Judgment** in the above styled and numbered cause.

IT IS THEREFORE ORDERED that said Defendants' Motion for Summary Judgment be

and is hereby set for hearing on the _____ day of _____, 2000, at _____

o'clock _____.m.

SIGNED FOR ENTRY this _____ day of _____, 2000.

_____
U. S. DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JUSTIN OAKERSON | § | |
| | § | CIVIL ACTION NO. |
| VS. | § | |
| | § | B - 99 - 197 |
| CITY OF BROWNSVILLE, | § | |
| ARTURO RODRIGUEZ and | § | |
| CARLOS RUBINSTEIN | § | (JURY REQUESTED) |

---

## ORDER GRANTING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

---

On the _____ day of _____, 2000, this cause came on for hearing *Defendants City of Brownsville, Texas. Arturo Rodriguez and Carlos Rubinstein's Motion for Summary Judgment.*

After hearing the argument of counsel thereon, the Court is of the opinion that Defendants' Motion for Summary Judgment should be GRANTED;

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Defendants City of Brownsville, Texas, Arturo Rodriguez and Carlos Rubinstein's Motion for Summary Judgment is GRANTED, and all claims raised against these Defendants are hereby dismissed in their entirety.

SIGNED on this the _____ day of _____, 2000.

_____
U. S. DISTRICT JUDGE