25

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

DEC 2 0 2000

Michael N. Milby
Clerk of Court

JUSTIN OAKERSON,                        §
                                        §
          Plaintiff,                    §
                                        §
v.                                      §
                                        §          CIVIL ACTION NO. B-99-197
CITY OF BROWNSVILLE,                    §
ARTURO RODRIGUEZ, and                   §
CARLOS RUBINSTEIN,                      §
                                        §
          Defendants.                   §

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**B. Craig Deats
DEATS & LEVY, P.C.
TBN: 05703700** FEdID 6369
**327 Congress Avenue, Suite 300
Austin, Texas 78701
(512) 474-6200
FAX (512) 474-7896**

**Miguel A. Saldaña
LAW OFFICE OF MIGUEL A. SALDAÑA
TBN: 17529450** FEb JD 10954
**Corporate Plaza, Suite 109
302 Kings Highway
Brownsville, Texas 78521
(956) 542-9161
FAX (956) 542-3651**

**ATTORNEYS FOR PLAINTIFFS**

# TABLE OF CONTENTS

**PAGE**

Index of Authorities ........................................................................... iii

I.    Statement of the Nature and Stage of the Proceeding ........................... 1

II.   Statement of the Issues to Be Ruled Upon by the Court ....................... 2

    A.    Issues Presented by Rodriguez's and Rubinstein's Motions. ..... 2

    B.    Issue Presented by the City of Brownsville Motion. ................... 2

III.  Statement of Facts .................................................................. 2

    A.    Facts Related to Plaintiff's Claim. ................................................ 2

    B.    Facts Related to Municipal Liability. ........................................... 3

IV.   Argument and Authorities ....................................................... 3

    A.    The Individual Defendants Have Not Established Entitlement
         to Summary Judgment on the Basis of Qualified Immunity. ....... 3

    B.    The Individual Defendants Have Not Established Entitlement
         to Summary Judgment on the Merits. ........................................ 5

         1.    The Evidence Regarding Mr. Rodriguez. ....................... 6

         2.    The Evidence Regarding Mr. Rubinstein. ....................... 10

    C.    Defendant City of Brownsville Has Not Established
         Entitlement to Summary Judgment. ........................................... 11

         1.    Facts Relevant to Municipal Liability. ............................. 11

         2.    General Standards Pertaining to Municipal Liability. ..... 14

                Municipal Liability Established ...................................... 14

                Liability for Single Decision by Policymaker. ................. 14

                State Law Governs Policymaker Identification. ............. 15

                Authority to Effect Policy Required. ............................... 15

                Multiple Policymakers Possible. .................................... 16

                Delegation of Policymaking Authority. ........................... 16

i

# TABLE OF CONTENTS (cont.)

**PAGE**

Policymaker's Qualified Immunity Irrelevant. .................. 17

3.   Application of General Standards to Plaintiff's Claim
Against Defendant City. ................................................ 18

    a.   City Manager Carlos Rubinstein as a Final
Policymaking Authority Regarding Employee
Discharges. ......................................... 18

    b.   Defendant Rodriguez Is a Final Policymaking
Authority with Regard to BEMS Employee
Terminations. ...................................... 21

    c.   Brownsville Can Be Held Liable for Its
Policymakers' Single Decision to Discharge
Plaintiff. ............................................ 23

V.   Conclusion .......................................................... 24

Certificate of Service ...................................................... 25

## INDEX OF AUTHORITIES

**CASES**                                                    **PAGE(S)**

Anderson v. Creighton, 107 S.Ct. 3034 (1987) ............................................. 3

Bennett v. City of Slidell, 728 F.2d 762 (5th Cir. 1984),
cert. denied 472 U.S. 1016, 105 S.Ct. 3476 (1985) ........................... 17, 21

Bennett v. Pippin, 74 F.3d 578 (5th Cir. 1996),
cert. denied 519 U.S. 817, 117 S.Ct. 68 (1996) ................................. 23, 24

Boddie v. City of Columbus, 989 F.2d 745 (5th Cir. 1993) ............................. 4, 22, 23

Brady v. Houston Independent School District, 113 F.3d 1419 (5th Cir. 1997) ... 5

Brooks v. George County, Mississippi, 84 F.3d 157 (5th Cir. 1996),
cert. denied 519 U.S. 948, 117 S.Ct. 359 (1996) ................................. 23

City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915 (1988) .............. 5, 16, 21, 23

Click v. Copeland, 970 F.2d 106 (5th Cir. 1992) ............................................. 4, 5

Coughlin v. Lee, 946 F.2d 1152 (5th Cir. 1991) .............................................. 5, 9

Crawford-El v. Britton, 118 S.Ct. 1584 ........................................................... 5

Gonzalez v. Ysleta Independent School District, 996 F.2d 745 (1993) .......... 23, 24

Gros v. City of Grand Prairie, Texas, 181 F.3d 613 (5th Cir. 1999) ................. 15, 23

Harlow v. Fitzgerald, 102 S.Ct. 2727 (1982) .................................................. 3

Harpring v. Continental Oil Company, 628 F.2d 406 (5th Cir. 1980),
cert. denied 102 S.Ct. 100 (1981) ........................................................ 9

Harris v. Victoria Independent School District, 168 F.3d 216
(5th Cir. 1999), cert. denied 120 S.Ct. 533 (1999) ............................... 3

Jett v. Dallas Independent School District, 491 U.S. 701, 109 S.Ct. 2702 (1989) ... 15, 20

Martinez v. City of Opa-Locka, Florida, 971 F.2d 708 (11th Cir. 1992) ........... 19

Matherne v. Wilson, 851 F.2d 752 (5th Cir. 1988) .......................................... 4

Mattix v. Hightower, 1998 WL 246671 (N.D. Tex. 1998) ................................. 19

Monell v. New York City Dept. of Social Services, 436 U.S. 658,
98 S.Ct. 2018 (1978) ............................................................................ 14, 15

Nero v. Industrial Molding Corporation, 167 F.3d 921, 926-8 (5th Cir. 1999) ..    8

Neubauer v. City of McAllen, 766 F.2d 1567 (5th Cir. 1985) ...........................    20, 22

Nichols v. City of Jackson, 848 F.Supp. 718 (S.D. Miss. 1994) ......................    22

Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S.Ct. 1292
    (1986) (plurality opinion) ....................................................... 14, 15, 16, 17, 23

Pfanstiel v. City of Marion, 918 F.2d 1178 (5th Cir. 1990) ..................................    3

Prestenbach v. Rains, 4 F.3d 358 (5th Cir. 1993) ..............................................    20

Reeves v. International Telephone and Telegraph Corporation, 616 F.2d
    1342 (5th Cir. 1980) ..............................................................................    8

Riordan v. Kempiners, 831 F.2d 690 (7th Cir. 1987) ..........................................    7

