Case 1:99-cv-00197   Document 38   Filed in TXSD on 02/26/2001   Page 1 of 24

United States District Court
Southern District of Texas
FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

FEB 2 6 2001

Michael N. Milby
Clerk of Court

| | |
|---|---|
| JUSTIN OAKERSON, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § |
| | § |
| CITY OF BROWNSVILLE, | § |
| ARTURO RODRIGUEZ, and | § |
| CARLOS RUBINSTEIN, | § |
| | § |
| Defendants. | § |

CIVIL ACTION NO. B-99-197

## PLAINTIFF'S MEMORANDUM OF AUTHORITIES
## REGARDING ADMISSIBILITY OF EVIDENCE

TO THE HONORABLE JUDGE OF THE COURT:

In response to the instructions set forth in the Court's Order signed November 21, 2000, Plaintiff Justin Oakerson submits this memorandum regarding the admissibility of certain evidence in these cases under Rule 404(b) of the Federal Rules of Evidence (FRE). Section I below details the factual background and present posture of this case. Section II relates to the evidence sought to be admitted by Plaintiff which Defendants may contend is inadmissible under Rule 404(a). Section III describes the evidence sought to be admitted by Defendants which Plaintiff contends is character evidence made inadmissible under Rule 404(a). As directed by the Court, Plaintiff has attempted to make this memorandum comprehensive, supplanting all prior memorandums submitted regarding Rule 404(b) admissibility issues raised by the Court and the parties. An identical memorandum of law has been submitted in *Ferrell v. City of Brownsville, et al.*, C.A. No. B-99-062. *(Ferrell)*

1

Case 1:99-cv-00197  Document 38  Filed in TXSD on 02/26/2001  Page 2 of 24

I.      **Factual Background.**

As directed by the Court's November 21, 2000 Order, the parties have contemporaneously filed joint submissions in the *Oakerson* and *Ferrell* cases outlining the evidence which arguably might implicate Rules 404(a) and 404(b). The Court's Order requires the parties to "submit a joint memorandum that lists and provides a brief description of all the Rule 404(b) evidence that each Party seeks to admit in each case" (emphasis in original). Because the Order requires each party to identify evidence believed admissible under Rule 404(b), rather than requiring the parties to identify that evidence sought to be admitted by the opposing party which is considered objectionable under Rule 404(a), the parties of necessity have had to identify all evidence that arguably implicates Rule 404. As will be seen below, Plaintiff contends that much and possibly all of the evidence identified by him is admissible under traditional standards governing the admissibility of such evidence in retaliation cases filed under the First Amendment and Title VII, without resort to Rule 404(b).

The evidence to be considered at the Rule 404(b) hearing on April 10 is set forth in Plaintiffs' Appendix of Summary Judgment Evidence filed in *Oakerson v. City of Brownsville, et al.*, (hereinafter "Plaintiffs' Appendix") on December 20, 2000. Tab 1 of the Appendix is a Summary of Facts which describes the evidence and references it as follows. Deposition testimony is identified by page and line number, together with exhibits. Affidavit testimony is identified by paragraph number. If deemed necessary by the Court, Plaintiff will provide an additional copy of the Appendix and summary for the Court's review in connection with the Rule 404(b) hearing.

II.     **Evidence Sought to Be Admitted by the Plaintiff.**

A.      **The Evidence Described.**

The evidence which Plaintiff seeks to admit and Defendants desire to exclude is essentially of three types. The three types of evidence may be described as follows.

1.    **Evidence Regarding the Terminations of Oakerson and Ferrell.**

Plaintiff seeks to admit, and Defendants seek to exclude, evidence regarding the termination of Justin Oakerson in the *Ferrell* case, and evidence of Joel Ferrell's termination in the *Oakerson* case.

2.    **Evidence Regarding Anti-Union Statements Made by Defendant Rodriguez.**

Plaintiff seeks to admit, and Defendants seek to exclude, testimony by several BEMS employees regarding anti-union statements and threats made to them by Defendant Rodriguez during the time period covered by Plaintiff's union organizing efforts and discharges. This evidence is summarized as follows.

a.    Testimony of Carlos Elizondo concerning a conversation with Defendant Rodriguez occurring in May 1997. Mr. Elizondo's affidavit regarding this conversation is found in Plaintiffs' Appendix at Tab 12.

b.    Testimony by Joel Ferrell concerning a conversation he had with Supervisor Sam Ortega about remarks Defendant Rodriguez made to Ortega. The conversation is described in paragraph 9 to Ferrell's affidavit, located at Tab 3 of Plaintiffs' Appendix.

c.    Testimony by BEMS employees Fermin Casares and Reynaldo Gil concerning a conversation with Defendant Rodriguez that occurred in the Summer of 1997. This conversation is described in paragraphs 4-7 of the Affidavit of Fermin Casares, which is Tab 6 of Plaintiffs' Appendix. Mr. Gil has not provided an affidavit or deposition testimony in the two cases.

d.    Testimony by BEMS employee Bryan Chandler regarding a conversation he had with Defendant Rodriguez in the Spring of 1999. This conversation is described by Mr. Chandler in his deposition testimony found at Tab 11 of Plaintiffs' Appendix. That testimony is summarized in the Summary of Facts at pages 18-20.

