45

United States District Court
Southern District of Texas
ENTERED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

SEP 2 4 2001

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| Justin Oakerson, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-99-197 |
| | § | |
| City of Brownsville, Texas, et al, | § | |
| | § | |
| Defendants. | § | |

## ORDER

BE IT REMEMBERED, that on September 21, 2001, after hearing oral argument on several occasions and reviewing the motions, responses, replies and briefs on evidentiary issues and the pending summary judgment motion, the Court **DENIED** Defendants Arturo Rodriguez, Carlos Rubinstein, and the City of Brownsville's Motion for Summary Judgment [Dkt. No. 23].

## I.    **Introduction and procedural history**

The Plaintiff, Justin Oakerson, alleges that the City of Brownsville, City Manager Carlos Rubinstein, and Director of Emergency Medical Services Arturo Rodriguez, discharged him on June 22, 1999 in retaliation for the exercise of his First Amendment right to freedom of association with a labor organization, the Brownsville Professional Fire Fighters Association, in violation of 42 U.S.C. § 1983.  In response, the Defendants allege that the Plaintiff was terminated because he was promoted to a supervisory position and then failed his promotional orientation period, and not because of constitutionally protected conduct or speech.  The Court finds that the Plaintiff has created material issues of fact on causation, and therefore denies the Defendants' summary judgment motion.

1

Another lawsuit currently pending before the Court, <u>Joel Ferrell v. City of Brownsville, et al.</u> [B-99-62], involves the same Defendants and similar allegations as this lawsuit.[1]   In <u>Ferrell</u>, the Plaintiff Joel Ferrell alleges that he was discharged in December 1997 in retaliation for his efforts to organize Brownsville Emergency Medical Services employees to become members of the Brownsville Professional Fire Fighters Association.  The Defendants in the <u>Ferrell</u> lawsuit allege that Joel Ferrell was terminated because he failed to follow departmental protocol on an ambulance run on September 20, 1997, and not because of First Amendment retaliation.  This Court has denied the <u>Ferrell</u> Defendants' summary judgment motions [Dkt. Nos. 43 and 86].

The Plaintiffs in both this lawsuit and the <u>Ferrell</u> lawsuit filed motions to consolidate [Dkt. No. 8] [B-99-62, Dkt. No. 30] the two cases in March 2000.  The Court denied those motions on March 23, 2000 [Dkt. No. 14] [B-99-62, Dkt. Nos. 36 and 37] because at that time it was impossible to determine whether consolidation would be practicable.  However, after reviewing the summary judgment evidence submitted in this case, the Court concluded that consolidation under Federal Rule of Civil Procedure 42(a) may be possible and prudent.  The Court therefore vacated its earlier ruling denying the motions to consolidate [Dkt. No. 19] [B-99-62, Dkt. No. 66] and ordered extensive briefing on the admissibility of evidence surrounding one Plaintiff's discharge in the other Plaintiff's lawsuit, and vice versa [Dkt. Nos. 27, 31, 32, 33, 35, 38, and 39] [B-99-62, Dkt. Nos. 67, 73, 75, 77, 78, 79, 80, 82, and 85].   The Court informed counsel that it would rule on consolidation after ruling on the summary judgment motions currently pending in the two cases [Dkt. No. 43] [B-99-62, Dkt. No. 85].

In their pending summary judgment motion, Arturo Rodriguez and Carlos Rubinstein argue that they are entitled to qualified immunity because the Plaintiff has not created a material issue of fact on causation [Dkt. No. 23].  Arturo Rodriguez argues that he was not motivated by anti-union animus when he terminated Justin Oakerson

---

[1]    The Court takes judicial notice of the record in <u>Joel Ferrell v. City of Brownsville, et al.</u> [B-99-62], for the limited information included in this section of the order.  The Court will not rely on summary judgment evidence submitted in connection with the <u>Ferrell</u> case in ruling on the summary judgment motion in this case.

and Carlos Rubinstein argues that he was not empowered to hear an appeal from the termination under the City of Brownsville's personnel policies [Dkt. No. 23].  The Plaintiff, on the other hand, argues that there is sufficient circumstantial evidence to create a material issue of fact on causation, and, therefore, Arturo Rodriguez and Carlos Rubinstein are not entitled to summary judgment on the issue of qualified immunity [Dkt. No. 25].  The Court finds that the Plaintiff's argument has merit and that the summary judgment record does create a material issue of fact on whether Arturo Rodriguez' and Carlos Rubinstein's conduct was objectively reasonable.

The City of Brownsville has also moved for summary judgment on the basis that it has no custom, policy, or procedure that caused a violation of the Plaintiff's constitutional rights [Dkt. No. 23].  The Plaintiff has responded that the City of Brownsville is not entitled to summary judgment because there is a material issue of fact as to whether a City of Brownsville final policymaker caused his termination in violation of his constitutional rights [Dkt. No. 25].  The Court rules that the City of Brownsville is not entitled to summary judgment because there are material issues of fact as to whether a final policymaker of the City of Brownsville knew of the Plaintiff's constitutionally protected conduct and speech and whether that conduct and speech was a substantial or motivating factor in the Plaintiff's termination.

## II.  __Standard for ruling on a summary judgment motion__

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  See Hunt v. Cromartie, 526 U.S. 541, 552 (1999).  The party making a summary judgment motion has the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings and discovery documents which demonstrate the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Colson v. Grohman, 174 F.3d 498, 506 (5th Cir.1999).  If the moving

party meets this burden, the non-movant then must designate specific facts showing there is a genuine issue for trial to survive summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994).  "In reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."  Perenco Nigeria Ltd. v. Ashland Inc., 242 F.3d 299, 304-05 (5th Cir. 2001).  The Fifth Circuit has indicated that summary judgment should be used sparingly in First Amendment retaliation cases that involve complex fact situations and issues of motive and intent.  See Benningfield v. City of Houston, 157 F.3d 369, 377 (5th Cir. 1998); Bodenheimer v. PPG Industries, Inc., 5 F.3d 955, 956 n.3 (5th Cir. 1993); Internat'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1265 (5th Cir. 1991); Hayden v. First Nat'l Bank of Mount Pleasant, 595 F.2d 994, 997 (5th Cir.1979).