Rossi v. Town of Pelham, 35 F.Supp.2d 58 (D.N.H. 1997) ...............................    17

Samuel v. Holmes, 138 F.3d 173 (5th Cir. 1998) ..............................................    3

Sanchez v. Swyden, 139 F.3d 464 (5th Cir. 1998), cert. denied
    119 S.Ct. 170 (1998) ..............................................................................    3

Swanson v. General Services Administration, 110 F.3d 1180 (5th Cir. 1997) ....    8

Thompson v. Board of Education of City of Chicago, 711 F.Supp. 394
    (N.D. Ill. 1989) ......................................................................................    16, 17

Walther v. Lone Star Gas Co., 952 F.2d 119 (5th Cir. 1992) ..............................    20

Worsham v. City of Pasadena, 881 F.2d 1336 (5th Cir. 1989) ...........................    21

## STATUTES

Federal Rules of Evidence, Rule 404(b) ............................................................    1, 9

CSPDF - www.festo.com

TO THE HONORABLE JUDGE OF THE COURT:

Comes now Justin Oakerson, Plaintiff in the above-styled and numbered case, and files this memorandum in support of his opposition to Defendants' Motion for Summary Judgment.

## I.  STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Plaintiff alleges that the Defendants terminated his employment with the Brownsville Emergency Medical Services Department (BEMS) because of his association with and advocacy on behalf of the Brownsville Professional Fire Fighters Association (BFFA), a labor union.  Defendants deny that Plaintiff's union activities played a role in their decision to terminate his employment.

By Agreed Order signed April 27, 2000, the Court denied as moot Defendants' Motion to Dismiss; set July 30, 2000 as the date for completion of discovery concerning qualified immunity; set August 30, 2000 as the deadline for dispositive motions relating to qualified immunity; set a general discovery deadline of October 31, 2000; and set a dispositive motion deadline of November 30, 2000.  By Scheduling Order signed May 17, 2000, the Court reaffirmed the discovery and dispositive motion deadlines.  By order signed November 21, 2000, the Court reaffirmed the November 30, 2000 dispositive motion deadline, but extended until December 21, 2000, the deadline for additional discovery related to the FRE 404(b) issues before the Court.

On November 30, 2000, Defendants filed a motion for summary judgment.  As to the individual Defendants, the motion is based on qualified immunity.  Simultaneously, the individual Defendants filed a motion for leave to file their untimely summary judgment motion, which Plaintiff has opposed.  The summary judgment motion and the motion for leave remain pending before the Court, as does Plaintiff's motion to consolidate this case with a related case, *Ferrell v. City of Brownsville, et al.*, No. B-99-062, and the court's ruling on Rule 404(b) issues.

1

## II.   STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

### A.   Issues Presented by Rodriguez's and Rubinstein's Motions.

The individual Defendants' Motion for Summary Judgment does not provide a statement of the issues presented. However, the individual Defendant's motion purports to be based on their entitlement to qualified immunity. In qualified immunity cases generally, the issue presented by such a motion is as follows:

(1)   Has the Plaintiff alleged the violation of a clearly established constitutional right?

(2)   Was the Defendants' conduct objectionably reasonable in light of clearly established constitutional law?

However, the summary judgment motion filed by the individual Defendants focuses not on these issues, but rather the causation element of Plaintiff's cause of action under the First Amendment. Plaintiff would state the issue actually presented by the individual Defendants' Motion for Summary Judgment as follows:

Has the Plaintiff adduced summary judgment evidence sufficient to create a fact issue concerning whether a causal connection exists between Plaintiff's protected conduct and his termination?

### B.   Issue Presented by the City of Brownsville Motion.

Defendant City's Motion for Summary Judgment likewise does not state the issue presented. Plaintiff would frame the issue for decision by the Court as follows:

Whether applicable state and local law, including the Brownsville City Charter and personnel policies, final policy-making authority has been delegated to City Manager Carlos Rubinstein and BEMS Director Arturo Rodriguez in the area of BEMS employment matters, thus making Defendant City liable for their actions in terminating Plaintiff's employment.

## III.   STATEMENT OF FACTS

### A.   Facts Related to Plaintiff's Claim.

The facts relevant to Plaintiff's opposition to the individual Defendants' motions are summarized in Plaintiff's Summary of Facts Relied Upon in Support of Plaintiff's Opposition

2

to Defendants' Motion for Summary Judgment, located at Tab 1 of Plaintiff's Appendix of Summary Judgment Evidence filed herewith. The Appendix contains the evidence from which the facts decided are taken.

### B.    Facts Related to Municipal Liability.

The facts relevant to the City's motion for summary judgment are set forth at pages 11-14 below in that section of the Argument discussing municipal liability.

## IV.    ARGUMENT AND AUTHORITIES

### A.    The Individual Defendants Have Not Established Entitlement to Summary Judgment on the Basis of Qualified Immunity.[1]

Whether an individual Defendant is entitled to qualified immunity is resolved by means of a two step inquiry. First, has the Plaintiff alleged the violation of a clearly established constitutional right? Second, was the Defendant's conduct objectively reasonable in light of clearly established constitutional law? Harris v. Victoria Independent School District, 168 F.3d 216, 223 (5th Cir. 1999), cert. denied 120 S.Ct. 533 (1999); Samuel v. Holmes, 138 F.3d 173, 176 (5th Cir. 1998). Once the Plaintiff has alleged violation of a constitutional right which is clearly established, the objective reasonableness of the individual Defendant's conduct must be assessed in light of clearly established law. The appropriate inquiry under the objective reasonableness prong is whether the contours of the right alleged were sufficiently clear that a reasonable official would understand that what he is doing violates the right. Pfanstiel v. City of Marion, 918 F.2d 1178, 1183 (5th Cir. 1990), citing Anderson v. Creighton, 107 S.Ct. 3034, 3038-9 (1987). "The subjective intent of the public official is irrelevant, and the official's knowledge of the relevant law need not rise to the level of a 'constitutional scholar.'" Sanchez v. Swyden, 139 F.3d 464, 467 (5th Cir. 1998), cert. denied 119 S.Ct. 170 (1998), citing Harlow v.

---

[1] In this brief, Plaintiff argues concerning the merits of the qualified immunity issue. However, if the Court denies the individual Defendants' motions for leave to file their untimely summary judgment motions on the issue of qualified immunity, the Court need not reach the merits.

Fitzgerald, 102 S.Ct. 2727, 2736-8 (1982). Thus, if the constitutional right alleged by Plaintiff was clearly established at the time Defendants' contested conduct occurred, and if the parameters of that right were such that a reasonable official would understand his conduct violates the right, summary judgment on the basis of qualified immunity is inappropriate.

In the instant case, the individual Defendants clearly have not met their burden of establishing entitlement to summary judgment. Defendants do not contend that Plaintiff has failed to allege violation of a clearly established constitutional right, nor could they. The Fifth Circuit previously has stated that the law was clear in 1987 that the First Amendment protects an employee's right to associate with a union. Boddie v. City of Columbus, 989 F.2d 745, 748 (5th Cir. 1993), and cases cited therein.