3

Case 1:99-cv-00197   Document 38   Filed in TXSD on 02/26/2001   Page 4 of 24

3.   **Evidence of Disparate Treatment of Other BEMS Employees Vis-à-Vis Plaintiff.**

Finally, Plaintiff seeks to introduce testimony that other employees were treated differently from him with regards to the allegations that led to his discharge. This evidence may be described as follows.

a.   Disparate treatment of Joel Ferrell – Mr. Ferrell was terminated allegedly for violating standard operating procedures by failing to begin resuscitative efforts on a dead patient without following the protocol for making a determination of death. Justin Oakerson will testify that he and Defendant Rodriguez were personally present at another emergency scene where BEMS employees Sam Ortega and Norma Ferrell failed to begin resuscitative efforts on a dead patient without going through the protocol. This evidence is described in paragraph 11 to Oakerson's affidavit found at Tab 4 of Plaintiffs' Appendix.

b.   Disparate treatment of Justin Oakerson – Mr. Oakerson was discharged after he allegedly failed his probationary period as Training Officer. Fermin Casares will testify that BEMS employee Rigoberto Bocanegra failed his probationary period as Paramedic after Mr. Casares reported him for gross misconduct during a patient transport. Mr. Bocanegra was not terminated, but simply demoted to his prior position as EMT. Mr. Casares' testimony regarding this incident is found in paragraph 8 of Mr. Casares' affidavit found at Tab 6 of Plaintiffs' Appendix.

B.   **Argument Regarding Admissibility of Plaintiff's Evidence.**

1.   **Evidence Sought to Be Admitted by Plaintiff Is Admissible Under General Principles Governing First Amendment and Title VII Cases Without Resort to Rule 404(b).**

The Court's November 14, 2000 Order assumes that the admissibility of evidence described in Section A above should be determined by the test developed through U.S. v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978) (*en banc*), and its progeny. Plaintiff

Case 1:99-cv-00197 Document 38 Filed in TXSD on 02/26/2001 Page 5 of 24

respectfully questions this assertion. <u>Beechum</u> was a criminal case. The test developed therein has been used primarily to determine the admissibility of evidence of a criminal defendant's other crimes of a similar nature. <u>Beechum</u> analysis has been used in civil cases as well. E.g., <u>Dial v. Travelers Indemnity Company</u>, 788 F.2d 520 (5th Cir. 1986); and <u>Carson v. Polley</u>, 689 F.2d 562 (5th Cir. 1982).

However, <u>Beechum</u> analysis has never been applied to the evidence of discriminatory animus in civil cases involving employee claims of retaliation or discrimination. Plaintiff's attorney did an exhaustive search of cases citing <u>Beechum</u> in preparing this memorandum, finding only one citation to <u>Beechum</u> in a discrimination case. Even in that case, the test developed by <u>Beechum</u> was not applied by the court. <u>Mooney v. Aramco Services Co.</u>, 54 F.3d 1207, 1220 (5th Cir. 1995).

On the other hand, the Fifth Circuit and other courts in discrimination and retaliation cases have warned repeatedly that a less stringent evidentiary standard should be applied to testimony from similarly situated employees about their own allegedly discriminatory treatment. E.g., <u>Kelly v. Boeing Petroleum Services, Inc.</u>, 61 F.3d 350, 358, 360 (5th Cir. 1995); <u>Riordan v. Kempiners</u>, 831 F.2d 690, 697-8 (7th Cir. 1987). Indeed, cases cited with approval by the Fifth Circuit in <u>Kelly</u> have found trial courts to have abused their discretion by excluding such evidence. <u>See Estes v. Dick Smith Ford, Inc.</u>, 856 F.2d 1097 (8th Cir. 1998); <u>Hawkins v. Hennepin Technical Center</u>, 900 F.2d 153 (8th Cir. 1990), <u>cert. denied</u> 111 S.Ct. 150 (1990); <u>Glass v. Philadelphia Electric Co.</u>, 34 F.3d 188 (3rd Cir. 1994).

For these reasons, Plaintiff contends that stringent application of <u>Beechum</u> is inappropriate in a civil retaliation lawsuit. Instead, Plaintiff respectfully urges the Court to apply the analysis traditionally used by federal courts in determining the admissibility of extraneous evidence of discriminatory or retaliatory intent. Under that standard, Plaintiff's proffered evidence clearly is admissible.

5

CMPDF - www.testw.com

a.    **Evidence regarding the discharges of Ferrell and Oakerson.**

The Fifth Circuit long ago decided that the testimony of similarly situated employees concerning the reasons for their discharge is relevant in proving discrimination both in pattern and practice discrimination cases, and in other disparate treatment cases.  See Harpring v. Continental Oil Company, 628 F.2d 406, 409 (5ᵗʰ Cir. 1980), cert. denied 102 S.Ct. 100 (1981) (pattern and practice case); Schulz v. Hickok Manufacturing Co., Inc., 358 F.Supp. 1208, 1212 (N.D. Ga. 1973) (non-pattern and practice case), citing Danner v. Phillips Petroleum Co., 447 F.2d 159 (5ᵗʰ Cir. 1971).[1]

Although the above are cases decided under Title VII and the ADEA, their holding is equally applicable to First Amendment cases.  See Coughlin v. Lee, 946 F.2d 1152, 1159 (5ᵗʰ Cir. 1991) (analogizing to Title VII litigation, holds in First Amendment case that evidence of disparate treatment of those engaging in protected conduct is relevant to the issue of pretext); Morris v. Washington Metropolitan Area Transit Authority, 702 F.2d 1037, 1045 (D.C. Cir. 1983) (in First Amendment case alleging retaliation for complaining about unlawful employment practices, evidence of retaliation against other employees who also complained relevant to issue of whether plaintiff's protected activity was a substantial or motivating factor in the decision to fire him).[2]

Thus, the analysis used in Title VII and ADEA cases to determine the admissibility of evidence of other acts to demonstrate motive or intent is equally applicable to First Amendment cases.  A review of discrimination and retaliation cases in which such analysis has been conducted demonstrates not only that evidence concerning similarly situated employees is admissible, but that its exclusion constitutes reversible error.  Kelly v. Boeing Petroleum Services, Inc., 61 F.3d 350 (5ᵗʰ Cir. 1995), the very case previously cited by Defendants in

---

[1] Shulz is cited with approval in Harpring.