III.  **Facts in the summary judgment record**

A.  Summary

The Plaintiff, Justin Oakerson, was employed by the City of Brownsville ("the City") Emergency Medical Services Department ("BEMS") as a paramedic and later a training officer from 1995 until his termination in 1999.  Oakerson alleges that he was terminated due to his open support and active recruitment of BEMS employees for the Brownsville Professional Fire Fighters Association ("BFFA"), a labor organization.  A similar effort in 1997, which was spearheaded by another former employee, Joel Ferrell, did not result in the city's recognition of the BFFA.

B.  Efforts to organize Brownsville Emergency Medical Services Department employees to join a union during 1997

Joel Ferrell, also a former employee of BEMS and the Plaintiff in a related case (see fn. 1 supra), became involved in union activities in 1997.  According to his affidavit,

4

after the BFFA membership voted to organize BEMS employees, Ferrell organized a small group of employees and began actively and openly recruiting BEMS employees to join the BFFA. [See Dkt. No. 25 Attachment 3 ¶3-5] ("Ferrell Affidavit").  Ferrell alleges that BFFA President Alfredo Christman approached Rubenstein and requested payroll deductions for BEMS members of the BFFA.  According to Ferrell, Rubenstein declined this request. [Ferrell Affidavit ¶ 6.]  Ferrell published the first and only edition of a union newsletter entitled the "EMS Dispatch" in which he listed his name and contact information so that he could receive "all comments." [See Dkt. No. 25 Attachment 7 Exh. 5] ("Dispatch"). The newsletter identified him as the person to whom dues could be paid.  [Id.]  The Dispatch informed employees that BEMS's BFFA members wanted to set up a "first aid" station at an upcoming BFFA picnic. [Ferrell Affidavit ¶8.]  On June 18, 1997, Arturo Rodriguez wrote a memorandum to all BEMS employees.   The memorandum stated: "[I]t has come to my attention that several members under the mistaken perception they belong to a union, have volunteered to provide medical services on June 29, 1997 [at the BFFA picnic]."   The memorandum further declared that BEMS employees were not to provide medical services at the picnic, that doing so may result in disciplinary action, and that the City of Brownsville recognizes only the Police and Fire Union Associations.  Although Ferrell asserts that the union drive was less successful and employees relayed their fear to him after the memorandum, Ferrell continued his organizing efforts until the early fall of 1997. [See Ferrell Affidavit at ¶ 10.]

On November 21, 1997, Ferrell's employment was terminated after an investigation.  The reason given was that, when dispatched to a medical emergency in the Brownsville area, he failed to follow protocol and standard operating procedures. No action was taken against Ferrell's partner, Rosales, or against the dispatcher who handled the call.  Ferrell appealed the termination decision to Rubenstein, who upheld the decision on December 11, 1997.

Defendants concede that other EMS employees have committed misconduct and have not been discharged by Defendants, including an employee who allegedly fell asleep in the back of an ambulance and was placed on probation. [See Answer at ¶ 11].

5

C.   The Plaintiff's drive to organize Brownsville Emergency Medical Services
     Department employees to join a union

Justin Oakerson was one of the employees recruited by Joel Ferrell in the spring
of 1997.   [See Dkt. No. 25 Attachment 4 ¶ 3] ("Oakerson Affidavit").   According to one
employee, during that time, Oakerson wrote the word "UNION" on a chalk bulletin board
in large block letters and left the room. [See Dkt. No 25 Attachment 6 ¶ 4] ("Cazares
Affidavit").   Arturo Rodriguez then entered the room and upon seeing the word
"UNION", twice stated to the employee in the room, Fermin Cazares, "there will never
be a union in Brownsville EMS," whereupon he erased the word from the chalkboard.
[Id. at ¶ 5.]   After Ferrell's termination later that year, the union effort stalled for about a
year, and Oakerson ceased his own union activities during that time. [Oakerson
Affidavit ¶ 4.]

In 1998, a BEMS training officer was killed in an accident and Rodriguez began
taking applications for the job.   Oakerson was hired for the job in January 1999.   Soon
after, he decided to see if he could "get the union organizing drive restarted," and by
February 1999 had convinced more than half of BEMS employees to join the union.
[Oakerson Affidavit ¶ 6.]   Oakerson organized a meeting (which he was himself unable
to attend) between BEMS employees, Brownsville Mayor Henry Gonzales, and
Brownsville City Commissioner John Wood. [Id. at ¶ 6.

On March 23, 1999, "about a week after the meeting," Oakerson received a
negative evaluation from his immediate supervisor, Assistant BEMS Director Jeff
Johnston. [Oakerson Affidavit]; [Dkt No. 22, Exh. 1-D ("March Review")].   The March
Review gave Oakerson an overall grade of seven out of a possible twenty-one points.
[Id.] The March Review stated that Oakerson performed "unsatisfactorily" or that he
"need[ed] improvement" in five of seven performance categories.   [Id.]   The categories
were: attendance, punctuality, quality of work, job knowledge, quantity of work,
cooperation, and customer service. [Id.]   Overall, the March Review stated that
Oakerson "Needs Improvement". [Id.]   The score, according to a subsequent report on
June 18, 1999, "require[d] a follow-up review within 90 days." [Dkt No. 22, Exh. 1-E]
("June Review").

6

A new fire station was opened in April or May 1999. Oakerson attended as a BFFA representative, and posed for a photo with the Mayor and the BFFA President and Vice President, which was published in a campaign ad in the Brownsville newspaper in late April. [See Oakerson Affidavit at ¶ 8.] The photo identified Oakerson's position with BEMS, as well as identifying the BFFA President and Vice President as such. [Id.]