Nor can the Defendant claim that their actions, viewed in light of clearly established law, was objectively reasonable. "The question is not whether the law was settled, viewed abstractly, but whether measured by an objective standard, a reasonable [official] would know that his action was illegal." Matherne v. Wilson, 851 F.2d 752, 756 (5th Cir. 1988); Click v. Copeland, 970 F.2d 106, 109 (5th Cir. 1992); Boddie v. City of Columbus, supra at 748. In light of Boddie and the cases cited by it, no objectively reasonable official could believe that a public employees could be fired in retaliation for union organizational activity.

Indeed, although Defendants' motion ostensibly is based on qualified immunity, Defendants' arguments in support thereof do not truly deal with the qualified immunity issue at all. Rather, Defendants contend that Plaintiff is unable to adduce evidence creating a fact issue as to the causation element of Plaintiff's substantive First Amendment claim. Defendants argue that Plaintiff has failed to establish a connection between his protected activity and Defendants' decision to terminate him, and argue further that the termination decision would have occurred in the absence of protected activity. The Fifth Circuit previously has held that where, as here, the Defendant claims that the contested decision had nothing to do with the Plaintiff's protected activity, such "assertion, while important for the question of causation, is fatal to [the

4

Defendants'] claim of qualified immunity." Click v. Copeland, 970 F.2d 106, 112-3 (5th Cir. 1992), citing Coughlin v. Lee, 946 F.2d 1152, 1157 (5th Cir. 1991) for the proposition that the test for causation is distinct from the test for constitutional protection.

Of course, it is equally true that summary judgment on the merits is appropriate where Plaintiff fails to adduce evidence concerning an element of the substantive constitutional claim. Crawford-El v. Britton, 118 S.Ct. 1584, 1594 (even where law is clearly established, summary judgment may be appropriate where Plaintiff fails to establish an element, e.g., causation, of the substantive legal claim being advanced).    Nonetheless, Defendants clearly have not demonstrated entitlement to summary judgment in their individual capacities based on qualified immunity. First Amendment case law in this circuit clearly protects union organizational activity and was so clearly established in 1997 that no public official could claim termination of an employee in retaliation for such activity was objectively reasonable. Defendants are not entitled to summary judgment on the basis of qualified immunity.

**B.    The Individual Defendants Have Not Established Entitlement to Summary Judgment on the Merits.**

The substantive elements of a First Amendment retaliation claim are well established.    The Plaintiff must demonstrate that his conduct was protected by the First Amendment and that such conduct was a substantial or motivating factor behind the Defendants' actions. If the Plaintiff carries this burden, the Defendant must then show, by a preponderance of the evidence, that it would have taken the same action against the Plaintiff even in the absence of the protected conduct. The employee can then refute the Defendants' assertion by showing that the Defendants' proffered explanation is merely pretextual. Click v. Copeland, 970 f.2d 106, 113 (5th Cir. 1992); Brady v. Houston Independent School District, 113 F.3d 1419, 1423 (5th Cir. 1997). In the instant case, Defendants admit that Plaintiff engaged in associational activity, that they were aware of such activity, and that they terminated Plaintiff's employment. However, they dispute whether Plaintiff has created a fact issue concerning the

5

relationship between his protected activity and the termination decision. Mr. Rodriguez, who admits he made the termination decision, claims he acted solely on the basis of two negative evaluations of Oakerson's performance provided by his subordinate, Assistant EMS Director Jeff Johnston. Ds' M/Summ J, pp. 29-30. Mr. Rubinstein, while admitting that he failed to provide Mr. Oakerson an appeal of the termination decision, contends that his decision was based on the fact that the City's personnel policies did not provide for an appeal hearing. Id. pp. 27-28. Defendants thus contend that Plaintiff has failed to establish a fact issue as to whether his protected conduct was a substantial or motivating factor behind their actions. Contrary to Defendants' assertions, Plaintiff has adduced summary judgment evidence sufficient to create a fact issue with regards to the causation element of his claim. That evidence as to each Defendant is addressed separately below.

### 1.    The Evidence Regarding Mr. Rodriguez.

One gets the idea from reviewing Mr. Rodriguez's motion for summary judgment that the terminating official in this case really was his Assistant Director, Mr. Johnston, and that he had almost no role in the actual decision to terminate. Mr. Rodriguez reasons that because Mr. Johnston was the primary decision maker, and Plaintiff has failed to plead that Mr. Johnston was motivated by anti-union animus, Plaintiff cannot make the necessary causal connection between Mr. Oakerson's protected activity and the termination. See Ds' M/Summ J, pp. 29-30. This reasoning is superficial and easily rejected.

There can be no doubt that Mr. Rodriguez was in fact the person who made the decision to terminate Mr. Oakerson's employment. Rodriguez Dep., p. 184, l. 21 – p. 185, l. 10; Rubinstein Dep., p. 101, l. 13-17. This was in strict accordance with the City's personnel policies. Defendants' M/Summ J, Ex. 2-C, p. 19, §212. Mr. Rodriguez's belated attempt to shield himself behind his immediate subordinate is unseemly. Whether Mr. Johnston shared Mr. Rodriguez's anti-union animus or was acting under his direction, it is clear that Mr. Rodriguez's anti-union animus was the deciding factor in the termination of Justin Oakerson.

6

Indeed, Mr. Johnston was present at the meeting in March 1999 and indicated his agreement when Mr. Rodriguez threatened Mr. Oakerson's job if he persisted in his efforts to help employees. From the outset, then, Mr. Rodriguez's anti-union animus infected the two men's dealings with Mr. Oakerson.

Direct evidence of discrimination is rare. "Defendants of even minimal sophistication will neither admit discriminatory animus nor leave a paper trail demonstrating it; and because most employment decisions involve an element of discretion, alternative hypotheses (including that of simple mistake) will always be possible and often plausible." Riordan v. Kempiners, 831 F.2d 690, 697 (7th Cir. 1987). Fortunately, Mr. Rodriguez appears to fall in that small category of defendants who admit discriminatory animus. On no fewer than three occasions involving four separate employees – Carlos Elizondo, Fermin Cazares, Reynaldo Gil, and Bryan Chandler – Mr. Rodriguez stated in no uncertain terms his opposition to the Union and his intent that it not be allowed to organize the BEMS. He said that there will not be a Union in the BEMS, and he threatened his employees against involvement.

In addition to this direct evidence of discriminatory intent, there is a host of circumstantial evidence supporting the causal connection between Mr. Oakerson's termination and his protected conduct. Indeed, almost every type of circumstantial evidence normally used to evaluate motive in discrimination and retaliation cases is present here.