[2] Morris has been cited with approval by at least one district court in the Fifth Circuit.  See Koppman v. South Central Bell Telephone Company, 1992 WL 280793 (E.D. La. 1992) at 7.

support of their assertion that evidence of subsequent acts and statements is not admissible, actually supports the exact opposite conclusion.

In Kelly, the court specifically stated:  "When a plaintiff must prove intentional discrimination, a district court can abuse its discretion by limiting a plaintiff's ability to show the atmosphere in which the plaintiff operated."  Kelly, supra at 358, quoting Ratliff v. Governor's Highway Safety Program, 791 F.2d 394, 402 (5th Cir. 1986).  Kelly was an ADA case in which the trial court precluded the testimony of other disabled employees concerning their own alleged discriminatory treatment by the employer.  The trial court held such exclusion was not reversible error where the trial court considered the proffered testimony in camera and concluded the proffered testimony was not as represented by plaintiff's attorney, and in fact was irrelevant. However, in so ruling, the appellate court stated: "We acknowledge that in discrimination cases circumstantial proof of discrimination typically includes unflattering testimony about the employer's history and work practices – evidence which in other kinds of cases may well unfairly prejudice the jury against the defendant.  In discrimination cases, however, such background evidence may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive."  Id. at 360; Accord Polanco v. City of Austin, Texas, 78 F.3d 968, 980 (5th Cir. 1996) (police department's discriminatory treatment of other Hispanic officers has significant bearing on issue of whether same discriminatory motive affected decisions concerning plaintiff).  The Fifth Circuit in Kelly also discussed with approval three cases, two from the Eighth Circuit and one from the Third Circuit, in which trial court rulings in favor of defendants were reversed based upon exclusion of testimony concerning other alleged discriminatory/retaliatory acts by the employer.  Id. at 357-9.  These cases are Estes v. Dick Smith Ford, Inc., 856 F.2d 1097 (8th Cir. 1988) (trial court abused its discretion by excluding evidence which included testimony that the employer fired two other employees because of their ages); Hawkins v. Hennepin Technical Center, 900 F.2d 153 (8th Cir. 1990), cert. denied 111 S.Ct. 150 (1990) (in retaliatory discharge case, trial court abused its discretion

7

Case 1:99-cv-00197  Document 38  Filed in TXSD on 02/26/2001  Page 8 of 24

in excluding evidence concerning alleged acts of sexual harassment of employer's former students); and Glass v. Philadelphia Electric Co., 34 F.3d 188 (3rd Cir. 1994) (trial court abused its discretion by barring plaintiff's evidence of other acts demonstrating a racially hostile work environment). See also Phillip v. Air Freight Systems, Inc., 945 F.2d 1054 (8th Cir. 1991), cert. denied 113 S.Ct. 81 (1992) (jury verdict for employer reversed and remanded where court excluded evidence of other discrimination lawsuits filed against employer); Heyne v. Caruso, 69 F.3d 1475 (9th Cir. 1995) (district court committed reversible error by excluding testimony concerning employer's alleged harassment of other female employees which was relevant to prove employer's discriminatory intent).

Case after case, both within the Fifth Circuit and without, demonstrates the relevance of the testimony of similarly situated employees concerning their own treatment by the employer. In Spulak v. K-Mart Corporation, 894 F.2d 1150 (10th Cir. 1990), an age discrimination case, the court ruled that the trial court properly allowed testimony of two older employees fired after the plaintiff was fired concerning the circumstances of their own terminations. The court stated: "As a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent." Id. at 1156 (citations omitted). In Stumph v. Thomas & Skinner, Inc., 770 F.2d 93, 97 (7th Cir. 1985), the court reversed summary judgment granted by the district court in an ADEA case, ruling that the court erred in failing to consider evidence of the treatment of two other older employees by the employer. In Koopman v. South Central Bell Telephone Company, 1992 WL 280793 (E.D. La. 1992), an ADEA case, the court ruled admissible the testimony of a second older employee concerning his own allegedly discriminatory treatment by the employer. The court stated: "Comparing the treatment of the plaintiffs to the treatment of others who were similarly situated is central to any employment discrimination claim. Consequently, testimony regarding discrimination against other [employees] is relevant, pursuant to Rule 404(b)." Id. at 7. See also Williams v. Chrysler Financial Corporation, 1999 WL 221119 (E.D. La. 1999) (evidence of other wrongs or acts may

8

CutePDF - www.fatiko.com

Case 1:99-cv-00197   Document 38   Filed in TXSD on 02/26/2001   Page 9 of 24

be admissible under Rule 404(b) to prove defendant's motive or intent in an employment discrimination case).

A synthesis of the above-referenced cases yields the following rule. Evidence of an employer's treatment of other employees is highly relevant with regards to the issue of the employer's intent in cases alleging retaliatory or discriminatory discharge. Such evidence normally must be admitted, and the trial court's exclusion of such evidence will constitute grounds for reversal. Only in cases where the trial court carefully has examined the evidence in question and determined it to be irrelevant will exclusion of evidence concerning similarly situated employees be justifiable.