Employee Bryan Chandler reports that in May of 1999, while he was still on probationary status, he was assigned to work a shift with Rodriguez. [Dkt. No. 23 Attachment 11] ("Chandler Deposition"). Rodriguez reportedly brought up the topic of the union, and asked Chandler if he knew of a union or had been asked to join, and whether he knew who was in the union. [Id.] Chandler "played dumb," replying in the negative to all questions, although he did know. [Id.] Rodriguez allegedly informed Chandler that "it would be a bad career move for you to join the union." [Id.] Chandler took this as a threat, stating that he "was afraid I would be terminated for showing any involvement with the union . . . and I was afraid that if I had joined the union, I would be fired for it." [Id.]

Shortly after publication of the photo of Oakerson with the union officials, Oakerson went on vacation for two weeks. [Oakerson Affidavit at ¶ 9.] Upon his return he resumed his normal duties. [Id.] On Friday, June 18, 1999, Oakerson received a second negative performance review. [See June Review.] The review gave Oakerson the equivalent of six out of a possible twenty-one points. [Id.] The performance categories were the same as the March Review and gave detailed explanations for each grade in each category. Johnston offered his opinion that Oakerson "has not demonstrated the ability to perform adequately in the position of Brownsville EMS Training Officer" and recommended that Oakerson not pass his probationary period. [Id.]

## D.    The Plaintiff's termination

On June 22, 1999, Rodriguez met with Oakerson in Rodriguez' office, at which time Oakerson was terminated from his employment with the City of Brownsville.

7

Oakerson was also sent a letter, dated Monday, June 21, 1999, to this effect. [See Dkt. No. 22 Exh. 1-F.]  The reason given for the termination was that Oakerson failed to successfully complete his probation as a training officer. [Id.][2]  Defendants dispute that Rodriguez knew of Oakerson's leadership position with BFFA.  Answer at ¶ 17.

Oakerson alleges that he attempted to appeal his termination to Rubenstein, but Rubenstein did not provide a hearing, noting the probationary nature of the training officer position. [Complaint at ¶ 21.]  Defendants maintain that they would have terminated Oakerson's employment even in the absence of his allegedly protected conduct. [Answer at ¶ 33.]

Oakerson asserts that after this lawsuit was filed, Defendants offered and he initially accepted re-employment as a paramedic. [Dkt. No. 23 Attachment 12 ¶ 11] ("Oakerson Supplemental Affidavit").  Ultimately, however, he turned the offer down when he was offered a better-paid position with the Brownsville Fire Department, where he completed training and is currently employed as a firefighter [Id.]

IV.   **Summary of the law on First Amendment freedom of association 42 U.S.C. § 1983 retaliation claims**

A government employee must demonstrate several elements to establish a *prima facie* First Amendment freedom of association employment retaliation claim pursuant to 42 U.S.C. § 1983.  A *prima facie* case consists of proof that: (1) the First Amendment values implicated in the plaintiff's speech outweigh the government employer's interest in promoting efficiency; (2) the plaintiff suffered an adverse employment decision; and, (3) the employee's protected speech was a substantial or motivating factor for the adverse employment decision.  See Brd. of Comm'rs v.

---

[2]   Defendants admit that "another employee serving a probationary period was allowed to resume his former position as an EMT when he failed to successfully complete his probationary period." [Answer at ¶ 17.]  Oakerson maintains that he was unaware when he accepted the Training Officer position that he would be terminated rather than demoted back to his original position if he did not complete the probationary period. [Oakerson Affidavit at ¶ 9]

Umbehr, 518 U.S. 668, 675-76 (1996); Breaux v. City of Garland, 205 F.3d 150, 157
(5th Cir. 2000); Brady v. Houston Indep. Sch. Dist, 113 F.3d 1419, 1423 (5th Cir. 1997);
Boddie v.City of Columbus, Miss., 989 F.2d 745, 748, 750 (5th Cir. 1993).  If the plaintiff
demonstrates that there are material issues of fact as to each element of his or her
*prima facie* case on summary judgment, the burden then shifts to the defendant to
demonstrate that he or she would have taken the same adverse employment action
regardless of the plaintiff's protected speech.  See McConnell v. Thompson
Newspapers, Inc., 802 F.Supp. 1484, 1502-03 (E.D. Tex. 1992). If the defendant
succeeds in providing a non-retaliatory justification for his or her actions, the burden
shifts back to the plaintiff.  See Mt. Healthy City School Dist. Brd. of Education v. Doyle,
429 U.S. 274, 285-86 (1977); Brady v. Fort Bend County, 145 F.3d 691, 710-11 (5th
Cir. 1998); Click v. Copeland, 970 F.2d 106, 113 (5th Cir. 1992); Coughlin v. Lee, 946
F.2d 1152, 1157 (5th Cir. 1991). The plaintiff must then create a material issue of fact
as to whether the non-retaliatory reason provided by the defendant is a pretext.  See
Click, 970 F.2d at 113; Coughlin, 946 F.2d at 1157.

        The only element of the Plaintiff's *prima facie* case at issue on summary
judgment is whether the Plaintiff's protected speech or conduct was a substantial or
motivating factor for his termination.  The first element of the Plaintiff's *prima facie* case,
whether the First Amendment values implicated in the Plaintiff's speech and conduct
outweigh the government employer's interest in promoting efficiency, is met because
the Defendants claim that they were not motivated by the Plaintiff's efforts to organize a
union.  See Boddie, 989 F.2d at 750.[3]  Additionally, the Defendants do not dispute that
the Plaintiff was terminated [Dkt. No. 23]. "Adverse employment actions are
discharges, demotions, refusals to hire, refusals to promote, and reprimands."
Harrington v. Harris, 118 F.3d 359, 365 (5th Cir. 1997) (citing Pierce v. Tex. Dept. of
Criminal Justice, Institut'l Div., 37 F.3d 1146, 1148 (5th Cir. 1994)).