The timing of Plaintiff's termination supports the causal connection. Plaintiff was a rising star with the BEMS in January 1999 when he was promoted to Training Officer. Yet two months later, as the union organizing drive spearheaded by Mr. Oakerson began to take hold, Mr. Rubinstein and Mr. Johnston threatened him with his job as Training Officer is he persisted in his efforts on behalf of employees. Mr. Oakerson understood this conversation to refer to his union organizing activities. One week after the first major union event he organized occurred, he received an extremely negative performance review. When he publicly continued his union organization effort, he was terminated at the same time he was receiving congressional

7

recognition for his work. Such timing alone creates a fact question as to the connection between Plaintiff's protected activity and his termination. Nero v. Industrial Molding Corporation, 167 F.3d 921, 926-8 (5th Cir. 1999); Swanson v. General Services Administration, 110 F.3d 1180, 1188 (5th Cir. 1997); Reeves v. International Telephone and Telegraph Corporation, 616 F.2d 1342, 1351 (5th Cir. 1980).

The circumstances surrounding Mr. Oakerson's termination highlight its pretextual nature. Mr. Oakerson had a track record which indicated he was capable and extremely well qualified for the job of Training Officer in an emergency medical services department. He had taught such courses at the local college for years. He had taught several classes of fire fighters the necessary skills with high success as demonstrated by the Brownsville Fire Chief's letter of recommendation. He was receiving recognition at the very time he was terminated. Yet Mr. Rodriguez and Mr. Johnston found almost nothing about his work that was satisfactory.

Mr. Rodriguez now claims that Mr. Oakerson was a capable Paramedic, and that he hoped Oakerson would reapply for his prior position because he wanted to rehire him. The only reason he didn't demote him was that such course was precluded by the personnel policies. This is clearly untrue. Mr. Rodriguez admitted that nothing in the policies themselves precluded this option. Mr. Rubinstein testified that the option of demotion to the prior position was available in Mr. Oakerson's case. Although Mr. Rodriguez now admits that there were part-time Paramedic openings, Mr. Oakerson testifies that Mr. Rodriguez told him just the opposite and discouraged him from reapplying for a Paramedic position. These circumstances demonstrate that Mr. Rodriguez's goal was not simply to remove Mr. Oakerson as Training Officer, but to remove him from the department entirely. He simply seized on the promotional probation period to accomplish his true goal.

Mr. Rodriguez's lack of veracity is yet another factor indicating his anti-union animus. Mr. Rodriguez testifies that he had no anti-union animus, and that he made no statements against the union to any of his employees. He testifies that he encouraged rather than

8

discouraged Mr. Oakerson from reapplying for his old position. He testified that the promotional probation policy prevented him from simply demoting Mr. Oakerson. Yet in case after case his testimony was contradicted by Mr. Oakerson, by other BEMS employees such as Fermin Cazares, Carlos Elizondo and Bryan Chandler, and even by Mr. Rubinstein.

Treatment of similarly situated employees provides yet another way to demonstrate discriminatory or retaliatory intent. E.g., Harpring v. Continental Oil Company, 628 F.2d 406, 409 (5th Cir. 1980), cert. denied 102 S.Ct. 100 (1981); Coughlin v. Lee, 946 F.2d 1152, 1159 (5th Cir. 1991).[2] Mr. Oakerson was in a category of two. There were exactly two employees who spearheaded the union organizing effort in BEMS – Joel Ferrell and Justin Oakerson. Both were long time employees who were fired within months after beginning their union organizing efforts. Contrary to Defendants' assertions, the comparable treatment of Joel Ferrell is relevant and indeed critical to Mr. Oakerson's case.

The comparable treatment of Rigoberto Bocanegra is also important to Mr. Oakerson's case. Mr. Bocanegra was promoted from EMT Intermediate to Paramedic. He failed his promotional probation because of misconduct. However, he was not fire but simply demoted to his prior position. In Mr. Oakerson's case, positions were available and the policy allowed his demotion if in fact Mr. Rodriguez's true concern was his failure to properly perform as Training Officer. That Mr. Rodriguez did not opt for this course illustrates the pretextual natures of his actions in terminating Mr. Oakerson.

Again, almost every type of evidence normally used to demonstrate pretext in discrimination and retaliation cases is contained in this summary judgment record. There are multiple instances of direct evidence of discriminatory animus by Mr. Rodriguez, one of which is in very close proximity to Mr. Oakerson's termination. Mr. Rodriguez and Mr. Johnston directly threatened Mr. Oakerson because of his sympathies towards the employees. The

---

[2] The relevance of comparable evidence concerning other employees will be dealt with in greater depth in Plaintiff's additional briefing regarding the FRE 404(b) issue.

circumstances of his termination, the similar treatment of the only other union organizer, and the disparate treatment of another employee who failed promotional probation all support the causal connection between Mr. Oakerson's termination and his union organizing activity. Plaintiff has created a fact issue concerning this element of his case, and Defendants' motion for summary judgment as to Mr. Rodriguez must fail for that reason.

### 2.    The Evidence Regarding Mr. Rubinstein.

The evidence regarding Mr. Rubinstein, while less abundant and circumstantial in nature, nonetheless creates a fact question as to the causal connection between his actions and Mr. Oakerson's termination. Mr. Rubinstein claims that he essentially took no action concerning Mr. Oakerson's termination, as such was not allowed under the new personnel policies. That testimony is suspect.

There is no question that Mr. Rubinstein knew of the union organizing effort and Mr. Oakerson's involvement in it. He had been involved in the Joel Ferrell case, and this Court may took judicial notice that litigation in that case was well underway at the time Mr. Oakerson was fired. Thus, Mr. Rubinstein viewed Mr. Oakerson's termination against the backdrop of the Ferrell case.

Mr. Rubinstein claims he was without authority to review Mr. Oakerson's termination under the personnel policies. Yet Mr. Rodriguez testified that in the case of another employee who failed promotional probation, an appeal was in fact taken to the City Manager's office. Rodriguez Dep., p. 177, l. 25 – p. 178, l. 25. As Mr. Rodriguez testified, this case was processed under the prior personnel policies. Rodriguez Dep., p. 179, l. 4-11. Yet even under the old policy, failure of promotional probation was not considered disciplinary action, and thus not appealable. This part of the promotional probation policy did not change. Compare Rodriguez Dep., Ex. 26, p. 10, §311 with Ex. 27, p. 19, §212. Thus, the change in policies does not explain why the prior employee was afforded a hearing by the City Manager's office, but Mr. Oakerson was not.

10

Mr. Oakerson clearly put Mr. Rubinstein on notice that he was claiming retaliation for union activity. His appeal letter specifically stated that he was fired for engaging in protected union organizing. He was a permanent, part-time employee with a property interest in his employment. Yet Mr. Rodriguez refused to afford him with any type of post-termination hearing.