The danger of excluding such evidence on a wholesale basis before trial, as opposed to deciding on admissibility as evidence is offered in the developing course of the trial, was explained in Riordan v. Kempiners, 831 F.2d 690 (7th Cir. 1987). In Riordan, the judge granted the employer's motion in limine excluding much evidence plaintiff sought to admit. The appeals court reversed an employer verdict and remanded for a new trial. The appeals court ruled that such wholesale exclusion of categories of evidence necessitates "careful appellate review", explaining as follows:

> Such review is particularly necessary in a case like this, where the substantive issue is whether there was intentional discrimination in employment. Proof of such discrimination is always difficult. Defendants of even minimal sophistication will neither admit discriminatory animus nor leave a paper trail demonstrating it; and because most employment decisions involve an element of discretion, alternative hypotheses (including that of simple mistake) will always be possible and often plausible. Only the very best workers are completely satisfactory, and they are not likely to be discriminated against – the cost of discrimination is too great. The law tries to protect average and even below-average workers against being treated more harshly than would be the case if they were of a different race, sex, religion, or national origin, but it has difficulty achieving this goal because it is so easy to concoct a plausible reason for not hiring, or firing, or failing to promote, or denying a pay raise to, a worker who is not superlative. A plaintiff's ability to prove discrimination indirectly, circumstantially, must not be crippled by evidentiary rulings that keep out probative evidence because of crabbed notions of relevance or excessive mistrust of juries.

9

Case 1:99-cv-00197   Document 38   Filed in TXSD on 02/26/2001   Page 10 of 24

Id. at 697-8 (citations omitted). Accord Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1103 (8th
Cir. 1988) ("The effects of blanket evidentiary exclusions can be especially damaging in
employment discrimination cases, in which plaintiffs must face the difficult task of persuading
the fact-finder to disbelieve an employer's account of its own motive.")

No justification for excluding evidence of Defendant Rodriguez's discriminatory
statements, and his firing of the other union organizer, exists in either the Ferrell or Oakerson
cases. Over the course of two years, both Plaintiff and Joel Ferrell stepped forward to
spearhead the BFFA's union organizing effort. Both were terminated by Defendant Rodriguez
within months. Both terminations occurred at a time when Defendant Rodriguez was
disparaging the Union to other BEMS employees and threatening against union involvement.
The evidence concerning Defendants' terminations of Justin Oakerson and Joel Ferrell clearly is
relevant and highly probative of Rodriguez's intent with regards to both Plaintiff and Mr. Ferrell.
Plaintiff respectfully contends that the trial court's failure to allow this evidence would constitute
reversible error.

        b.     **Evidence of Defendant Rodriguez's anti-union remarks and disparate treatment.**

The U.S. Supreme Court's decision this past Summer in Reeves
v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097 (2000) has resulted in
several recent Fifth Circuit decisions supporting a more lenient standard with regards to the
admissibility of discriminatory remarks made by involved officials. Reeves itself involved an age
discrimination claim in which the plaintiff cited age-related remarks made by the terminating
official's husband. He also cited as evidence testimony by a fellow employee that the decision-
maker's husband, who was a supervisor, treated him differently than younger employees. The
Supreme Court reversed the Fifth Circuit's decision holding that such evidence was not
sufficiently probative of age discrimination to support a jury's verdict in the plaintiff's
favor. Reeves, 120 S.Ct. at 2110-11. In so ruling, the Court found the discriminatory comments

CIMPDF - www.fasiw.com

made by the decision-maker's husband to be relevant even though not made in the direct context of the plaintiff's termination, and even though not made by the decision-maker herself. The Supreme Court found these statements, coupled with evidence of disparate treatment not only probative, but to be an adequate basis to support the jury's decision in the plaintiff's favor. Id. at 2111-12.

The Fifth Circuit has issued several decisions since Reeves indicating both the admissibility and probative nature of evidence concerning discriminatory remarks. For example, in Evans v. City of Bishop, __ F.3d __, 2000 WL 1946668, 84 FEP cases 1399 (5th Cir. 2000), the mayor selected another candidate for a position for which plaintiff applied, and later had the city council ratify the selection. Plaintiff supported his discrimination claim in part by pointing to racially derogatory comments directed against African Americans by one of the council members who ratified the mayor's decision. The district court granted summary judgment to the defendant, arguing that the comments were "outside the realm of the dispute at hand." In reversing, the Fifth Circuit held that evidence regarding the council member's remarks was probative in light of Reeves, and that "it would be proper for a jury to take this evidence into account." Evans, 2000 WL 1946668 at p. 4.

Russell v. McKinney Hospital Venture, 235 F.3d 219 (5th Cir. 2000), is an age discrimination case in which plaintiff sought to bolster her claim by pointing to age-related remarks made by the CEO's son who was at the same level as plaintiff and who appeared from the evidence to have influenced the termination decision. In overturning the district court's decision to disregard a jury's verdict, the Fifth Circuit held that the discriminatory remarks were probative and should be considered by the jury even though not made in the direct context of the firing decision, and even though made by one other than the formal decision-maker. Id. at 229.