---

        [3]        "Here, however, Gale sought to justify Boddie's firing on the basis of poor
attitude not disruption of the fire department. There was no interest to balance when this reason
was rejected factually. 'This assertion, while important for the question of causation, is fatal to
his claim of qualified immunity.'" Id. (citing Click, 970 F.2d at 112).

V.     **Evidence of other acts and statements to prove motive and intent pursuant to Federal Rule of Evidence 404(b)**

The Parties in this case disagree on the evidence that can properly be considered by the Court in ruling on the pending motions for summary judgment. The Defendants argue that evidence of events, actions, or statements made before the Plaintiff was promoted in 1999 are not admissible under Federal Rule of Evidence 404(b) [Dkt. Nos. 27 and 35]. Specifically, the Defendants argue that the events and statements surrounding Joel Ferrell's discharge in 1997 and anti-union comments allegedly made before the Plaintiff was promoted are inadmissible. The Plaintiff contends, in response, that the evidence is admissible to prove motive and/or intent pursuant to Federal Rule of Evidence 404(b) [Dkt. Nos. 31, 32, and 38]. The Court ruled from the bench on April 10, 2001, that under the particular facts of this case, the evidence of Joel Ferrell's discharge and anti-union statements made before the Plaintiff's promotion and termination are admissible to prove motive and intent [Dkt. No. 43]. The Court made that ruling after reviewing the Parties' extensive briefs on the issue and hearing oral arguments on more than one occasion.

VI.     **Defendant Arturo Rodriguez' and Carlos Rubinstein's motion for summary judgment**

Rodriguez and Rubinstein argue in their motion for summary judgment that they are entitled to qualified immunity from Oakerson's First Amendment freedom of association employment retaliation claim because Oakerson has provided no evidence on causation, and, therefore, their conduct was objectively reasonable [Dkt. No. 23]. In response, Oakerson argues that there is sufficient circumstantial evidence to create a material issue of fact as to whether his union activities were a substantial or motivating factor in Rodriguez' decision to terminate him and Rubinstein's decision to ratify Rodriguez' termination by refusing to entertain an appeal [Dkt. No. 25]. The Court finds that the summary judgment record creates material issues of fact as to whether Rodriguez and Rubinstein engaged in unconstitutional First Amendment retaliation.

10

The Court therefore denies Rodriguez and Rubinstein's summary judgment motion because there are material issues of fact as to whether their conduct was objectively reasonable.

A.    Law on qualified immunity

The Court must decide two questions to rule on whether a particular defendant is entitled to qualified immunity in his or her individual capacity: (1) Has the plaintiff alleged the deprivation of a clearly established constitutional right?; and, (2) Were the defendant's actions objectively unreasonable?  See Kipps v. Caillier, 197 F.3d 765, 768 (5th Cir. 1999); Harris v. Victoria Indep. Sch. Dist., 168 F.3d 216, 223 (5th Cir. 1999).  If the answer to either of these questions is "No," the defendant is immune.

B.    The Plaintiff has alleged the violation of a clearly established constitutional right

Rodriguez and Rubinstein are immune from suit unless their alleged conduct violated a clearly established constitutional right.  The requirement of "clearly established law" ensures that government officials will not be unduly inhibited in the discharge of their duties because of uncertainty regarding liability.  See Anderson v. Creighton, 483 U.S. 635, 639-40 (1987); Sanchez v. Swyden, 139 F.3d 464, 466 (5th Cir. 1998).  Oakerson has met his burden because it was clearly established in 1999 that a government employee had a right under the First Amendment to the United States Constitution to organize a union.  See Boddie, 989 F.2d at 748.  Moreover, the Court need not address whether the First Amendment values implicated in Oakerson's speech and conduct outweigh BEMS' and the City's interest in promoting efficiency because both Rodriguez and Rubinstein claim that they were not motivated by Oakerson's efforts to organize a union.  See id. at 750.

C.    The Plaintiff has created a material issue of fact as to whether Rodriguez' and Rubinstein's actions were objectively reasonable, and they are therefore not entitled to qualified immunity

Government officials are protected by qualified immunity if their actions are objectively reasonable.  See Sanchez, 139 F.3d at 467.   Conduct is objectively

11

reasonable, even if it did violate the plaintiff's constitutional rights, "if reasonable public officials could differ on lawfulness of the defendant's actions." Cantu v. Rocha, 77 F.3d 795, 805 (5th Cir. 1996). See Sanchez, 139 F.3d at 467; Wicker v. City of Galveston, 944 F.Supp 553, 557 (S.D. Tex. 1996). Whether conduct is objectively reasonable depends on the facts of the case in light of clearly established law at the time of the relevant conduct. See id; Pierce v. Smith, 117 F.3d 866, 871 (5th Cir. 1997). If the facts are undisputed, whether conduct is objectively reasonable is a question of law for the Court; however, if the facts necessary to determine whether conduct was objectively reasonable are disputed, summary judgment is inappropriate. See Williams v. Bramer, 180 F.3d 699, 703 (5th Cir.1999).

In this case, if Rodriguez and Rubinstein knew of Oakerson's union organizing activities and retaliated against him because of those activities, their conduct would be objectively unreasonable under clearly established Fifth Circuit precedent. See Boddie, 989 F.2d at 748. In other words, if Oakerson can create a material issue of fact on causation and on whether the proffered non-discriminatory reason for his termination and the refusal to entertain an appeal was a pretext, Rodriguez and Rubinstein are not entitled to qualified immunity.[4]

To show causation for a First Amendment freedom of association employment retaliation claim, Oakerson must create a material issue of fact on whether Rubinstein knew of his protected conduct and whether that knowledge was a substantial or motivating factor in Rubinstein's decision to affirm his termination. See supra Section IV of this order. A plaintiff is not required to adduce direct evidence of causation. The Fifth Circuit has repeatedly held that causation can be shown through circumstantial evidence, since direct evidence of discrimination is rarely available.[5] A causal link is

---

[4]     See supra Section IV of this order for a full discussion of the burden-shifting formula used for First Amendment employment discrimination claims.