That is not to say that Mr. Rodriguez failed to make a decision regarding Mr. Oakerson's claims of retaliation. Mr. Rubinstein's response to Oakerson's appeal, which denied Mr. Oakerson any opportunity to present a defense and evidence of retaliation, also specifically found that Mr. Oakerson's termination was based on performance and not anti-union animus. What he based his decision is not explained. What is clear, however, is that Mr. Oakerson had no opportunity to present to Mr. Rubinstein the evidence he has presented in this case.

This evidence should not, must not be considered in a vacuum. Mr. Rubinstein had had prior conversations with Mr. Rodriguez about union organizing activity in BEMS. Shortly after that meeting, Mr. Rodriguez issued his memorandum telling employees they were mistaken if they thought they belonged to a union. Mr. Rubinstein was aware of the allegations in Mr. Ferrell's case and was put on notice of Mr. Oakerson's claims. He then denied Mr. Oakerson an appeal apparently afforded to a prior employee and made a decision on his retaliation claims without considering any of Mr. Oakerson's evidence. On this record, there clearly exists a fact issue concerning the relationship between Mr. Oakerson's union activity and Mr. Rubinstein's decision, which effectively upheld the termination. Summary judgment for Mr. Rubinstein therefore is not appropriate.

### C. Defendant City of Brownsville Has Not Established Entitlement to Summary Judgment.

#### 1. Facts Relevant to Municipal Liability.

The City Charter provision most relevant to the issue of municipal liability in this case is Article V, §20. That Charter provision, consisting of four paragraphs, reads in its entirety as follows.

Section 20.    City manager; his responsibilities and powers of appointment and removal; removal of officers and employees; and non-interference with appointments and removals.

**The commission shall appoint an officer whose title shall be city manager, and he shall be the chief executive officer and head of the administrative branch of the city government.** The city manager shall be chosen by the commission solely on the basis of his executive and administrative qualifications with special reference to his actual experience in or his knowledge of accepted practices in respect to his duties of the officer as hereinafter outlined. At the time of his appointment he need not be a resident of the city or state, but during his tenure of office he shall reside within the city.  No person elected to membership on the city commission shall, subsequent to such election, be eligible for appointment as city manager until one year has elapsed following the expiration of the term for which he was elected.  **The city manager shall be appointed for an indefinite term, but he may be removed by a majority vote of the members of the city commission on thirty days prior notice of their intention to remove him.**  The action of the city commission in removing the manager shall be final.  In case of the absence of the manager, he may, with the approval of the city commission, designate a qualified administrative officer of the city to perform his duties during his absence, and absence shall include temporary disability on account of sickness, or otherwise.

**The city manager** shall be responsible to the city commission for the proper administration of all affairs of the city in his charge and to that end, **except as otherwise provided in this Charter, and, subject to any provisions herein with reference to civil service, he shall have the power to appoint and remove all officers and employees in the administrative service of the city, except the city attorney, who shall be appointed by the city commission but the manager may authorize the head of a department or office, responsible to him to appoint and remove subordinates in such department or office.** Appointments made by or under the authority of the city manager shall be on a basis of executive and administrative ability and of the training and experience of such employees in the work that they are to perform; all such appointments shall be without definite term.

All appointments and removals of officers and employees shall be subject to the personnel policy adopted by the commission, except as otherwise provided by this Charter, or as provided by law.

**The city commission and its members shall deal with the administrative service of the city solely through the city manager.  Neither the city commission nor any of its members shall in any manner dictate the appointment or removal of any city administrative officers or employees whom the city manager or any of his subordinates are empowered to appoint,** but the city commission may express its views and fully and freely discuss with the city manager anything pertaining to appointment and removal of such officers and employees. (Ord. No. 871, Prop. No. 4, 7-29-75)

CSDPDF - www.fwxia.com

Ds' M/Summ J, Ex. 2-A, pp. CH-61-CH-63; Ex. 2-B, p. 4 (emphasis added).[3]  As seen from the language itself, Article 5, §20 gives the city manager exclusive authority over the hiring and firing of city employees.  The city commission's authority is limited to the adoption of personnel policies to guide the city manager, and to appointment and removal of the city manager him or herself.  The fourth paragraph of Article 5, §20 makes clear that with the exception of adoption of personnel policies, the city commission has no authority to influence hiring and firing policy or decisions.  This authority is vested exclusively in the city manager, who may in turn delegate that authority to department heads.  The Charter in fact specifically precludes the involvement of the Commission in hiring and firing decisions except in an advisory capacity.

The exclusive authority of the City Manager and department heads with regards to personnel decisions is borne out by Brownsville's personnel policies, attached to the Defendants' Motion for Summary Judgment as Exhibit 2-C.  The policies state:  "The City Manager is responsible for the proper administration of the City of Brownsville.  The City Manager shall have final authority and responsibility for the administration and enforcement of the policies set forth in this Personnel Policies Manual, and all other aspects of the City of Brownsville's operations.  Department Directors will assist the City Manager in setting and enforcing standards of employee conduct, welfare and morale in their departments."  The policies also state:  "Department Directors will be responsible for the proper and effective administration of these Rules and Regulations within their departments."  Defendants' M/Summ J, Ex. 2-C, p. 14, §101.E.II.  The personnel policies do not provide for action by the City Commission regarding employment decisions made by the City Manager and department heads, nor under the Charter could they.  Indeed, former City Manager Carlos Rubinstein testified that he would not even discuss personnel matters with elected officials, and specifically

---

[3] The third paragraph of Article 5, §20 was amended in a charter amendment election conducted November 2, 1993. Ds' M/Summ J, Ex. 2-B, p. 1. Thus, the first, second and fourth paragraph of Article 5, §20 are found in Ex. 2-A, the Charter as amended through June 28, 1963. Ex 2-A, p. CH-1. The text

declined to engage in a discussion concerning the BFFA requested by the Mayor. Rubinstein Dep., p. 65, l. 15 – p. 66, l. 23.

In their depositions, Defendants Rodriguez and Rubinstein testified that employee terminations in practice occur as indicated in the City Charter and personnel policies. Mr. Rodriguez testified that only he had authority during his tenure as BEMS Director to terminate BEMS employees. Rodriguez Dep., p. 172, l. 7, l. 15. Mr. Rubinstein agreed that as City Manager, he did not discipline or terminate employees, but only acted on employee termination appeals if filed. Rubinstein Dep., p. 79, l. 17 – p. 81, l. 23. Mr. Rubinstein testified that Mr. Rodriguez's responsibility as BEMS Director was to terminate employees, and that his responsibility was limited to hearing appeals if filed. Rubinstein Dep., p. 81, l. 19 – p. 82, l. 7. Mr. Rubinstein further testified that under the Charter and personnel policies, his decisions regarding termination appeals were final, and not subject to appeal to the City Commission. Rubinstein Dep., p. 86, l. 7 – p. 88, l. 10.