Other recent decisions by the Fifth Circuit demonstrate the relaxed standard for viewing evidence urged by Plaintiff as probative of discriminatory or retaliatory intent. E.g., Blow v. City

11

Case 1:99-cv-00197  Document 38  Filed in TXSD on 02/26/2001  Page 12 of 24

of San Antonio, 236 F.3d 293 (5th Cir. 2001) (plaintiff's prima facie case of discrimination, coupled with evidence demonstrating falsity of defendant's alleged non-discriminatory reason, sufficient to go to jury on issue of discrimination in light of Reeves). As the Fifth Circuit stated in Evans v. City of Bishop, supra: "[A]ny evidence that could shed light on an employer's true motive must be considered." In similar manner, evidence of discriminatory remarks made by Defendant Rodriguez, the initial decision-maker, and evidence of disparate treatment of similarly situated employees who did not engage in union organizing is clearly relevant and probative of Defendants' retaliatory intent.

Finally, it is clear that evidence regarding disparate treatment of similarly situated employees who are not involved in union organizing is relevant and probative of the issue of Defendants' retaliatory intent in terminating Plaintiff's employment. Even if one assumes, and the evidence will be sharply disputed, that Plaintiff engaged in misconduct or performance warranting termination, a jury may nonetheless conclude that the terminations were retaliatory in nature if similarly situated employees were not likewise terminated. The Fifth Circuit has long held on this basis that evidence of disparate treatment of other employees, even where Plaintiff actually engaged in wrongdoing, is relevant, admissible, and may be relied upon by a jury to find discriminatory or retaliatory treatment. See Portis v. First National Bank of New Albany, 34 F.3d 325, 330 (5th Cir. 1994), and cases cited therein. This lends further support to Plaintiff's arguments that evidence of disparate treatment of similarly situated employees constitutes probative evidence regarding Defendants' retaliatory intent.

In sum, it is clear that all of the evidence proffered by Plaintiff in this case is relevant under traditional standards employed in Title VII and First Amendment litigation. This evidence should be admitted as going to the issue of Defendants' intent even without analysis under Rule 404(b). The Court is respectfully urged to so rule.

CVsPDF - www.fastio.com

2.  **Evidence Sought to Be Admitted by Plaintiff Admissible Under Rule 404(b) Using the *Beechum* Test.**

As covered in Section 1 above, Plaintiff contends that utilization of the Beechum test to analyze the admissibility of evidence proffered by the Plaintiff is inappropriate. However, even under the more stringent standard utilized in Beechum, it is clear that the above-referenced evidence is admissible under Rule 404(b) as going to the issue of Defendants' intent.   In this section, Plaintiff will focus primarily on the question of whether Ferrell's termination is admissible under Rule 404(b) in Plaintiff's lawsuit.

Under U.S. v. Beechum, supra, a two-part test is utilized to determine the admissibility of evidence of a Defendant's other crimes.  "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the Defendant's character.  Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [FRE] 403."  Id. at 911.  Each of the two prongs is analyzed separately below.

a.  **Evidence Concerning the Other Plaintiff's Discharge is Relevant.**

The first prong of the Beechum test asks whether evidence concerning the extrinsic offense is relevant to an issue other than the defendant's character. Here, Plaintiff contends that the evidence goes to the issue of Defendants' intent, a purpose clearly admissible under Rule 404(b).  Beechum teaches: "Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses.  The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense." Beechum, supra at 911 (footnote omitted).  The reasoning that deems an extrinsic offense relevant to the issue of intent "is valid only if an offense was in fact committed and the defendant in fact committed it.  Therefore, as a predicate to a determination that the extrinsic offense is

13

Case 1:99-cv-00197   Document 38   Filed in TXSD on 02/26/2001   Page 14 of 24

relevant, the Government must offer proof demonstrating that the defendant committed the offense. If the proof is insufficient, the judge must exclude the evidence because it is irrelevant." Id. at 912-913.  .

However, the Plaintiff's burden in demonstrating that an extrinsic offense, i.e., Joel Ferrell's termination, was in fact committed by the Defendants is not a heavy one. Where the proponent seeks to admit evidence of an extrinsic offense by Defendant, the preliminary question of whether an offense was committed, and was committed by Defendant, "can be decided by the judge against the proponent only where the jury could not reasonably find the preliminary fact to exist." Beechum, supra at 913 (citation omitted). Once the court determines that a jury could find the Defendant committed the extrinsic offense, the evidence satisfies the first step under FRE 404(b). Id.

Thus seen, Plaintiff easily meets the first prong of the Beechum test. The Court already has denied Defendant Rodriguez's motion for summary judgment as to Mr. Ferrell. Based upon the affidavit and deposition testimony presented, a jury easily could conclude that Defendant likewise terminated Oakerson for union organizing activity. Although Defendant promoted Mr. Oakerson shortly before he began his union organizing activity, Mr. Oakerson began to suffer adverse employment consequences soon after the organizing activity commenced. Defendant Rodriguez has admitted that he learned about Oakerson's union organizing activity before he terminated Oakerson's employment. Oakerson was terminated a short time after he began his union organizing efforts. Importantly, Plaintiff has provided direct evidence of Mr. Rodriguez's anti-union animus. Mr. Rodriguez made a point of threatening other employees against union involvement.

Moreover, even if one assumes that Mr. Oakerson's performance in his newly promoted position was deficient, Mr. Rodriguez's anti-union animus is demonstrated by his decision to fire Mr. Oakerson rather than demoting him back to the paramedic position which he admittedly performed in a satisfactory manner. Mr. Rodriguez terminated Mr. Oakerson even though he

14

Case 1:99-cv-00197  Document 38  Filed in TXSD on 02/26/2001  Page 15 of 24

needed paramedics at the time. Although Mr. Rodriguez claims the personnel policies gave him no option to retain Mr. Oakerson, his testimony is contradicted by his own actions with another employee and by the testimony of City Manager Carlos Rubinstein. Based upon the evidence presented, a jury easily could conclude that Mr. Rodriguez discharged Mr. Oakerson in retaliation for his union activity. Evidence concerning Ferrell's and Oakerson's terminations therefore is relevant in both cases, and Plaintiff has met the first prong of the Beechum standard for admissibility.