[5]     See Scales v. Slater, 181 F.3d 703, 709 (5th Cir. 1999); Chaney v. New Orleans Public Facility Management, Inc., 179 F.3d 164, 168 (5th Cir. 1999); Baltazor v. Holmes, 162 F.3d 368, 376 (5th Cir. 1998); Harrington v. Harris, 118 F.3d at 367; Barrow v. New Orleans S.S. Ass'n, 10 F.3d 292, 298 n.25 (5th Cir. 1994); Robertson v. Bell Helicopter Textron, Inc., 32 F.3d 948, 950-52 (5th Cir. 1994); N.L.R.B. v. Mini-Togs, Inc., 980 F.2d 1027, 1035-36 (5th Cir.

established "when the plaintiff shows that the employment decision and his protected activity 'were not wholly unrelated.'" Medina v. Ramsey, 238 F.3d 674, 683 (5th Cir. 2001) (quoting Simmons v. Camden County Bd. of Educ., 757 F.2d 1187, 1189 (11th Cir.1985)). It is sufficient to detail "a chronology of events from which retaliation may be plausibly inferred." Brady, 113 F.3d at 1424 (citing Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); Fowler v. Smith, 68 F.3d 124, 127 (5th Cir. 1995); Vojvodich v. Lopez, 48 F.3d 879, 886 (5th Cir. 1995).[6]

Several categories of circumstantial evidence are commonly used in employment discrimination cases to prove knowledge and causation for the plaintiff's *prima facie* case. First, the proximity in time between the protected conduct and the adverse employment action can alone be sufficient to prove causation under some circumstances. See Evans v. City of Houston, 246 F.3d 344, 354 (5th Cir. 2001); Swanson v. General Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997). Second, a plaintiff may use evidence that he has been treated differently than similarly-situated individuals to show improper motive. See Williams v. Trader Pub. Co., 218 F.3d 481,

---

1993); Shirley v. Chrysler First, Inc., 970 F.2d 39, 42-43 (5th Cir. 1992). See also Morris v. Lindau, 196 F.3d 102, 110 (2nd Cir. 1999); Engle v. Townsley, 49 F.3d 1321, 1323-24 (8th Cir. 1995).

[6]      For example, summary judgment was denied on knowledge and causation in Vojvodich based on the following evidence: "Sheriff Lopez contends that Deputy Vojvodich failed to submit sufficient evidence to establish that Sheriff Lopez's actions were motivated by Deputy Vojvodich's protected activities. To be entitled to summary judgment, Sheriff Lopez must show the absence of a genuine issue of material fact on the causation element of Vojvodich's claim. We hold that Deputy Vojvodich has presented sufficient evidence on this issue to create a question of fact for the jury. To show that his political affiliation or activities motivated the Sheriff, Vojvodich provides evidence that (1) he was a republican, and Sheriff Lopez was a democrat, (2) he actively campaigned for the incumbent whom Sheriff Lopez eventually defeated, (3) his support of the incumbent's candidacy was well known within the BCSO generally, and in particular by Sheriff Lopez's supporters there, (4) within three and a half months after Sheriff Lopez assumed office, the Deputy was transferred to a less desirable position with diminished prestige and career opportunity, even though his performance evaluations were satisfactory and the Sheriff had expressed no dissatisfaction with his performance, and (5) within the same timeframe, other BCSO employees who opposed Sheriff Lopez's election were terminated. Based on this evidence, we conclude that a reasonable factfinder could infer that Sheriff Lopez's transfer of Deputy Vojvodich was substantially motivated by the Deputy's party affiliation or his political activities or both. " Vojvodich, 48 F.3d at 886.

13

484 (5th Cir. 2000); <u>Kelly v. Boeing Petroleum Services, Inc.</u>, 61 F.3d 350, 358-61 (5th Cir. 1995). Third, evidence of negative remarks on the particular protected activity in which the plaintiff engaged is relevant to both intent and causation. <u>See Kelly</u>, 61 F.3d at 358-59. These three categories of evidence are not exclusive. In general, "[c]ircumstantial proof of discrimination typically includes unflattering testimony about the employer's history and work practices . . . such background evidence may be critical for the . . . assessment of whether a given employer was more likely than not to have acted from an unlawful motive." <u>Id</u>. at 360.

When taken as a whole, the chain of circumstantial evidence in this case creates a material issue of fact as to whether Rodriguez and Rubinstein knew of Oakerson's leadership role in organizing BEMS employees and whether that knowledge was a substantial or motivating factor in Rodriguez' decision to terminate Oakerson and Rubinstein's decision to refuse to entertain an appeal.

Since Oakerson has created material issues of fact on his *prima facie* First Amendment retaliation claim, the burden of production shifts to Rodriguez and Rubinstein to provide a non-retaliatory reason for their actions. In this case, Rodriguez and Rubinstein have met that burden. Rodriguez states that he terminated Oakerson because he did not complete his promotional orientation period in a satisfactory manner and Rubinstein states that he did not have the power under the City's personnel policies to review Rodriguez' decision [Dkt. No. 23]. Since Rodriguez and Rubinstein have identified a non-retaliatory justification for their actions, the burden then shifts back to Oakerson to create a material issue of fact that Rodriguez and Rubinstein's stated non-retaliatory reasons are false and a pretext for retaliation. <u>See supra</u> Section IV of this order.

"'A *prima facie* case and sufficient evidence to reject the employer's explanation' may permit a trier of fact to determine that an employer unlawfully discriminated, and may therefore be enough to prevent summary judgment." <u>Pratt</u>, 247 F.3d at 606 (citing <u>Reeves v. Sanderson Plumbing Products</u>, 530 U.S. 133, 148 (2000) (emphasis added)). <u>See Blow v. City of San Antonio, Tex.</u>, 236 F.3d 293, 297-98 (5th Cir. 2001). "Proof that the defendant's explanation is unworthy of credence is simply one form of

14

circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." Reeves, 530 U.S. at 147. "Such an inference is consistent with the general principle of evidence that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'" Id. (citing Wright v. West, 505 U.S. 277, 296 (1992)).