### 2.  General Standards Pertaining to Municipal Liability.

**Municipal Liability Established.** It is now well established that municipalities may be held liable under §1983 for deprivations of federal rights. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978). However, a municipality is not automatically liable for the constitutional torts committed by its officers or employees under the respondeat superior doctrine. Id. at 691, 98 S.Ct. at 2036. A municipality is exposed to liability only when action pursuant to official municipal policy caused the deprivation. Id.

**Liability for Single Decision by Policymaker.** It is equally well established "that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298 (1986) (plurality opinion). A municipality may be liable under §1983 for a single decision

of third paragraph of Article 5, §20 is found in Ex. 2-B, the ordinance setting forth the amendments adopted in 1993. Ex. 2-B, p. 4.

by its city commission because even a single decision by such a body constitutes an act of official government policy.  Id. (citations omitted).  However, a municipality's final policymaking authority is not limited to the local legislative body.  Monell expressly envisioned other officials "whose acts or edicts may fairly be said to represent official policy" and whose decisions therefore may give rise to municipal liability.  Monell, supra at 694, 98 S.Ct. at 2037-8; Pembaur, supra at 480, 106 S.Ct. at 1298-9.  The Supreme Court has indicated no preference for any single body or official as a source of municipal policymaking authority.  Gros v. City of Grand Prairie, Texas, 181 F.3d 613, 615 (5th Cir. 1999), citing Pembaur, supra.  Rather, the Court has stated that one may expect to find final policymaking authority distributed among a host of different officials and official bodies.  Gros, supra at 615, citing City of St. Louis v. Praprotnik, 485 U.S. 112, 124-5, 108 S.Ct. 915, 925 (1988).

**State Law Governs Policymaker Identification.**  The identification of policymaking officials is a question of State law.  Pembaur, supra at 483, 106 S.Ct. at 1300 (plurality opinion); Praprotnik, supra at 124, 108 S.Ct. at 924 (plurality opinion); Jett v. Dallas Independent School District, 491 U.S. 701, 737, 109 S.Ct. 2702, 2723 (1989).  The sources of State law which should be used to determine which municipal officials possess final policymaking authority include legislative enactments, other State and local positive law (including local ordinances and regulations), and customs or usages having the force of law.  Praprotnik, supra at 124 n.'1 and accompanying text and 125, 108 S.Ct. at 924-5 (plurality opinion); Jett, supra at 737, 109 S.Ct. at 2724; Gros v. City of Grand Prairie, supra at 616.

**Authority to Effect Policy Required.**  For municipal liability to attach, the decision-maker must possess final authority to establish municipal policy with respect to the action ordered.  Pembaur, supra at 481, 106 S.Ct. at 1299.  Pembaur provided the following example to illustrate this principle.

> Thus, for example, the county Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy.   If this were the case, the Sheriff's decisions

15

respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff is the official policymaker, would give rise to municipal liability.  Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability.  This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board.  However, if the Board delegated its power to establish final employment policy to the Sheriff, the Sheriff's decisions would represent county policy and could give rise to municipal liability.

Pembaur, supra at 483 n.12; 106 S.Ct. at 1300.

**Multiple Policymakers Possible.**  Important to this case, it is also clear that more than one body or official may have final policymaking authority with regards to a given area such as employment policies.  For example, in Pembaur the court noted with approval the Sixth Circuit's conclusion that both the County Sheriff and County Prosecutor had final policymaking authority concerning law enforcement practices.  Id. at 484, 106 S.Ct. at 1301.  Similarly, in Praprotnik, supra, the court found the existence of multiple policymakers with regards to establishing employment policies.  The court stated:

In the case before us, for example, it appears that the Mayor and Aldermen are authorized to adopt such ordinances relating  to personnel administration as are compatible with the City Charter.  See St. Louis City Charter, Art. XVIII, §7(b), App. 62-63.  The Civil Service Commission, for its part, is required to "prescribe ... rules for the administration and enforcement of the provisions of this Article, and of any ordinance adopted in pursuant thereof, and not inconsistent therewith." §7(a), App. 62.  Assuming that applicable law does not make the decisions of the Commission reviewable by the Mayor and Aldermen, or vice versa, one would have to conclude that policy decisions made either by the Mayor and Aldermen or by the Commission would be attributable to the city itself.

Praprotnik, supra at 126, 108 S.Ct. at 925.  See also Thompson v. Board of Education of City of Chicago, 711 F.Supp. 394, 412 (N.D. Ill. 1989) (school board and superintendent shared final policymaking authority regarding teacher transfers).

**Delegation of Policymaking Authority.**  "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority ... ."  Pembaur, supra at 483, 106 S.Ct. at 1300 (plurality opinion).  The

16

CloPDF - www.fesisi.com

policymaker's delegation may be made in either of two ways.  First, delegations may occur by express statement, by a job description or by other formal action.  Second, the policymaker may by its conduct or practice encourage or acknowledge the agent in the policymaking role.  Bennett v. City of Slidell, 728 F.2d 762, 769 (5th Cir. 1984), cert. denied 472 U.S. 1016, 105 S.Ct. 3476 (1985).  In either case, the delegation must be of policymaking authority as opposed to mere discretion or decision making authority.  Id.

**Policymaker's Qualified Immunity Irrelevant.**  Finally, where it has been shown that a constitutional deprivation resulted from the action of a final policymaker, municipal liability is not defeated merely because the policymaker may be entitled to qualified immunity from individual liability.  For example, in Pembaur, supra, the plaintiff sued a county prosecutor and other individual defendants as well as the county after an illegal search of his office.  After the court of appeals upheld dismissal of the claim against the county prosecutor on the basis of qualified immunity, the plaintiff appealed to the Supreme Court seeking review only of the dismissal of his claim against the county.  The Supreme Court found that the county prosecutor was a final policymaker, and that his actions in ordering the unconstitutional search could subject the county to liability.  The Supreme Court so held even though the county prosecutor in his individual capacity enjoyed qualified immunity from suit.  Pembaur, supra.  Accord Thompson v. Board of Education of City of Chicago, 711 F.Supp. 394, 413-4 (N.D. Ill. 1989) (where school board and superintendent were final policymaking authorities on issue of teacher transfers, their transfer of teacher in violation of her First Amendment rights subjected school district to liability although superintendent was entitled to qualified immunity); Rossi v. Town of Pelham, 35 F.Supp.2d 58, 72-3 (D.N.H. 1997) (where police chief and board of selectmen who were final policymaking authorities ordered illegal search of plaintiff's house, municipality could be held liable although the police chief and selectmen were entitled to qualified immunity).