**b.   The Probative Value of Mr. Oakerson's Termination Is Not Outweighed by Its Prejudicial Impact.**

The second step of the Beechum analysis considers the probative value of the extrinsic evidence and weighs it against any undue prejudice attendant to its presentation. Beechum, supra at 913. In determining the probative value and unfair prejudice under Rule 403, the Court is required to make a commonsense assessment of all the circumstances surrounding the extrinsic offense. Id. at 914.

In measuring the probative value of the evidence, the Court should consider the overall similarity of the extrinsic and charged offenses. If the offenses are dissimilar except for the common element of intent, the extrinsic offense may often have little probative value to counterbalance its prejudicial impact. Id. at 915. However, equivalence of the elements of the charged and extrinsic offenses is not required. Id. In Beechum, for example, a postal employee was charged with stealing a silver dollar from the mail. The Government wished to introduce evidence that the defendant had possessed two credit cards that were not his for a ten month period. The court found sufficient likeness between the charged and extrinsic offenses even though the Government could not establish that the credit cards were actually stolen from the mail and the offenses were some ten months apart. Id. at 917.

Another important element in determining the probative value of extrinsic evidence is the posture of the case. Where intent is a critical element in the case and squarely placed in issue,

CltiPDF - www.finebo.com

"the policies of justice that require a defendant to explain evidence that impugns his exculpatory testimony [are] in full force." Beechum, supra at 916. "Where the intent issue is so clearly delineated, evidence relevant to that issue is not lightly excluded." Id. at 916 n. 21. And the probative value of such evidence of intent is at its strongest where the Government's other evidence of intent is not strong. Id. at 917.

Utilizing the above standard from Beechum, it is readily apparent that the probative value of Mr. Oakerson's termination as to Defendant's intent with regards to Mr. Ferrell's termination and vice versa is quite high. The two terminations were dramatically similar. Plaintiff and Mr. Ferrell were the only two BEMS employees who stepped forward to spearhead the union organizing effort. Both made highly visible efforts on the union's behalf. It was common knowledge that the two were leading the organizing efforts. Both were fired within months of beginning their organizing activity. Both were fired during a period when Mr. Rodriguez was making anti-union statements and threats to other employees. Although Defendants contend that Mr. Rodriguez did not fire Mr. Oakerson, but only failed him during his promotional probation period, this assertion is belied by the City Manager's testimony that Mr. Rodriguez could have simply returned Mr. Oakerson to his prior position. Certainly the dissimilarities between Mr. Ferrell's and Mr. Oakerson's case are less than the differences found insignificant by the Fifth Circuit in Beechum.

Defendants make much of the fact that the two terminations occurred over a year apart. Defendants ignore the fact that this gap occurred because no one was willing to step forward and lead the organizing effort for a year after Mr. Ferrell's termination. Mr. Rodriguez fired the very first employee to step forward and begin organizing for the union after Ferrell was fired. The two terminations were as proximate as was possible in the facts of this case. Mr. Rodriguez's stated anti-union animus in both cases was remarkably similar.

Finally, one must weigh the prejudicial impact of admission of such testimony. Where the probative value of evidence is great, the fact of prejudicial impact does not preclude its

16

admission.  Indeed, in <u>Beechum</u>, the credit card evidence was admitted based upon its probative value even though the court conceded that admission of the evidence may have been determinative of the outcome.  <u>Beechum, supra</u> at 917.

Defendants have contended that allowing evidence of Mr. Oakerson's termination in Ferrell's case, and vice versa, will result in the need to do much additional discovery and put on much additional evidence at trial.  Certainly there is no need for additional discovery.  All discovery is completed in both cases.  While additional evidence will be necessary, this is more than offset by the economies of time and resources achieved if the cases are consolidated for trial.

The question concerning the admissibility of Ferrell's and Oakerson's terminations in each other's cases is not a close one.  The Fifth Circuit long ago decided that the testimony of similarly situated employees concerning the reasons for their discharge is relevant in proving discrimination.  <u>Harpring v. Continental Oil Company</u>, 628 F.2d 406, 409 (5th Cir. 1980), <i>cert. denied</i> 102 S.Ct. 100 (1981); <u>Schulz v. Hickok Manufacturing Co., Inc.</u>, 358 F.Supp. 1208, 1212 (N.D. Ga. 1973).  The Fifth Circuit and its sister circuits repeatedly have warned that a district court can abuse its discretion by limiting the admission of such evidence to prove intent.  The rationale of these cases is based upon the realization that proof of intent in discrimination cases is so difficult as to outweigh the fear of undue prejudice inherent in the admission of such evidence.  "We acknowledge that in discrimination cases circumstantial proof of discrimination typically includes unflattering testimony about the employer's history and work practices – evidence which in other kinds of cases may well unfairly prejudice the jury against the defendant.  In discrimination cases, however, such background evidence may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive."  <u>Kelly v. Boeing Petroleum Services, Inc.</u>, 61 F.3d 350, 360 (5th Cir. 1995).  <u>Accord Riordan v. Kempiners</u>, 831 F.2d at 698 ("A plaintiff's ability to prove discrimination indirectly, circumstantially, must not be crippled by evidentiary rulings that keep out probative

P.59

evidence because of crabbed notions of relevance or excessive mistrust of juries."); <u>Estes v.</u>
<u>Dick Smith Ford, Inc.</u>, 856 F.2d 1097, 1103 (8th Cir. 1988) ("The effects of blanket evidentiary
exclusions can be especially damaging in employment discrimination cases, in which plaintiffs
must face the difficult task of persuading the fact-finder to disbelieve an employer's account of
its own motive.")  Plaintiff easily meets the second element of the <u>Beechum</u> test for admissibility.