VII.   **Defendant City of Brownsville's motion for summary judgment**

The City of Brownsville argues in its summary judgment motion that Oakerson has failed to identify a custom, policy, or practice under which it can be held liable [Dkt. No. 23]. In response, Oakerson argues that the City can be held liable for the acts of either Rubinstein or Rodriguez because they are final policymakers and there are material issues of fact as to whether Rubinstein and Rodriguez intentionally retaliated against Oakerson [Dkt. No. 56]. The Court finds that Rubinstein is a final policymaker in the limited area of the termination of rank and file City employees and, as discussed in detail above in Section VI of this order, there are material issues of fact on whether Rubinstein retaliated against Oakerson. The City's summary judgment motion is therefore denied.

A.   Municipal Liability under 42 U.S.C. § 1983

To state a civil rights claim against a city under 42 U.S.C. § 1983, a plaintiff must demonstrate that he has been deprived of a right secured by the Constitution or federal law, and that the deprivation was caused by an official policy, practice, or custom of the city. See Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 403 (1997); Harris, 168 F.3d at 225. "Although occasionally referred to as if they were three distinct creatures, a local governmental entity's official 'policies,' 'practices,' and 'customs' are really three different terms for those actions which sufficiently bear the imprimatur of a governmental entity's final policymakers to justify holding the governmental entity responsible therefor." Hicks v. Bexar County, Tex., 973 F.Supp. 653, 677 (W.D. Tex. 1997). In other words, requiring proof of a municipal policy ensures that a city is held liable for its own wrongs, instead of imposing *respondeat*

15

*superior* liability for the actions of a governmental employee. See <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989). The city's action or inaction must have proximately caused the violation of the plaintiff's federal rights. See <u>Martinez v. California</u>, 444 U.S. 277, 285 (1980).

A city policy, custom, or practice can be created through a single act of a final policymaker designated as such under state law. See <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 122-23 (1988) (plurality opinion); <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 478-79 (1986); <u>Baltazor v. Holmes</u>, 162 F.3d 368, 377 (5th Cir.1998); <u>Bennett v. Archer County, Tex.</u>, 74 F.3d 578, 586 (5th Cir. 1996). Who is a final policymaker is a question of state law to be determined by the court. See <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 737 (1989). "The sources of state law which should be used to discern which city officials possess final policymaking authority are state and local positive law, as well as 'custom or usage' having the force of law." <u>Gros v. City of Grand Prairie, Tex.</u>, 181 F.3d 613, 615 (5th Cir. 1999). The Supreme Court has stated that "state law ... will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." <u>Praprotnik</u>, 485 U.S. at 125. However, "[t]his is not to say that state law can answer the question for us [through labels]. But our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law." See <u>McMillan v. Monroe County, Ala.</u>, 520 U.S. 781, 785 (1997).

If state law does not grant final policymaking authority to any one person, a court cannot look for a de facto policymaker. See <u>Praprotnick</u>, 485 U.S. at 124-25. There is no presumption that the municipalities' legislative body, or any other group of persons or individual, has final policymaking power. "[T]he power to establish policy is no more the exclusive province of the legislature at the local level than at the state or national level." <u>Pembaur</u>, 475 U.S. at 480. See <u>Gros</u>, 181 F.3d at 615.

The Supreme Court has distinguished final policymaking authority and final decision-making authority. Municipal liability can only be premised on the acts of a final policymaker, not a final decision-maker. "The fact that a particular official – even a

16

policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." Pembaur, 475 U.S. at 481-83 (citations omitted). The reason for this distinction is that "[i]f the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from respondeat superior liability." Praprotnick, 485 U.S. at 126.

There is no simple bright-line rule that can be followed to distinguish between a final policymaker and a final decision-maker in many cases. See Praprotnick, 485 U.S. at 126-27. However, in Praprotnick the Supreme Court provided some basic guiding principles. "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." Id. at 127. See Brady v. Fort Bend County, 145 F.3d 691, 698-99 (5th Cir. 1998); Worsham v. City of Pasadena, 881 F.2d 1336, 1340-41 (5th Cir. 1989); Neubauer v. City of McAllen, 766 F.2d 1567, 1573-74 (5th Cir.1985), overruled on other grounds by Walther v. Lone Star Gas Co., 952 F.2d 119, 126 (5th Cir.1992).

While municipal liability cannot be premised on respondeat superior principles, final policymaking authority can be delegated such that a final decision-maker becomes a final policymaker on the delegated issue. The Supreme Court recognized in Praprotnick that if delegation of policymaking authority were not possible, "a city's lawful policymakers could insulate the government from liability simply by delegating their policymaking authority to others [such that] § 1983 could not serve its intended purpose." Praprotnick, 485 U.S. at 127. "The [Supreme] Court has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so 'permanent and

17

well settled as to constitute a custom or usage with the force of law.'" Id. (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970)). See also Gros, 181 F.3d at 616 n.2; Doe on Behalf of Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 216 (5th Cir. 1998); Eugene v. Alief Indep. Sch. Dist., 65 F.3d 1299, 1304-05 (5th Cir. 1995); Yeager v. City of McGregor, 980 F.2d 337, 343-44 (5th Cir. 1993); Bennett v. City of Slidell, 728 F.2d 762, 769 (5th Cir.1984)(en banc); Mireles v. Bay City Indep. Sch. Dist., 992 F.Supp. 916, 919 (S.D. Tex. 1998).[7] However, in determining whether an official has been delegated final policymaking authority, a court must be mindful of the distinction between final decision-making and policymaking authority. See Jett v. Dallas Indep. Sch. Dist., 7 F.3d 1241, 1245-51 (5th Cir. 1993) ("Jett II").