17

3. **Application of General Standards to Plaintiff's Claim Against Defendant City.**

In its motion for summary judgment, Defendant City contends that it cannot be liable for violation of Plaintiff's First Amendment rights because only the City Commission is a final policymaking authority with regard to employee terminations, and the City Commission admittedly was not involved in the decision to discharge Plaintiff.   However, contrary to Defendant City's position, it is clear that the individual Defendants were in fact final policymaking authorities with regards to termination of BEMS employees and that the City therefore may be liable for their single decision to discharge Plaintiff.   The status of  each as a final policymaking authority is examined below.

a. **City Manager Carlos Rubinstein as a Final Policymaking Authority Regarding Employee Discharges.**

Defendant City's contention that the City Commission alone is the final policymaking authority with regards to employee discharges is grounded on the third paragraph of Article 5, §20 of the City Charter.   Paragraph three states:  "All appointments and removals of officers and employees shall be subject to the personnel policy adopted by the commission, except as otherwise provided by this Charter, or as provided by law."   Ds' M/Summ J, Ex. 2-A, p. 4.   The City understands this provision to mean that the City Commission alone retains ultimate authority to determine the City's personnel matters, including those relating to the appointment and removal of employees.   The error in the City's reasoning lies in its reading of paragraph three in isolation from the remainder of Article 5, §20 of the Charter.

Specifically, the first paragraph of Article 5, §20 makes the City Manager "the chief executive officer and head of the administrative branch of the city government."   D's M/Summ J, Ex. 2-A, p. CH-61.   As paragraphs one and two indicate, the City Commission's authority over the City Manager with regards to employee terminations is limited to the Commission's ability to appoint and remove the City Manager him or herself.   Id. at CH-61-2.   In fact, it is the City Manager who under the Charter retains ultimate authority at all times with regards to the

18

appointment and removal of City employees. Paragraph four of Article 5, §20 in fact prohibits the City Commission from dealing directly with employees or interfering in their appointment or removal. Paragraph four states: "The city commission and its members shall deal with the administrative service of the city solely through the city manager. Neither the city commission nor any of its members shall in any manner dictate the appointment or removal of any city administrative officers or employees whom the city manager or any of his subordinates are empowered to appoint ... ." Id. at Ch-63. Under paragraph four, the City Commission's authority with regards to employee appointments and removals is limited to providing advice to the City Manager. Id.

In similar circumstances, the courts previously have held that the City Manager is in fact a final policymaking authority with regards to employee discharges. An example is Martinez v. City of Opa-Locka, Florida, 971 F.2d 708 (11th Cir. 1992). In Martinez, an employee contended the city manager fired her in retaliation for protected speech. Opa-Locka contended it could not be held liable because the city manager was not a final policymaking authority with regards to employee terminations. The court disagreed. Noting that the city's charter prohibited the city commission from directing or requesting employee appointments or removals, and that it made the city manager's decision to hire or fire administrative personnel final and unreviewable by the commission, the court found the city manager to be a final policymaking authority with regard to the appointment and removal of employees. Id. at 713-4. Accord Mattix v. Hightower, 1998 WL 246671 (N.D. Tex. 1998). In Mattix, the city charter for the City of Burleson established the city manager as the chief executive officer and head of the administrative branch of government, with authority to appoint and remove city employees. The city's personnel policies in turn mandated that the city manager had final authority on all demotions and dismissals. The court held that these provisions made the city manager the final policymaking authority pertaining to employment matters. Id. at 13-14.

Neubauer v. City of McAllen, 766 F.2d 1567 (5th Cir. 1985),[4] is directly on point and supports Plaintiff's position. Neubauer discussed whether the McAllen city manager was an official whose actions in terminating a police officer could be attributed to the City of McAllen for purposes of §1983 liability. The court held that the city manager did possess final policymaking power in this area so as to hold the city accountable under §1983. Neubauer, supra at 1573-4. In making this determination, the court noted that the McAllen Code designated the city manager as "the administrative head of the municipal government" with power to "appoint or remove all subordinate employees." The court further noted that the city's personnel policies, approved by McAllen's city commission, provided the city manager with authority to discharge employees for just cause. Id. at 1573-4. Based on these provisions, the court concluded that the McAllen city manager acted in lieu of the governing body regarding termination decisions, and that his authority in that area was exclusive. Id.

The provisions of the McAllen Code and personnel policies are strikingly similar to the comparable provisions of the Brownsville City Charter and personnel policies which vest the City Manager with final decision making authority regarding employee terminations, and divest the City Council of any authority to review the City Manager's decisions. Neubauer fully supports Plaintiff's contention that Carlos Rubinstein was a final policy making authority with regards to Plaintiff's termination.

Cases cited by Defendant City in support of its contention that the City Commission alone is the final policymaking authority regarding employee discharges clearly are distinguishable. Defendant City relies upon Jett v. Dallas Independent School District, 7 F.3d 1241 (5th Cir. 1993). In Jett, the school district was held to be the final policymaking authority

---

[4] Neubauer's separate holding that a jury verdict may not be sustained where some of the theories on which it was submitted had insufficient evidentiary support appears subsequently to have been disapproved. See Walther v. Lone Star Gas Co., 952 F.2d 119, 126 (5th Cir. 1992), and Prestenbach v. Rains, 4 F.3d 358, 362 n. 2 (5th Cir. 1993). However, that issue is not involved in the instant case, and those rulings do not affect the authoritative nature of Neubauer with regards to its ruling concerning the City Manager as a final policy making authority.

with regards to teacher transfers even though the school board had adopted a policy delegating its authority to the superintendent.   <u>Jett</u> is distinguishable from the instant case in which no delegation of City Council authority to the City Manager has taken place. The City Charter vests authority to determine employee discharges solely with the City Manager.  The Commission by law is limited to an advisory role only.  Thus, the instant case clearly is distinguishable from <u>Jett</u>.

Defendant City relies heavily on <u>Worsham v. City of Pasadena</u>, 881 F.2d 1336 (5th Cir. 1989).  In <u>Worsham</u>, the court held that the mayor and public works director who terminated plaintiffs were not final policymaking authorities with regards to employee terminations. However, in so ruling, the court noted that local law provided a meaningful appeal to the city council which plaintiff had utilized.  Indeed, the city council in <u>Worsham</u> had reinstated plaintiff as a result of his appeal.  <u>Id.</u> at 1340-1.  Here, on the other hand, no such appeal to the City Commission exists or could exist given the mandatory language of Brownsville's City Charter. Clearly then, the City Manager is a final policymaking authority with regards to employee terminations.

> **b.     Defendant Rodriguez Is a Final Policymaking Authority with Regard to BEMS Employee Terminations.**

As noted above, final policymaking authority with regards to a given area is not necessarily limited to single body or individual.  <u>E.g.</u>, <u>Praprotnik</u>, <u>supra</u> at 126, 108 S.Ct. at 925.  Moreover, policymaking authority can be delegated by the person vested with that authority.  <u>Bennett v. City of Slidell</u>, <u>supra</u> at 769.