III.    **Evidence Sought to Be Admitted by Defendants.**

A.    **The Evidence Described.**

The evidence which Defendants seek to admit and Plaintiff desires to exclude is
essentially of three types.  The three types of evidence may be described as follows.

1.    **Evidence of Prior Misconduct by Ferrell.**

Defendants seek to admit documents and testimony regarding prior
instances in which Ferrell is alleged to have engaged in violations of standard operating
procedures and medical protocols.  The great majority of the documentary evidence was
excluded by the Court in its Order signed November 20, 2000.  In that Order, the Court denied
Defendants' Motion for Leave to Disclose Privileged Information [Dkt. Nos. 49 and 53].  The
evidence encompassed by the Court's ruling is the documentary evidence, some produced and
some not produced in discovery, which Defendants offer in support of their claim that Mr. Ferrell
engaged in prior violations of medical protocols.   Mr. Rodriguez has admitted he did not
consider this evidence in terminating Mr. Ferrell.

2.    **Evidence Concerning a Prior Grievance Filed Against Defendant**
      **Rodriguez by Plaintiff Ferrell.**

Defendants apparently wish to elicit testimony and documentary evidence
regarding a grievance filed under the city grievance procedure by Ferrell complaining of certain
actions by Defendant Rodriguez which was filed approximately a year prior to Mr. Ferrell's
termination.

18

3.    **Evidence Regarding Ferrell's Failure to Be Hired as Training Officer.**

Defendants apparently wish to put into evidence testimony and documents concerning a situation which occurred approximately a year before Mr. Ferrell was terminated. In this instance, Defendant Rodriguez offered Mr. Ferrell promotion to the Training Officer position ultimately accepted by Brenda Leinweber. Mr. Ferrell ultimately turned down the position because taking it would require a schedule change that would conflict with other employment.

B.    **Argument Regarding Admissibility of Defendants' Evidence.**

1.    **Evidence Regarding Prior Alleged Misconduct by Mr. Ferrell.**

Plaintiff alleges in this case that the Defendants terminated Ferrell's employment with the BEMS because of his association with and advocacy on behalf of the BFFA, a labor union. Defendants counter that Ferrell's attempts to organize a union in the BEMS played no role in their decision, and that they discharged him based upon his violation of standard operating procedures in an emergency medical run which occurred on September 20, 1997.

Defendants now claim that in deciding to discharge Ferrell, they considered a memorandum prepared by Training Officer Brenda Leinweber concerning alleged prior infractions of medical protocols by Ferrell. This memorandum was introduced as Exhibit 2 in Defendant Rodriguez's deposition.[3] Defendant Rodriguez testified in his November 29, 1999 deposition that he did not know whether Ms. Leinweber had ever even discussed the incidents related in the memorandum with Mr. Ferrell. Rodriguez Dep. 92-3.[4]

---

[3] Ms. Leinweber died prior to the date suit was filed in this case. The memorandum purportedly written by her is neither signed by her nor dated.

[4] Deposition excerpts from Defendant Rodriguez's deposition are attached as Exhibit 1 to Plaintiff's Memorandum in Opposition to Defendants' Admission into Evidence filed in Ferrell on September 20, 2000. He discussed the Leinweber memorandum at pp. 85-93.

19

Defendants now seek to introduce medical records pertaining to these alleged infractions described in the Leinweber memorandum. Mr. Rodriguez testified that he was unable at the time of his deposition in November 1999 to locate any medical documents or other documentation in Ms. Leinweber's files concerning these alleged infractions. Id. at 93. The alleged infractions of unrelated medical protocols were never discussed with Plaintiff during pre-termination proceedings. Ferrell Aff., ¶2.[5] Mr. Ferrell was unaware of the existence of the Leinweber memorandum until he obtained it in discovery of this case. Id. at ¶3.

Most importantly, Defendant Rodriguez was asked during his deposition what role if any Ms. Leinweber's report played in his decision to terminate Ferrell.

> Q.   What role did Ms. Leinweber's report play in your decision to terminate Mr. Ferrell?
>
> A.   It didn't play a role, sir.

Rodriguez Dep. 93. Defendants do not claim Mr. Rodriguez reviewed the medical documents he now seeks to introduce prior to terminating Ferrell. Nonetheless, Defendants now seek admission of both the Leinweber report and the underlying medical documentation, claiming they somehow were involved in Defendants' decision to terminate Ferrell's employment.

As now framed by Defendants, admission of the medical documents presents a FRE Rule 404(b) issue. Defendants seek to admit evidence of alleged "other wrongs" by Ferrell. Of course, under Rule 404(b), evidence of other alleged wrongs would not be admissible to demonstrate any alleged propensity of Ferrell to have violated medical protocols on the September 20, 1997 emergency medical run. Rule 404(b) specifically precludes introduction of evidence of other wrongs to prove a propensity to commit the charged offense. However, the rule permits the use of such evidence for other relevant purposes, such as to show motive,

---

[5] Mr. Ferrell's affidavit is attached as Exhibit 2 to Plaintiff's Memorandum in Opposition to Defendants' Admission into Evidence filed in Ferrell on September 20, 2000.