While only final policymaking authority can create municipal liability, that authority can be shared among several individuals or bodies. See Praprotnick, 485 U.S. at 126; Flores v. Cameron County, Tex., 92 F.3d 258, 264 (5th Cir. 1996). "[T]here will be cases in which policymaking responsibility is shared among more than one official or body. In the case before us, for example, it appears that the Mayor and Aldermen are authorized to adopt such ordinances relating to personnel administration as are compatible with the City Charter. . . . Assuming that applicable law does not make the decisions of the Commission reviewable by the Mayor and Aldermen, or vice versa, one would have to conclude that policy decisions made either by the Mayor and Aldermen or by the Commission would be attributable to the city itself." Praprotnick, 485 U.S. at 126. See Pembaur, 475 U.S. at 483.

Because final policymaking authority can be shared, a court must focus on whether the municipal official whose acts are at issue is a final policymaker for the specific issue or area that controls those acts. See McMillan, 520 U.S. at 785-86. A

---

[7] Other circuits have also frequently grappled with the issue of when delegation of final policymaking authority occurs. See e.g. Riddick v. School Bd. of City of Portsmouth, 238 F.3d 518, 523-24 (4th Cir. 2000); Seamons v. Snow, 206 F.3d 1021, 1028-29 (10th Cir. 2000); Kujawski v. Board of Com'rs of Bartholomew County, Ind., 183 F.3d 734, 739-40 (7th Cir. 1999); Brown v. Neumann, 188 F.3d 1289, 1290-91 (11th Cir. 1999); Ware v. Jackson County, 150 F.3d 873, 886 (8th Cir. 1998); Meyers v. City of Cincinnati, 14 F.3d 1115, 1118 (6th Cir. 1994); Manor Healthcare Corp. v. Lomelo, 929 F.2d 633, 638 (11th Cir. 1991).

court would be misguided in focusing on whether an official acts for the municipality "in some categorical, 'all or nothing' manner." Id. at 785. Thus, when the Supreme Court examined whether a sheriff acted as a final policymaker for the State of Alabama or Monroe County in McMillan, it stated "we are not seeking to make a characterization of Alabama sheriffs that will hold true for every type of official action they engage in. We simply ask whether Sheriff Tate represents the State or the county when he acts in a law enforcement capacity." Id. at 785-86.

B.   The Brownsville City Commission and Defendant Carlos Rubinstein, the City Manager, share final policymaking authority over the appointment and removal of BEMS employees

In this case, final policymaking power over the termination BEMS employees is shared between the Brownsville City Commission and the Brownsville City Manager Rubinstein. Rubinstein has the power to make final policy decisions on the termination of BEMS employees. Since Rubinstein is a final policymaker on the removal BEMS employees his actions in refusing to entertain Oakerson's appeal from his termination can form the basis for municipal liability under § 1983.

The Brownsville City Charter governs the apportionment of power between the City Commission and the City Manager in City personnel matters.[8] Under the Charter, the City Commission is "the municipal government of the City of Brownsville" [Dkt. No. 52, Exh. A, Art. V, § 1] and the City Manager is "the chief executive officer and head of the administrative branch of the city government" [Dkt. No. 52, Exh. A, Art. V, § 20, ¶ 1]. The City Manager is appointed, and can be removed, by the City Commission [Dkt. No. 52, Exh. A, Art. V, § 20, ¶ 1]. The City Manager in turn has the power to "appoint and remove all officers and employees in the administrative service of the [C]ity" [Dkt. No.

_____

[8]   The City of Brownsville is a home-rule municipality governed by a city charter enacted pursuant to Article XI, Section 5, of the Texas Constitution [Dkt. No. 52, Exh. A]. See TEX. CONST. ART. XI, § 5; TEX. LOCAL GOV'T CODE §§ 5.004, 51.072. The Brownsville City Charter is "the fundamental law of the municipality in the same manner that the constitution is the fundamental law of the state." Central Power & Light Co. v. City of San Juan, 962 S.W.2d 602, 612 (Tex.App.–Corpus Christi 1998).

19

52, Exh. A, Art. V, § 20, ¶ 2] and his decision to appoint or remove an employee "shall be final and there shall be no appeal therefrom to any other office, body or court whatsoever" [Dkt. No. 52, Exh. A, Art. V, § 20, ¶ 3]. The appointment and removal of employees is subject to "the personnel policy adopted by the [City] [C]ommission, except as otherwise provided by this Charter or as provided by law" [Dkt. No. 52, Exh. B, Art. V, § 20, ¶ 3]; however, the City Commission cannot "in any manner dictate the appointment or removal of any [C]ity administrative officers or employees whom the [C]ity [M]anager . . . [is] empowered to appoint" [Dkt. No. 52, Exh. A, Art. V, § 20, ¶ 4].

Brownsville's Personnel Policies, adopted by the City Commission in 1978 and amended in 1998, provide that "disciplinary action may be administered for just cause" [Dkt. No. 52, Exh. C, Chpt. VIII, § 801]. The Personnel Policies provide non-exclusive examples of misconduct which may justify discipline or termination and provide the procedure to be followed in terminating an employee [Dkt. No. 52, Exh. C, Chpt. VIII, §§ 801, 807]. If an employee is terminated by the head of a City department, the employee may appeal his termination to the City Manager [Dkt. No. 52, Exh. C, Chpt. VIII, § 808]. "The decision of the City Manager [on an appeal] shall be final. The City Manager, following careful investigation of the facts shall have broad authority to approve, disapprove, modify, or recind [sic] any disciplinary actions taken or proposed" [Dkt. No. 52, Exh. C, Chpt. VIII, § 808].[9]

---

[9]     The Personnel Policy, as amended in 1998, provides that any employee promoted shall be subject to a promotional orientation period of six months. See [Dkt 25 Attachment 7 Exh 26 § 209]. It further provides that "The respective director may at any time after sixty (60) calendar days from the effective date of the promotion but prior to completion of the promotional orientation period, fail an employee's promotional orientation. Failure of the promotional orientation period *shall not be considered disciplinary action* or disqualify the employee from consideration for later advancement or reinstatement" Id. [§ 212] (emphasis added). § 704 states that all employees have the right to appeal *disciplinary* actions. Id. at § 706. § 206, which deals with the general orientation period, provides that an employee can be dismissed at any time during the orientation period, and has no right of appeal. Id. It is not clear from the record whether § 206 applies to promotional orientation periods or only to initial orientation periods. However, in light of the Court's finding that Rubenstein, as City Manager, has final authority over the decision whether to hear an appeal or not, it is not necessary to ascertain the periods to which §206 applies.