In the instant case, the City Charter specifically authorizes the City Manager to delegate authority to appoint and remove subordinates to the various department heads.  Article 5, §20, para. 2 states, in, pertinent part:  "[T]he [city] manager may authorize the head of a department or office, responsible to him to appoint and remove subordinates in such department or office." Ds' M/Summ J, Ex. 2-A, p. CH-62.  City Manager Carlos Rubinstein clearly delegated such authority to his department heads during his tenure as City Manager.  Mr. Rubinstein testified

CWPDF – www.fastio.com

that department heads alone made the decision to terminate employees in their respective departments. As City Manager, Mr. Rubinstein had no role in employee terminations unless and until the employee appealed that decision. Mr. Rodriguez testified that during his six years as BEMS Director, he effected all BEMS employee terminations (there were three of them).

Neubauer v. City of McAllen, supra, does not preclude a finding that Mr. Rodriguez was a final policy maker with regards to Justin Oakerson's termination. In Neubauer, the court found that department heads were not final policy makers for purposes of municipal liability. In so ruling, however, the court noted that while the city manager had authority under the McAllen Code and personnel policies to delegate authority to department heads, there was no evidence that such delegation had occurred. Id. at 1474. Neubauer clearly is distinguishable. Here, there is evidence in the personnel policies that authority with regards to promotional probation decisions had in fact been delegated to the department heads. Indeed, the City Manager contends he had no role and no authority to review Mr. Rodriguez's decision regarding Mr. Oakerson's promotional probation. While Plaintiff, who had a property interest in his employment, certainly questions whether the City Manager had authority to step in and prevent his termination, the fact remains that Mr. Rubinstein did not step in and did not provide any meaningful opportunity for review of Mr. Rodriguez's termination decision. The delegation of authority absent in Neubauer clearly is present here. Mr. Rodriguez was a final policy making authority with regards to the termination of Justin Oakerson.

Case law supports the notion that department heads can possess final policymaking authority with regards to employee terminations either as a matter of local law or by delegation. In Nichols v. City of Jackson, 848 F.Supp. 718 (S.D. Miss. 1994), a fire chief was held to be a city policymaker with regards to suspension of fire fighters where the civil service law gave the fire chief authority to "suspend a member pending the confirmation of the suspension by the regular appointing power". Id. at 726. In Boddie v. City of Columbus, 989 F.2d 745 (5th Cir. 1993), a fire fighter contended he was fired by the fire chief in violation of his First Amendment

22

CutePDF - www.fastio.com

associational rights. The court rejected the city's contention on appeal that it was not liable because the fire chief was not a policymaker with regards to fire fighter discharges. Although the decision in <u>Boddie</u> turned primarily on the city's failure to raise its challenge earlier, <u>Boddie</u> since has been cited by the Fifth Circuit for the proposition that a municipality may be held liable for a single decision where the course of action is made by the local government's authorized decision makers. <u>Gonzalez v. Ysleta Independent School District</u>, 996 F.2d 745, 754 (1993). Clearly, Defendant Rodriguez was a final policymaking authority with regards to Mr. Oakerson's termination.

    c.    **Brownsville Can Be Held Liable for Its Policymakers' Single Decision to Discharge Plaintiff.**

In its motion, Defendant City correctly notes that municipal liability arises only when the execution of an official policy or custom of the municipality causes the constitutional injury. <u>Gros v. City of Grand Prairie, supra</u> at 615. However, a policy or custom becomes official for purposes of municipal liability when it results from the decision or acquiescence of the municipal officer having final policymaking authority over the area in which decisions were made. <u>Id.</u>

And as stated above, a municipality may be held liable for a single act or decision of a municipal official with final policymaking authority in the area of the act or decision. <u>Jett, supra</u> at 737, 109 S.Ct. at 2724; <u>Praprotnik, supra</u> at 123, 108 S.Ct. at 924; <u>Pembaur, supra</u> at 480, 106 S.Ct. at 1298. Even a single act of egregious misconduct by an official having final policymaking authority in the area in question may give rise to liability. For example, in <u>Bennett v. Pippin</u>, 74 F.3d 578 (5th Cir. 1996), <u>cert. denied</u> 519 U.S. 817, 117 S.Ct. 68 (1996), the county was held liable for the Sheriff's rape of a murder suspect where the Sheriff was final policymaker in the area of law enforcement. <u>Accord Brooks v. George County, Mississippi</u>, 84 F.3d 157 (5th Cir. 1996), <u>cert. denied</u> 519 U.S. 948, 117 S.Ct. 359 (1996) (where sheriff who failed to keep adequate records was final policymaking authority over law enforcement, county

23

could be held liable for detention of plaintiff eight months after charges against him were dropped). Furthermore, "[w]hen a final policy maker makes the relevant decision, and when that decision is within the sphere of the policy maker's final authority, 'the existence of a well-established, officially-adopted policy will not insulate the municipality from liability.'" Bennett v. Pippin, supra at 586, quoting Gonzalez v. Ysleta Independent School District, supra at 754.

As the above cases illustrate, the fact that Plaintiff's termination was the result of a single decision made by Defendant Rodriguez and affirmed by Defendant Rubinstein does not shield the City from liability. Since Rodriguez and Rubinstein had final policymaking authority with regard to employment decisions, their actions in firing Plaintiff constituted those of the City for purposes of liability under §1983. Moreover, even if the City could point to some policy precluding such retaliatory terminations, this would not shield the City from liability for the actions of its final policymaking authorities. Bennett v. Pippin, supra at 586. The fact that Plaintiff's discharge occurred as a result of a single decision does not shield the City from liability.[5]

## V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully contends that Defendants are not entitled to summary judgment on the basis of the summary judgment record. Plaintiff therefore respectfully requests that Defendant City's Motion for Summary Judgment be denied.

---

[5] Of course, Plaintiff intends to establish at trial that his discharge was not an isolated event. It occurred in the context of multiple anti-union statements and threats made by Defendant Rodriguez, and was preceded by the termination of the only other BEMS employee who stepped forward to spearhead the BFFA's organizing drive.

Respectfully submitted,

B. Craig Deats
DEATS & LEVY, P.C.
TBN:  05703700  FEd.ID 6369
327 Congress Avenue, Suite 300
Austin, Texas 78701
(512) 474-6200
FAX (512) 474-7896


Miguel A. Saldaña
LAW OFFICE OF MIGUEL A. SALDAÑA
TBN: 17529450  FEd.ID 10954
Corporate Plaza, Suite 109
302 Kings Highway
Brownsville, Texas 78521
(956) 542-9161
FAX (956) 542-3651

ATTORNEYS FOR PLAINTIFF


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document has been sent by hand delivery to the attorney for Defendants, J. Arnold Aguilar, LAW OFFICE OF J. ARNOLD AGUILAR, Artemis Square, Suite H-2, 1200 Central Blvd., Brownsville, Texas 78520, on this 20th day of December, 2000.


Miguel A. Saldaña

25