20

CVitPDF - www.lexisx.com

opportunity, intent, plan or knowledge. Defendants seek to admit this evidence under the exception, claiming it goes towards the issue of Defendants' intent in firing Ferrell.

The proponent of evidence sought to be admitted under Rule 404(b) must satisfy a two step analysis set forth in <u>United States v. Beechum</u>, 582 F.2d 898, 911-13 (5th Cir. 1978) (*en banc*), <u>cert. denied</u> 440 U.S. 920, 99 S.Ct. 1244 (1979). The evidence of a prior wrong may be introduced if it is relevant to an issue other than the plaintiff's character, and if its probative value is not substantially outweighed by its undue prejudice. <u>Id.</u>; <u>See also United States v. Walker</u>, 710 F.2d 1062, 1066 (5th Cir. 1983) <u>cert. denied</u> 465 U.S. 1005, 104 S.Ct. 995 (1984).

It is not at all clear that the evidence is in fact admissible under Rule 404(b). Defendants seek to introduce the evidence not to show Ferrell's intent with regards to the September 20, 1997 run, but rather to show Defendant Rodriguez's intent with regards to firing Ferrell. In other words, Defendants seek to use evidence of Ferrell's alleged prior misconduct not to show Ferrell's intent, the use contemplated by Rule 404(b), but to show the intent of a third party, Defendant Rodriguez. Thus, the evidence does not meet the test for admissibility under Rule 404(b).

The evidence is inadmissible under Rule 404(b) for another reason. Defendants' claim that Ferrell violated medical protocols on the September 20, 1997 run is weak. Ferrell and another BEMS employee, both paramedic training instructors, have testified that Ferrell's conduct on the run was strictly according to protocols. Defendants obviously now seek to bolster their weak claim with evidence of other alleged violations of unrelated protocols by Ferrell. Seen in this light, Defendants' attempted use of the prior medical records is precisely that forbidden by Rule 404(b) – i.e., evidence of other wrongs to show Ferrell's propensity to have engaged in misconduct on the September 20, 1997 run.

Even if the evidence met the test for admissibility under Rule 404(b), Defendants must show that the evidence is relevant and that its relevance is not outweighed by its prejudicial impact. Defendants meet neither of these tests. Defendant Rodriguez has given sworn

21

testimony that the memorandum purporting to catalogue alleged prior infractions played no part in his decision to discharge Ferrell.  Rodriguez Dep. 93.  He does not even claim to have reviewed the underlying medical documentation.  As such, the evidence clearly is not relevant to the issues before the Court.

And the prejudicial impact of admitting this evidence clearly outweighs its probative value.  Defendant Rodriguez has testified he didn't rely on the information in making his decision to discharge Ferrell.  The information seeks to prove nothing more than that Ferrell is a "bad employee."  Plaintiff in turn will be required to address each of these unrelated incidents, none of which forms the basis for Defendant Rodriguez's actions, resulting in mini-trials of irrelevant issues.  Any relevance of this evidence clearly is outweighed by its prejudicial value. This Court is respectfully requested to affirm its November 20, 2000 Order excluding this evidence from admission at trial.

### 2.   Evidence Regarding Ferrell's Prior Grievance and His Rejection of the Training Officer Position.

For much the same reasons, evidence regarding Mr. Ferrell's earlier grievance, and Rubinstein's prior offer of the Training Officer position to him, do not seem to go to any issue other than that of character.  Ostensibly, Ferrell's prior grievance is being offered to show that he disliked Mr. Rodriguez, while Mr. Rodriguez's earlier offer of the Training Officer position to Mr. Ferrell is used to show his lack of animus.

However, Mr. Rodriguez offered the Training Officer position to Mr. Ferrell well before any union organizing effort began.  As such, the prior promotion offer is simply not probative of Defendant Rodriguez's attitude after Ferrell began the union organization drive.  Likewise, Mr. Ferrell's prior filing of a grievance says nothing about Defendant Rodriguez's intent in terminating Ferrell's employment.  The two categories of evidence simply are not probative on any issue other than the parties' characters, and thus are inadmissible under Rule 404(b). Plaintiff respectfully requests that this evidence be excluded by the Court.

22

## IV.    Conclusion.

For the foregoing reasons, Plaintiff respectfully requests that the Court rule admissible his evidence regarding the termination of Joel Ferrell, disparate treatment of similarly situated employees, and anti-union comments made by Defendant Rodriguez.    Plaintiff respectfully requests that the Court exclude evidence offered by Defendants concerning prior alleged medical infractions by Ferrell, his prior grievance, and the prior offer to him of the Training Officer position.

Respectfully submitted,

DEATS & LEVY, P.C.

B. Craig Deats
Fed. Adm. No. 6369
TBN: 05703700
327 Congress Avenue, Suite 300
Austin, Texas 78701
(512) 474-6200
FAX (512) 474-7896

LAW OFFICE OF MIGUEL A. SALDAÑA

Miguel A. Saldaña
Fed. Adm. No. 10954
TBN: 17529450
Corporate Plaza, Suite 109
302 Kings Highway
Brownsville, Texas 78521
(956) 542-9161
FAX (956) 542-3651

Attorneys for Plaintiff

23

Case 1:99-cv-00197   Document 38   Filed in TXSD on 02/26/2001   Page 24 of 24

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing pleading was sent to the attorney of record for Defendants, J. Arnold Aguilar, Law Office of J. Arnold Aguilar, Artemis Square, Suite H-2, 1200 Central Blvd., Brownsville Texas 78520, FAX (956) 504-1408, by hand delivery on this 26th day of February 2001.

Miguel A. Saldaña