The Brownsville City Charter and Personnel Policies' division of power over the termination of rank and file employees, such as paramedics, is identical in all relevant respects to that considered by the Fifth Circuit in Neubauer v. City of McAllen, Tex. See 766 F.2d at 1573-74. In Neubauer, as in the present lawsuit, the City Manager had the exclusive power to terminate employees and the City's Personnel Policies, enacted by the City Commission, provided that employees may be terminated for just cause.[10] See id. at 1574 (citing Bennett, 728 F.2d at 769). The Fifth Circuit held in Neubauer that the City Manager of McAllen, Texas was a final policymaker on the termination of rank and file employees. Consequently, under principles of *stare decisis*, Neubauer mandates that Rubinstein is a final policymaker on the termination of paramedics and the City of Brownsville can be held liable for his unconstitutional conduct in terminating a paramedic under § 1983.

The City of Brownsville argues that Neubauer is not controlling because subsequent Fifth Circuit cases have called its holding into question [Dkt. No. 72]. However, the relevant facts and holding of Neubauer are indistinguishable from the instant case and have not been overruled by a later Fifth Circuit or Supreme Court opinion. To the contrary, subsequent opinions within this circuit have relied on Neubauer. See Yeager v. City of McGregor, 980 F.2d 337, 344 (5th Cir. 1993); Mattix v. Hightower, 1998 WL 246671, *14 (N.D. Tex. 1998); Nichols v. City of Jackson, 848 F.Supp. 718, 726 (S.D. Miss. 1994). This Court must adhere to Neubauer's holding because it is not within the province of a district court to question an indistinguishable Fifth Circuit opinion unless it has been "overruled en banc or by the United States Supreme Court." Bellaire General Hosp. v. Blue Cross Blue Shield of Michigan, 97 F.3d 822, 826 n.3 (5th Cir. 1996) (citing Campbell v. Sonat Offshore Drilling, Inc., 979

---

[10]     "The McAllen Code designates the city manager as 'the administrative head of the municipal government,' and empowers the city manager to 'appoint or remove all subordinate employees.' The code provides that the city manager must seek the advice of the city commission before appointing or removing department heads, but does not limit his authority with regard to hiring or firing other subordinate employees, such as Neubauer. In addition, the City's Personnel Policies and Procedures manual, which was approved by the McAllen city commission, provides, 'The City Manager may discharge, transfer, suspend without pay, or reprimand an employee for just cause.'" Id. at 1573-74.

F.2d 1115, 1121 n.8 (5th Cir. 1992)).[11]  The doctrine of *stare decisis* requires "that like facts will receive like treatment in a court of law." Taylor v. Charter Medical Corp., 162 F.3d 827, 832 (5th Cir. 1998) (citing Brock v. El Paso Natural Gas Co., 826 F.2d 369, 374 (5th Cir.1987)).

Moreover, Neubauer's holding, as applied to the facts of this case, comports with subsequent Supreme Court and Fifth Circuit opinions that have elaborated on the legal principles used to identify final policymakers whose acts can create municipal liability under § 1983.  See supra Section VII(A) of this order.  The Brownsville City Charter grants Rubinstein the exclusive and final power to uphold the termination of a BEMS employees.  While the City Commission can express its views on Rubinstein's decision, it cannot dictate a particular result.  The only way the City Commission can control Rubinstein's decision is to remove him from office and replace him with a person who will make the desired finding.  The personnel policies enacted by the City Commission constrain Rubinstein only in theory.  They are not binding and they leave Rubinstein broad power to define his own policies on whether to hear appeals from probationary employees whose employment has been terminated.  This distribution of power demonstrates that the City Commission and Rubinstein share policymaking authority and that Rubinstein's power goes beyond that granted to a mere decision-maker.  To hold otherwise, would allow the City of Brownsville to insulate itself from liability for unconstitutional employment decisions and act with impunity.

C.    The Plaintiff has created a material issue of fact as to whether the City of Brownsville can be held liable for First Amendment retaliation under 42 U.S.C. § 1983

Rubinstein is a final policymaker for the City on the termination of BEMS employees, such as Oakerson.  The Court held in Section VI(C) of this order that Oakerson has created material issue of fact on whether Rubinstein engaged in

----

[11]    See U.S. v. Dabeit, 231 F.3d 979, 984 (5th Cir. 2000); Causeway Medical Suite v. Foster, 43 F.Supp. 2d 604, 611-12 (E.D. La.1999); Sabocuhan v. Geco-Prakla, 78 F.Supp. 2d 603, 607 (S.D. Tex. 1999); Jett Racing & Sales, Inc. v. Transamerica Commercial Finance Corp., 892 F.Supp. 161, 163 (S.D. Tex. 1995).

22

intentional retaliation in violation of the First Amendment.  The City of Brownsville can be held liable for the intentional and unconstitutional discriminatory acts of a final policymaker.  See Board of County Comm'rs of Bryan County, Okl., 520 U.S. at 407; Pembaur, 475 U.S. at 483-84. Accordingly, there is a material issue of fact as to the liability of the City of Brownsville for First Amendment retaliation pursuant to § 1983 and its summary judgment motion must therefore be denied.

DONE, in Brownsville, Texas, this 21st day of September 2001.

Hilda G. Tagle
United States District Judge